No. 24-2111

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

EDWARD HEYMER, ET AL

*Plaintiffs-Appellants*

v.

HARLEY-DAVIDSON MOTOR COMPANY GROUP, LLC ET AL

*Defendants-Appellees.*

On Appeal from the United States District Court for the Eastern
District of Wisconsin
in Case No. 2:23-md-03064-WCG
Hon. William C. Griesbach

PRINCIPAL BRIEF AND SHORT APPENDIX FOR PLAINTIFFS-
APPELLANTS

| | |
|---|---|
| THOMAS H. BURT<br>LILLIAN R. GRINNELL<br>**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**<br>270 Madison Avenue, 9th Floor<br>New York, New York 10016 Tel: 212-545-4600<br>Fax: 212-526-9998<br>burt@whafh.com<br>grinnell@whafh.com | JULIAN DIAMOND<br>**BURSOR & FISHER, P.A.**<br>1330 Avenue of the Americas, 32nd Floor<br>New York, NY 10019<br>Tel: 646-837-7150<br>Fax: 212-983-9163<br>jdiamond@bursor.com |

*Attorneys for Plaintiffs-Appellants*

Save As    Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: __24-2111__

Short Caption: __Edward Heymer, et al v. Harley-Davidson Motor Company Group, LLC et al (rev)__

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☑        **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
        __Edward Heymer, Scott Koller, Jacqueline Assise, Robert Assise, James Billings, et al. (Plaintiffs-Appellants)__

        _____

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
        __Wolf Haldenstein Adler Freeman & Herz LLP and other law firms (See Attachment A)__

        _____

(3)     If the party, amicus or intervenor is a corporation:

        i)        Identify all its parent corporations, if any; and
                  __N/A__

        ii)       list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:
                  __N/A__

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
        __N/A__

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
        __N/A__

Attorney's Signature: __/s/ Thomas H. Burt__          Date: __7/3/2024__

Attorney's Printed Name: __Thomas H. Burt__

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☑   **No** ☐

Address: __270 Madison Ave.,__

__New York, NY 10016__

Phone Number: __212-545-4669__                    Fax Number: __212-686-0114__

E-Mail Address: __burt@whafh.com__

rev. 12/19 AK

**Attachment A**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Edward Heymer, Scott Koller, Jacqueline Assise, Robert Assise, James Billings, Curtis Perry, Rita Weaver, Vladimir Lipkin, Anzhela Demkiv, Vincent Romeo, Debra Plinck, Thomas Navarette, Gary Chelenyak, Richard Hawkins, Aaron Harris

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Wolf Haldenstein Adler Freeman & Herz LLP

Ademi LLP

Ward Keenan & Barrett PC

Smith Krivoshey PC

Bursor & Fisher PA

Milberg Coleman Bryson Phillips Grossman PLLC

Gutride Safier LLP

Wolf Haldenstein Adler Freeman & Herz LLC

Reardon Scanlon LLP

Reinhardt Wendorf & Blanchfield

Spector Roseman & Kodroff PC

Tostrud Law Group PC

Glancy Prongay & Murray LLP

Lockridge Grindal Nauen PLLP

Rupp Pfalzgraf LLC

Fegan Scott LLC

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No:   24-2111

Short Caption:   Edward Heymer, et al v. Harley-Davidson Motor Company Group, LLC et al (rev)

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☑     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Edward Heymer, Scott Koller, Jacqueline Assise, Robert Assise, James Billings, and other Plaintiffs-Appellants (See

    Attachment A)

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Wolf Haldenstein Adler Freeman & Herz LLP and other law firms (See Attachment A)

(3)     If the party, amicus or intervenor is a corporation:

    i)     Identify all its parent corporations, if any; and

       N/A

    ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

       N/A

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature:   /s/ Lillian R. Grinnell       Date:   7/3/2024

Attorney's Printed Name:   Lillian R. Grinnell

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐   No ☑

Address:   270 Madison Ave.,

    New York, NY 10016

Phone Number:   212-545-4626       Fax Number:   212-686-0114

E-Mail Address:   grinnell@whafh.com

rev. 12/19 AK

**Attachment A**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Edward Heymer, Scott Koller, Jacqueline Assise, Robert Assise, James Billings, Curtis Perry, Rita Weaver, Vladimir Lipkin, Anzhela Demkiv, Vincent Romeo, Debra Plinck, Thomas Navarette, Gary Chelenyak, Richard Hawkins, Aaron Harris

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Wolf Haldenstein Adler Freeman & Herz LLP

Ademi LLP

Ward Keenan & Barrett PC

Smith Krivoshey PC

Bursor & Fisher PA

Milberg Coleman Bryson Phillips Grossman PLLC

Gutride Safier LLP

Wolf Haldenstein Adler Freeman & Herz LLC

Reardon Scanlon LLP

Reinhardt Wendorf & Blanchfield

Spector Roseman & Kodroff PC

Tostrud Law Group PC

Glancy Prongay & Murray LLP

Lockridge Grindal Nauen PLLP

Rupp Pfalzgraf LLC

Fegan Scott LLC

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 24-2111

Short Caption: Edward Heymer, et al v. Harley-Davidson Motor Company Group, LLC et al

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]   **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
 Edward Heymer, Scott Koller, Jacqueline Assise, Robert Assise, and James Billings

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
 Bursor & Fisher, P.A. and Wold Haldenstein Adler Freeman & Herz LLP (see attachment A)

(3)    If the party, amicus or intervenor is a corporation:

   i)        Identify all its parent corporations, if any; and
             Not applicable

   ii)       list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:
             Not applicable

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
       Not applicable

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
       Not applicable

Attorney's Signature: /s/ Julian C. Diamond        Date: 7/23/2024

Attorney's Printed Name:  Julian C. Diamond

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** [ ]    **No** [✓]

Address:  1330 Avenue of the Americas, Fl. 32

          New York, NY 10019

Phone Number: 646-837-7150        Fax Number: 212-983-9163

E-Mail Address: jdiamond@bursor.com

rev. 12/19 AK

**Attachment A**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Edward Heymer, Scott Koller, Jacqueline Assise, Robert Assise, James Billings, Curtis Perry, Rita Weaver, Vladimir Lipkin, Anzhela Demkiv, Vincent Romeo, Debra Plinck, Thomas Navarette, Gary Chelenyak, Richard Hawkins, Aaron Harris

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Wolf Haldenstein Adler Freeman & Herz LLP

Ademi LLP

Ward Keenan & Barrett PC

Smith Krivoshey PC

Bursor & Fisher PA

Milberg Coleman Bryson Phillips Grossman PLLC

Gutride Safier LLP

Wolf Haldenstein Adler Freeman & Herz LLC

Reardon Scanlon LLP

Reinhardt Wendorf & Blanchfield

Spector Roseman & Kodroff PC

Tostrud Law Group PC

Glancy Prongay & Murray LLP

Lockridge Grindal Nauen PLLP

Rupp Pfalzgraf LLC

Fegan Scott LLC

# TABLE OF CONTENTS

**PAGE(S)**

TABLE OF AUTHORITIES ................................................................ III

JURISDICTIONAL STATEMENT ........................................................ 1

STATEMENT OF ISSUES ................................................................. 5

STATEMENT OF THE CASE ............................................................. 6

SUMMARY OF THE ARGUMENT ....................................................... 8

ARGUMENT ................................................................................. 12

I.     STANDARD OF REVIEW ........................................................ 12

II.    THE DISTRICT COURT ERRED IN DECIDING THAT WARRANTIES CANNOT CREATE UNLAWFUL TIES ...................... 12

    A.     The District Court Erred in Rejecting a Tie ......................... 14

    B.     Plaintiffs Have Established a Viable Tying Claim ............... 21

        1.     Relevant Markets ...................................................... 22

        2.     Captive Aftermarket Tying ........................................ 28

        3.     Monopoly Tying ......................................................... 33

        4.     Tying Agreement Restraining Trade ........................... 37

III.   THE DISTRICT COURT ERRED IN DISMISSING PLAINTIFFS' FRAUD-BASED CLAIMS AND CLAIMS FOR UNJUST ENRICHMENT ................................................................. 42

IV.    PLAINTIFFS ADEQUATELY PLEADED THEIR CLAIM UNDER THE MAGNUSON-MOSS WARRANTY ACT ............................. 43

    A.     Defendants Expressly and Impliedly Tie the Warranty to Use of Harley-Davidson Branded Parts in Violation of the MMWA ...... 45

        1.     Defendants Expressly Tie the Warranty to Harley-Davidson Branded Parts .................................................. 47

        2.     Defendants Impliedly Tie the Warranty to Harley-Davidson Branded Parts .................................................. 53

    B.     Defendant Violated the MMWA's Disclosure Rule ............... 57

C.    The District Court Erred in Failing to Consider the FTC's Finding That Defendants' Warranty Violated the MMWA's Express and Implied Tying Provisions and Disclosure Rule .......................................58

D.    Defendants Violated the MMWA's Pre-Sale Availability Rule 62

E.    Plaintiffs Adequately Alleged Harm....................................65

CONCLUSION............................................................................67

## TABLE OF AUTHORITIES

**CASES**                                                                 **Page(s)**

*In re Aqua Dots Prod. Liab. Litig.*,
     654 F.3d 748 (7th Cir. 2011) ...............................................................67

*Barton v. Pret A Manger (USA) Ltd.*,
     535 F. Supp. 3d 225 (S.D.N.Y. 2021) ..................................................56

*Beardsall v. CVS Pharmacy, Inc.*,
     953 F.3d 969 (7th Cir. 2020) ...............................................................56

*Bell v. Publix Super Markets, Inc.*,
     982 F.3d 468 (7th Cir. 2020) .........................................................53, 56

*BookLocker.com, Inc. v. Amazon.com, Inc.*,
     650 F. Supp. 2d 89 (D. Me. 2009)........................................................21

*Burzlaff v. Thoroughbred Motorsports, Inc.*,
     758 F.3d 841 (7th Cir. 2014) .................................................................3

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
     761 F. 3d 732 (7th Cir. 2014) ..............................................................42

*Collins Inkjet Corp. v. Eastman Kodak Co.*,
     781 F.3d 264 (6th Cir. 2015) .........................................................30, 36

*Colgan v. Leatherman Tool Grp., Inc.*,
     135 Cal. App. 4th 663,
     *as modified on denial of reh'g* (Jan. 31, 2006) ...................................56

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
     313 F. Supp. 3d 931 (N.D. Ill. 2018) ..............................................29, 38

*In re Deere & Company Repair Service Antitrust Litig.*,
     MDL No. 3030,

2023 WL 8190256 (N.D. Ill., Nov. 27, 2023) ("*Deere*") ................ *passim*

*Dixon v. Nat'l Hot Rod Ass'n,*
   No. 119-CV-01470-JRS-DML,
   2021 WL 1175198 (S.D. Ind. Mar. 29, 2021) .................................... 24

*Dunbar v. Kohn Law Firm, S.C.,*
   896 F.3d 762 (7th Cir. 2018) ............................................................ 50

*DXS, Inc. v. Siemens Med. Sys., Inc.,*
   991 F. Supp. 859 (E.D. Mich. 1997) ............................................... 15

*E.I. du Pont de Nemours and Co. v. Kolon Industries, Inc.,*
   637 F.3d 435 (4th Cir. 2011) ...................................................... 22, 23

*Eastman Kodak v. Image Tech. Services, Inc.,*
   504 U.S. 451 (1992) ................................................................. *passim*

*Epic Games v. Apple, Inc.,*
   67 F.4th 946 (9th Cir. 2023).................................................. 28, 29, 31

*Fido's Fences, Inc. v. Canine Fence Co.,*
   672 F. Supp. 303 (E.D.N.Y. 2009)..................................... 9, 17, 18, 36

*In re Generac Solar Power Sys. Mktg. Sales Pracs. Prods. Liab. Litig.,*
   MDL No. 23-MD-3078,
   2024 U.S. Dist. LEXIS 93973 (E.D. Wisc. July 18, 2023).................... 3

*GMC v. Gibson Chem & Oil Corp.,*
   786 F.2d 105 (2d Cir. 1986)...................................................... *passim*

*Gumwood HP ShBring Partners, L.P. v. Simon Prop. Grp., Inc.,*
   No. 3:11-CV-268 JD,
   2013 WL 3214983 (N.D. Ind. Mar. 13, 2013) .................................. 41

*John v. Whole Foods Mkt. Grp., Inc.,*
   858 F.3d 732 (2d Cir. 2017)............................................................ 67

*Johnson v. Nationwide Indus., Inc.*,
No. 77 C 1162, 1985 WL 2003 (N.D. Ill. July 1, 1985)
*on reconsideration*, No. 77 C 1162,
1986 WL 7072 (N.D. Ill. June 16, 1986) ...............................................34

*Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*,
677 F.2d 1045 (5th Cir. 1982),
*cert. denied*, 459 U.S. 1105 (1983) .......................................................35

*Lambrix v. Tesla*,
No. 23-cv-01145-TLT,
2024 WL 3403777 (N.D. Cal. June 17, 2024).............................. *passim*

*Land of Lincoln Goodwill Indus., Inc. v. PNC Fin. Servs. Grp., Inc.*,
762 F.3d 673 (7th Cir. 2014) .................................................................51

*Leegin Creative Leather Prod., Inc. v. PSKS, Inc.*,
551 U.S. 877 (2007) ...............................................................................38

*Loper Bright Enterprises v. Raimondo*,
144 S. Ct. 2244 (2024) ...........................................................................59

*Marts v. Xerox*,
77 F.3d 1109 (8th Cir. 1996) ...........................................................20, 21

*Maryland Staffing Services, Inc. v. Manpower, Inc.*,
936 F. Supp. 1494 (E.D. Wi. 1996).......................................................35

*McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*,
775 F.3d 109 (1st Cir. 2014)..................................................................61

*Miller v. Herman*,
600 F.3d 726 (7th Cir. 2010) .................................................................59

*Miller v. Willow Creek Homes, Inc.*,
249 F.3d 629 (7th Cir. 2001) .................................................................43

*Ohio v. Am. Express Co.*,

v

138 S. Ct. 2274 (2018) ...........................................................................25

*Packaging Supplies, Inc. v. Harley-Davidson, Inc.,*
   No. 08-CV-400,
   2009 WL 855798 (N.D. Ill. Mar. 30, 2009) ....................................36, 39

*Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.,*
   826 F.2d 712 (7th Cir. 1987) ................................................................40

*Reifert v. S. Cent. Wisconsin MLS Corp.,*
   450 F.3d 312 (7th Cir. 2006) .........................................................13, 40

*In re Rust-Oleum Restore Mktg., Sales Practices & Prods. Liab. Litig.,*
   155 F. Supp. 3d 772 (N.D. Ill. 2016) ..............................................53, 54

*RX Sys. v. Med. Tech. Sys.,*
   1995 U.S. Dist. LEXIS 14214 (N.D. Ill. Sep. 29, 1995) ........................20

*Schaer v. Newell Brands Inc.,*
   No. 3:22-CV-30004-MGM,
   2023 WL 2033765 (D. Mass. Feb. 16, 2023) ...........................48, 61, 66

*Siegal v. GEICO Cas. Co.,*
   523 F. Supp. 3d 1032 (N.D. Ill. 2021) (Coleman, J.) ...........................66

*Sharif Pharm., Inc. v. Prime Therapeutics, LLC,*
   950 F.3d 911 (7th Cir. 2020) ...................................................23, 26, 27

*Skidmore v. Swift & Co.,*
   323 U.S. 134 (1944) ..............................................................................59

*Spectrum Sports, Inc. v. McQuillan,*
   506 U.S. 447 (1993) ..............................................................................33

*Todd v. Exxon Corp.,*
   275 F.3d 191 (2d Cir. 2001) (J. Sotomayor) ........................................22

*United States v. Grinnell Corp.,*

384 U.S. 563 (1966) ...................................................................... 22, 25, 28

*United States v. Loew's, Inc.,*
371 U.S. 49 (1962) ...................................................................... 41

*United States v. Phillipsburg National Bank and Trust Company,*
399 U.S. 350 (1970) ..................................................................... 26

*Vasquez v. Indiana Univ. Health, Inc.,*
40 F.4th 582 (7th Cir. 2022) ......................................................... 12

*Viamedia, Inc. v. Comcast Corp.,*
951 F.3d 429 (7th Cir. 2020) .................................................... 10, 30

*Vital Pharms., Inc. v. Berlin Packaging LLC,*
632 F. Supp. 3d 780 (N.D. Ill. 2022) ............................................. 38

*Voelker v. Porsche Cars North America, Inc.,*
353 F.3d 516 (7th Cir. 2003) .......................................................... 3

*Warciak v. Subway Restaurants, Inc.,*
949 F.3d 354 (7th Cir. 2020) ......................................................... 12

*White v. United Airlines, Inc.,*
987 F.3d 616 (7th Cir. 2021) ......................................................... 65

*Wienhoff v. Conagra Brands, Inc.,*
626 F. Supp. 3d 1015 (S.D. Ill. 2022) ............................................ 53

*Weiss v. York Hosp.,*
745 F.2d 786 (3d Cir. 1984) .......................................................... 25

*Young v. Verizon's Bell Atl. Cash Balance Plan,*
615 F.3d 808 (7th Cir. 2010) ......................................................... 50

## STATUTES & RULES

16 C.F.R. § 700.10 ....................................................................... 43

16 C.F.R. § 700.10(c) ........................................................ 44, 47, 50, 54
16 C.F.R. § 701.3(a)(2) ........................................................ 44, 57, 58
16 C.F.R. § 702.3(b) ............................................................ 44, 64
16 C.F.R. § 702.3(b)(1)(i)(A) ................................................ 64
16 C.F.R. § 702.3(b)(2)(i)-(iv) .............................................. 65
16 C.F.R. § 702.3(b)(2)(iv) .................................................. 65

Federal Rules of Civil Procedure
  9(b) ...................................................................... 42, 43

940 Mass. Code Regs. 3.16 ................................................... 61

Mass. Gen. Laws Ann. ch. 93A, § 2 ("Chapter 93A") ................. 60, 61, 62

The Magnuson-Moss Warranty Act ("MMWA")
  15 U.S.C. § 2301 *et seq.* ............................................ *passim*

28 U.S.C. § 1367 ............................................................ 3

## JURISDICTIONAL STATEMENT

This appeal is taken from the final judgment of the U.S. District Court for the Eastern District of Wisconsin entered on June 27, 2024 by the Honorable William C. Griesbach (ECF No. 58). This final judgment adjudicated all claims with respect to all parties. Plaintiffs filed their notice of appeal on June 27, 2024 (ECF No. 59), seeking review of the final judgment and the Decision and Order of the District Court granting Defendants' Motion to Dismiss dated June 5, 2024 (ECF No. 55). The United States Court of Appeals has jurisdiction to decide this case pursuant to 28 U.S.C. § 1291.

The District Court had jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). There are at least 100 members in the proposed class, the aggregated claims of the individual class members exceed the sum or value of $5,000,000.00 exclusive of interest and costs, and some of the members of the proposed class are citizens of states different from the Defendants. Specifically, Harley-Davidson is incorporated in the state of Wisconsin, with their headquarters located in Milwaukee. The individual Plaintiffs' citizenships are as follows:

1

- Plaintiffs Jacqueline and Robert Assise, Plaintiff Vladimir Lipkin, and Plaintiff Anzhela Demkiv are citizens of Illinois.

- Plaintiff Edward Heymer and Plaintiff Scott Koller are citizens of California.

- Plaintiff Rita Weaver is a citizen of New York.

- Plaintiff James Billings is a citizen of Massachusetts.

- Plaintiff Curtis Perry is a citizen of Minnesota.

- Plaintiff Vincent Romeo is a citizen of North Carolina.

- Plaintiff Debra Plinck is a citizen of Nevada.

- Plaintiff Thomas Navarette is a citizen of New Mexico.

- Plaintiff Gary Chelenyak is a citizen of Michigan.

- Plaintiff Richard Hawkins is a citizen of Florida.

- Plaintiff Aaron Harris is a citizen of Washington.

This multidistrict litigation involves nationwide class claims arising from the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 (all class members) as well as the Wisconsin Antitrust Law, Wisconsin Stat. §§133.01 et seq. (multistate antitrust class), in addition to common law claims for unjust enrichment, fraud, and fraudulent concealment. In addition, Plaintiffs brought state class claims under 85 separate state statutes.

In addition, the District Court had supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' MMWA claims. The MMWA claims, which arose from the same transactions and facts as the non- MMWA claims, were part of the "same case or controversy," giving the district court supplemental jurisdiction. *See* 28 U.S.C. § 1367 (district court has supplemental jurisdiction of "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."); *see also Burzlaff v. Thoroughbred Motorsports, Inc.,* 758 F.3d 841, 844-45 (7th Cir. 2014) (holding that court could exercise supplemental jurisdiction over MMWA claim even though the MMWA's amount-in-controversy requirement was not satisfied, where district court had original diversity jurisdiction under 28 U.S.C. § 1332 over state law claim); *Voelker v. Porsche Cars North America, Inc.,* 353 F.3d 516, 521-22 (7th Cir. 2003) (same holding as to MMWA claims, where district court had original federal question jurisdiction over non-MMWA claims); *In re Generac Solar Power Sys. Mktg. Sales Pracs. Prods. Liab. Litig.,* 2024 WL 2504032, at *3 (holding that court could properly exercise supplemental jurisdiction over MMWA claims where it had original

jurisdiction under CAFA over plaintiffs' state-law breach of warranty, fraud, and consumer-protection act claims).

# STATEMENT OF ISSUES

1.  Whether the district court erred in enacting a rule disallowing any tying claim involving a warranty?

2.  Whether Plaintiffs adequately made out the elements of an antitrust tying claim, and related common law and statutory claims based on fraud and unjust enrichment, sufficient to withstand a motion to dismiss?

3.  Whether the district court erred in denying Plaintiffs' MMWA claim of an unlawful tie?

## STATEMENT OF THE CASE

This case is a class action, multidistrict litigation involving both indirect purchaser antitrust claims under multiple state antitrust and consumer protection laws and claims under the Magnuson-Moss Warranty Act ("MMWA"). All of these claims stem from Harley-Davidson (Harley)'s warranty practices, which Plaintiffs allege forced consumers to only use Harley-branded compatible parts for the first two years after buying a new motorcycle, sometimes at a value of $30,000, for fear of having their warranty voided – simply for the use of a third-party part, without relation to any damage caused by such use. Plaintiffs allege this practice violated the MMWA, along with state antitrust laws, and various state consumer statutes and common law claims.

The first cases filed against Harley in relation to its warranty practices were in August 2022; the case was transferred to the Eastern District of Wisconsin for consolidation on February 8, 2022. Plaintiffs filed their first consolidated complaint on May 15, 2023 (ECF No. 28), and then the now-operative Consolidated Amended Complaint on July 17, 2023 (ECF 33).

Harley filed its Motion to Dismiss on September 15, 2023 (ECF No. 41), along with Motions to Stay the Claims of Certain Plaintiffs Pending Arbitration (ECF No. 39) and to Strike Certain Class Allegations (ECF No. 44) on the same date. Plaintiffs filed their brief in opposition to the Motion to Dismiss on December 14, 2023 (ECF No. 50) and their brief in opposition to the Motions to Stay and Strike on the same date (ECF 49). Harley filed their replies on January 29, 2024 (ECF Nos. 52, 53, 54). Judge Griesbach's Decision and Order granting Harley's Motion to Dismiss and denying as moot the other two motions was handed down on June 5, 2024 (ECF No. 55). The Order for Judgment and the Judgment were entered on June 27, 2024 (ECF Nos. 57, 58).

## SUMMARY OF THE ARGUMENT

All claims in the Consolidated Amended Complaint ("CAC") stem from Harley-Davidson ("Harley")'s illegal warranty practices. Harley's warranty included the following instructions to its customers:

- "[u]se only Harley-Davidson approved parts and accessories. . . . [and] [i]nsist that your authorized Harley-Davidson dealer uses only genuine Harley-Davidson replacement parts and accessories to keep your Harley-Davidson motorcycle and its limited warranty intact." A.55 ¶ 114

- "use of aftermarket performance parts may void all or parts of your limited warranty." *Id*., ¶ 116

- "the use of parts and service procedures other than Harley-Davidson approved parts and service procedures may void the limited warranty." *Id*.

Plaintiffs allege that when owners used aftermarket parts, whether for repair, performance, or simply customization, Harley threatened to and often did void riders' warranties. And the CAC specifically pleads as well that dealerships were in fact incentivized to find reasons to void warranties. A.29 ¶ 34.

In 2022, the Federal Trade Commission ("FTC") filed a Complaint against Harley for the overbroad, categorical warranty requirement that forced customers to buy only Harley-Davidson replacement parts for the first two years after purchase, and Harley agreed to stop the practice.

Warranty restrictions on aftermarket parts not supplied by the warrantor are limited to those directly justified by prevention of future damage. *See e.g. GMC v. Gibson Chem & Oil Corp.,* 786 F.2d 105, 110 (2d Cir. 1986); *Fido's Fences, Inc. v. Canine Fence Co.,* 672 F. Supp. 303, 312 (E.D.N.Y. 2009)). Manufacturers have a right to control costs of repair on their part by ensuring that customers do not accidentally destroy the product with third-party parts. The Complaint in this matter alleges something quite different: that Harley, a monopolist in the relevant market for motorcycles, imposed a ban on third-party parts to increase sales of its own parts, which make up approximately 15% of its revenues, and that it did so across the board, untethered to any nexus between the restriction and the costs of repair. This kind of economically motivated blanket requirement to buy the monopolist's own aftermarket goods is an illegal tie.

Plaintiffs alleged this tie in three different ways.  First, as a tie with a captive aftermarket; second, as a monopoly tie because of Harley's monopoly in the foremarket; and third, as a Section 1-style agreement to restrain trade.  Each theory exists independently, with different elements.

The District Court engaged in little analysis.  Applying a rule of its own invention, the Court dismissed all ninety causes of action under every applicable state statute or common law cause of action, holding that no unlawful tie existed under any theory. A.346. In essence, the district court decided that a tying claim cannot involve a warranty, despite the fact that the FTC had found this warranty to be illegal – in fact, constituting an illegal tying arrangement under warranty law – and without addressing the obvious distinctions in the cases cited by Harley. The decision, contrary to this Circuit's precedent and that of antitrust law for the past several decades, prioritized form above all else. *See, e.g. Viamedia, Inc. v. Comcast Corp.,* 951 F.3d 429, 470 (7th Cir. 2020) ("In applying the antitrust laws, we care more about economic substance than about form," citing *Copperweld Corp. v. Independence Tube* Corp., 467 U.S. 752, 760 (1984)).

In *addition*, the District Court prematurely dismissed the MMWA claims, failing to take all of Plaintiffs' allegations as true for the purposes of the motion to dismiss stage, and inserting its own reasoning to justify Harley's actions. It also failed to account for the FTC's express findings that the warranty was an illegal tying arrangement and thus unenforceable, or for that matter that Harley did agree to stop using the warranty in question in response to the FTC Complaint. Plaintiffs adequately made out claims for violations of both the MMWA's Disclosure Rule and Tying Rule – in the case of the latter both expressly and impliedly. The District Court instead saw that Harley offered *some* justifications for its warranty and decided that those were enough to grant a motion to dismiss, again embracing form over substance.

# ARGUMENT

## I.   STANDARD OF REVIEW

The core of the District Court's holding was that "the alleged risk of losing warranty coverage in itself is not the type of economic coercion or forcing that constitutes a tie under antitrust law." A.342. This is the application of an incorrect standard, which this Court reviews *de novo*. *Vasquez v. Indiana Univ. Health, Inc.,* 40 F.4th 582, 584 (7th Cir. 2022), (reviewing dismissal of Sherman and Clayton Act claims for lack of geographic market under *de novo* standard), citing *Warciak v. Subway Restaurants, Inc.,* 949 F.3d 354, 356 (7th Cir. 2020).

## II.   THE DISTRICT COURT ERRED IN DECIDING THAT WARRANTIES CANNOT CREATE UNLAWFUL TIES

To establish an illegal tying arrangement,[1] "a plaintiff must show that: (1) the tying arrangement is between two distinct products or

---

[1] As an aside, though this case proceeds under various state laws rather than under the federal Sherman Act, during the briefing of the motion to dismiss, Plaintiffs and Defendants generally agreed that as to the nature of impermissible conduct, that they are generally interchangeable. In general, federal Section 1 ties are judged on a *per se* standard. Wisconsin's antitrust statute, for example, was intended to be a reenactment of the federal Sherman Antitrust Act and is generally controlled by federal court decisions. https://docs.legis.wisconsin.gov/statutes/statutes/133/03, citing *Lerma v. Univision Communications, Inc.*, 52 F. Supp. 2d 1011 (1999).

services, (2) the defendant has sufficient economic power in the tying market to appreciably restrain free competition in the market for the tied product, and (3) a not insubstantial amount of interstate commerce is affected." *Reifert v. S. Cent. Wisconsin MLS Corp.,* 450 F.3d 312, 316 (7th Cir. 2006) (quoting *Carl Sandburg Vill. Condo. Ass'n No. 1 v. First Condo. Dev. Co.,* 758 F.2d 203, 207-08 (7th Cir.1985)); *see also In re Deere & Company Repair Service Antitrust Litig.*, MDL No. 3030, 2023 WL 8190256, at *31 (N.D. Ill., Nov. 27, 2023) ("*Deere*") (adding "(4) the tying seller has an economic interest in the sales of the tied product"). Plaintiffs have done just that, through three separate theories: through a tie to a captive aftermarket, through a monopoly tie, and through a tie in restraint of trade.  *See, e.g.* A.31 ¶¶ 39-40; A.35-36 ¶ 51. Appellants are entitled to a reversal if the Complaint states a claim under any of these theories.

The district court allotted just seven pages to discussing the entirety of the antitrust allegations, adopting a rule that a company's warranty cannot support a tying claim. This rule is unsupported by the caselaw cited in the opinion, which, taken together, merely states the obvious proposition that a warranty may employ tailored restrictions on

third party parts or modifications, driven not by a desire to increase sales, but by the need to prevent future warranty claims. Harley's warranty dispenses with any such tailoring, and as alleged, simply bars all third-party parts in order to increase Harley's own parts sales. *See* A.55 ¶¶ 114, 116.

## A. The District Court Erred in Rejecting a Tie

It is noteworthy that while the law of tying is well developed, the cases addressing warranties as part of a tying claim are very limited. Most of the cases cited by the district court are decades old, scattered geographically, and importantly, all arise in the context of unfair competition litigation between competitors, alleged infringers, or terminated distributors.

Nowhere in the cases relied on by the District Court does a purchaser of a tied product assert that they were, in fact, coerced by the company imposing the tie. The plaintiffs here assert exactly that, as have purchasers in a similar case involving a motor vehicle warranty. *See Lambrix v. Tesla,* 23-cv-01145-TLT, 2024 WL 3403777 (N.D. Cal. June 17, 2024), discussed below.

The District Court's holding is not supported by the cases cited. The district court held that "the alleged risk of losing warranty coverage in itself is not the type of economic coercion or forcing that constitutes a tie under antitrust law" (A.342), citing *DXS, Inc. v. Siemens Med. Sys., Inc.*, 991 F. Supp. 859, 864 (E.D. Mich. 1997). But *DXS* did not involve a risk of losing warranty coverage. In that case, plaintiff was a competitor selling servicing on Siemens' X-ray machines. Siemens stopped selling parts to plaintiff. Plaintiff alleged that Siemens had tied its aftermarket repair parts (and warranties on those parts) to contracts for service that Siemens had begun selling. However, on summary judgment, the evidence showed that Siemens had never stopped selling repair parts, and sold them to customers who had not purchased Siemens service contracts. "Plaintiff has failed to prove the second necessary element of a tying claim because the evidence does not establish that the two products were ever tied. It is undisputed that the parts were readily available without the purchase of service." *Id.*

The rest of the cited cases fail to support the rule the district court applied because they in fact comprise a very different rule, which focuses on the justifications of the warranty limitations. These cases stand only

15

for the proposition that manufacturers may condition their coverage over the given product so as to limit damage that might be caused by a consumer unknowingly using products not meant for the products under warranty. The district court misapplied this, holding much more broadly that "limits to warranty protection 'reflect a defendant's unwillingness to extend free repair or replacement services to usage of its products ***that it cannot control***.'" A.343 (emphasis supplied), citing *Va. Panel Corp. v. MAC Panel Co.,* 133 F.3d 860, 871 (Fed. Cir. 1997). However, *Va. Panel* was decided after a jury trial on grounds specific to patent misuse, holding that "voiding a warranty is not use of a patent at all." *Id.* at 870.

The relative handful of cases addressing ties related to warranties stand for a narrow proposition: that if the third-party product can cause more harm, the warrantor can absolve itself of responsibility for that harm. The district court applied a much broader rule: that a warrantor can refuse to honor its warranty because any use of a third-party part renders all outcomes beyond its control. The latter rule finds no support in case law, and is contrary to settled jurisprudence in tying, and the FTC's interpretation of the MMWA.

16

In *GMC,* 786 F.2d at 110, the appellant was a producer of counterfeit transmission fluid, which damaged transmissions.  GM sued for infringement and other claims because Gibson Chemical produced inferior lubricant, fraudulently using GM's trademark.  Gibson asserted an unlawful tie as a desperation defense to its infringement at the preliminary injunction hearing.  *Id.* at 110.  The Court held that GM merely recommended its own transmission fluid and warned that damage arising from use of a third-party transmission fluid might not be covered.  *Id.*  This is far from an assertion that the entire warranty might be voided for use of any non-GM product.

In *Fido's Fences, Inc.,* 672 F. Supp. at 312, a terminated distributor's claims were dismissed for failure to establish antitrust injury.  *Id.* at 310. The tying claim, addressed after a litany of other issues, failed for lack of anti-competitive effect.  *Id.* at 312.  The *Fido's Fences* court also held, citing to *GMC*, that a threat to void the warranty of the invisible dog fence at issue if the consumer used non-recommended batteries was not coercion.  *Id.*

*GMC* and *Fido's Fence*s both arose only in the context of litigation between businesses selling aftermarket products, and not brought by

17

consumers; nowhere were these courts asked by the warranty holder to determine whether the warranty restrictions were coercive. *GMC*, further, was explicit and specific to the transmission fluid, which was counterfeit and could damage the car. To the extent *Fido's Fences* analyzed this reasoning, it did so in the context of a terminated installer raising the alleged tie in an attempt to void its own noncompete obligations. *See Digital Equip. Corp. v. Uniq Digital Techs., Inc.,* 73 F.3d 756, 763 (7th Cir. 1996) ("This is a mundane commercial case, in which a buyer has used the antitrust laws to postpone paying its debts.")

For that court's purposes, there was no reason to believe that the defendant did or would void a warranty for any reason except actual damage caused by a faulty battery. Here, the allegations are precisely the opposite: that Harley could and did use the pretext of any third-party parts purchase to void warranties, and did so *with the purpose* of coercing its ridership to buy only Harley's own parts. A.22-23 ¶ 4; A.68 ¶ 167.

In contrast to the cases the district court relied on, a recent district court case directly addresses these issues. That case, decided after the District Court's ruling here, is *Lambrix v. Tesla,* where a *consumer class* of plaintiffs specifically asserted that the defendant's warranty was used

to constrain their ability to choose third-party brands in the aftermarket. The Northern District of California decided that, indeed, Tesla's practice of using its warranties to coerce its customers into its own captive aftermarket stated a cognizable Sherman Act claim. There, in her detailed analysis, Judge Thompson noted that "[s]pecifically, Tesla *forces consumers to purchase the tied product by threatening to void warranties* if consumers use non-Tesla certified service providers or if they use non-OEM parts…." The *Lambrix* court went on to say that "[i]n *Eastman Kodak,* the plaintiffs were forced to buy services from only Kodak because only Kodak made the parts, and it would not sell the parts to independent repair firms." Similarly, moreover, "Tesla EV owners are limited in their options to receive both service and parts due to Tesla's market power in the EV submarket and Tesla's threats of warranty revocation." *Lambrix,* 2024 WL 3403777, at *14–15 (emphasis added).

Whereas previous warranty cases like *GMC* warned consumers that damage from unauthorized third-party parts might not be covered, Harley's warranty threatened that customers would lose coverage because of the use of any third-party part, regardless of any damage or effect on the bike itself.

Other cases cited by the District Court here are similarly inapposite. *RX Sys. v. Med. Tech. Sys.*, 1995 WL 577659 (N.D. Ill. Sep. 29, 1995) turned exclusively on the ninety-day duration of the warranty, which was so short that forgoing warranty protection on the machine was not coercive. In *Marts v. Xerox,* 77 F.3d 1109, 1112 (8th Cir. 1996), the District Court relied on a case decided on summary judgment with a complete factual record, not on the pleadings. "District courts skate on wafer-thin ice when they rely upon summary judgment cases in deciding motions attacking the pleadings." *Deere,* 2023 WL 8190256, at *16 (citing cases).

In *Marts*, Xerox's warranty offered servicing of copiers in a flat exchange for abiding by the warranty's requirement to use only Xerox cartridges, and the Court appears to have inferred a "lifecycle pricing" calculus: customers were able to shop around and figure out whether or not it was cheaper to buy different ink cartridges and receive service elsewhere than to keep the Xerox warranty, taking the aftermarket prices into account in making their foremarket purchase decision, as discussed below. The Complaint here pleads in detail that this was not

20

possible. A.43 ¶ 75.[2] Moreover, in discussing *Marts*, the District of Maine, in an opinion by Judge Woodcock, noted that *Marts* had actually left "*open the possibility* that a warranty provided at no additional charge with the purchase of a copier might be a tying product" even as it noted that such a claim "'does not fit easily into the existing structure of antitrust law,'" *BookLocker.com, Inc. v. Amazon.com, Inc.,* 650 F. Supp. 2d 89, 99 (D. Me. 2009) (denying a motion to dismiss where the tying product was a membership agreement).

## B.     Plaintiffs Have Established a Viable Tying Claim

Moving beyond the District Court's erroneous warranty rule, Plaintiffs have more than adequately made out a tying claim – not only through a captive aftermarket theory, but also through alternative, independently cognizable theories of tying through abuse of monopoly and attempted monopolization, and a Section 1-style tying through agreement in restraint of trade, all of which will be discussed more in detail below. Each of these theories entails pleading one or more product

---

[2] Furthermore, Xerox did not have a monopoly in the primary market. Harley does.  A.35-36 ¶¶ 50-51.  Where the tying firm has a monopoly in the foremarket, the purchaser cannot avoid the supracompetitive charge by choosing a different foremarket option.  *Lambrix* at *7.

markets.  The CAC alleges well-defined markets in significant detail, which the District Court's did not reach.

### 1.  Relevant Markets

Plaintiffs plausibly pleaded relevant antitrust markets: both for the tying market of new, American-made, large roadgoing motorcycles; as well as the tied Compatible Parts market.

"The proper market definition . . . can be determined only after a factual inquiry into the 'commercial realities' faced by consumers." *Eastman Kodak v. Image Tech. Services, Inc.*. 451,  482 (1992) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 572 (1966)).  "Because market definition is a deeply fact-intensive inquiry, courts hesitate to grant motions to dismiss for failure to plead a relevant product market." *Todd v. Exxon Corp.*, 275 F.3d 191, 199-200 (2d Cir. 2001) (J. Sotomayor); *accord E.I. du Pont de Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 444 (4th Cir. 2011).  Plaintiffs need only plead "the rough contours of a relevant market," *Deere,* 2023 WL 8190256, at *16, citing *Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717, 738 (7th Cir. 2004).

For antitrust purposes, a relevant market "is comprised of the 'commodities reasonably interchangeable by consumers for the same purposes.'" *Sharif Pharm., Inc. v. Prime Therapeutics, LLC*, 950 F.3d 911, 916-17 (7th Cir. 2020) (quoting *United States v. E. I. du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956) ("*Cellophane*")). Its outer limits "are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it." *Id.* at 918 (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 327 (1962)). Particularly at the motion to dismiss stage, both product markets alleged by Plaintiffs more than clear this low bar.

Plaintiffs adequately pleaded a tying market for new, roadgoing, American-made motorcycles. American-made bikes do not experience cross-elasticity of demand with non-American-made bikes. A.34-35 ¶¶ 48-49. Beginning in the 1980s, Harley focused its efforts on large displacement engines - bikes on which, due to tariffs and other reasons, Japanese manufacturers could not and did not compete - and so Japanese manufacturers continued their focus on small-engine bikes, known as Universal Japanese Motorcycles (or "UJM bikes"). A.28-29 ¶¶ 30-32. Consumers' differentiation between American-made bikes and UJM

bikes have persisted ever since. Consumers and publishers recognize American-made bikes as their own distinct product market, with a dedicated enough consumer base to support a specialty periodical, American Iron Magazine, for thirty years, A.34-35 ¶ 48.

Harley owners are dedicated to expressing their patriotism through riding an American-made bike and would not ride a foreign-made bike even if it were a comparable machine at a lower price. A.35 ¶ 49. Harley itself understands this commitment and seeks to profit from it, adopting patriotic iconography for its products and selling USA-themed merchandise for its bikes. A.35 ¶¶ 49-50. On multiple occasions, this patriotic aspect of the subculture has been the subject of ethnographic academic study. A.35-36 ¶¶ 51-52. These shared understandings among consumers and sellers that foreign-made products could not be satisfactorily substituted for those inside the market suffice to adequately allege the relevant product market. *Dixon v. Nat'l Hot Rod Ass'n,* No. 119-CV-01470-JRS-DML, 2021 WL 1175198, at *7 (S.D. Ind. Mar. 29, 2021). And used bikes are not reasonably interchangeable with new bikes within the large, American-made, roadgoing motorcycle market, and Plaintiffs' exclusion of used bikes from the relevant product

market is plausible.  Manufacturers' warranties are only available with new bikes, and consumers cannot substitute used bikes for new bikes without sacrificing this important, non-replaceable attribute. A.33-34 ¶ 47.

Plaintiffs also pleaded an adequate tied market for Harley-Davidson Compatible Parts. "The relevant market for antitrust purposes is determined by the choices available to [Harley] owners." *Eastman Kodak*, 504 U.S. at 481–82 (upholding one market comprising all parts of Kodak photocopiers and micrographic equipment and one market for servicing of all those machines).  As the U.S. Supreme Court has noted, "[C]ourts should 'combin[e]' different products or services into 'a single market' when 'that combination reflects commercial realities.'" *Ohio v. Am. Express Co.,* 138 S. Ct. 2274, 2285 (2018) (quoting *Grinnell Corp.,* 384 U.S. at 572). In *Grinnell Corp.,* Justice Douglas suggested that distinct, non-interchangeable services could be grouped together into one market if "companies recognize that to compete effectively, they must offer all or nearly all types of service."  384 U.S. at 572; *see also Weiss v. York Hosp.,* 745 F.2d 786, 826 (3d Cir. 1984) ("Where, however, several goods or services are generally offered by the same providers, it is not

unreasonable for a jury to conclude that the market for antitrust purposes includes all of those goods or services." (citations omitted)). Furthermore, "[a] cluster of products," such as Harley-compatible parts, "can comprise a relevant product market 'if the cluster is itself an object of consumer demand.'" *Sharif Pharmacy, Inc.,* 950 F.3d at 918 (rejecting defendant's contention that market comprising all prescription drugs, which were obviously not interchangeable with one another, was impermissibly broad) (cleaned up)). For example, in *United States v. Phillipsburg National Bank and Trust Company,* the Supreme Court grouped multiple financial services together into a relevant market of "commercial banking" because customers generally obtain all banking services from one place. 399 U.S. 350, 360-61 & n.4 (1970). *See Deere* (tied market for "repair services" for various John Deere tractors and combines).

Here, Plaintiffs' allegation that Harley-compatible parts are distinct from non-compatible parts is self-evident: a Harley owner logically would not repair their bike with parts that would not be functional when used on a Harley bike, and so prices of non-compatible parts cannot discipline prices of Compatible Parts. *See* A.31 ¶ 39; A.36 ¶

54. Compatible Parts are also distinct in that they use imperial or SAE units rather than metric units used by parts compatible with Japanese bikes.  *Id.* Sellers of Harley-compatible parts generally manufacture or sell a broad array of such parts, and group and display them together as Harley-compatible (or similar categorization) for consumer ease. A.31 ¶ 39; A.37-38  ¶¶  58-60;  A.39  ¶  62;  A.41-43  ¶¶  68-72.  Additionally, consumers  consider  and  advise  one  another  about  where  to  buy compatible parts, generally, rather than distinguishing among sellers of compatible armrests, windshields, or headlights, *see, e.g., id.* A.38-39 ¶ 61; A.40-41  ¶¶  66-67.   One obvious reason for this is that Harleys are long-lived and can last for generations, *id.* A.22 ¶ 3, from which it can be reasonably  inferred  that  loyal  Harley  owners  will  be  making  multiple different repairs and customizations over the life of the bike, *id.* - first a windscreen, later saddlebag, and so on - and to source them, owners will turn each time to the unified Compatible Parts Market, not to a discrete market  focused  solely  on  that  single  compatible  part.   Thus, it is the marketplace for these multiple parts that is the object of consumer demand. *Sharif,* 950 F.3d at 918.  The Compatible Parts Market properly combines different parts into a single market because that combination

"reflects commercial realities." *Am. Express Co.,* 138 S. Ct. at 2285 (quoting *Grinnell Corp.,* 384 U.S. at 572).

### 2.     Captive Aftermarket Tying

In *Epic Games v. Apple, Inc.,* 67 F.4th 946, 976 (9th Cir. 2023), the Ninth Circuit recounted the elements required to establish a single-brand aftermarket, stating that

> "to establish a single-brand aftermarket, a plaintiff must show: (1) the challenged aftermarket restrictions are 'not generally known' when consumers make their foremarket purchase; (2) 'significant' information costs prevent accurate life-cycle pricing; (3) 'significant' monetary or non-monetary switching costs exist; and (4) general market-definition principles regarding cross-elasticity of demand do not undermine the proposed single-brand market.

Plaintiffs have sufficiently alleged all of these elements – that Harley customers lack the general knowledge of the aftermarket restrictions when they make their foremarket purchases of the bike and warranty bundles due to the hidden nature of the disclosures (A.52 ¶104); that the it is impossible to accurately lifecycle price (A.42-47 ¶¶ 72-84); that the switching costs are high (*see, e.g.,* A.46 ¶ 81); and that the there is no cross-elasticity of demand that would undermine the single-brand market (A.33 ¶ 45).

The relevant market for antitrust purposes is properly a single-brand aftermarket "where demand for a good is entirely dependent on the prior purchase of a durable good in a foremarket." *Epic*, 67 F.4th at 976. The Supreme Court has recognized captive aftermarket claims in situations where a defendant's enacted policies serve to capture consumers in an aftermarket, restricting their access to third party providers. *See Eastman Kodak,* 504 U.S. at 458; *see also Deere*, 2023 WL 8190256, at *34 (holding exclusionary conduct adequately alleged for purposes of Section 2 claim where "Deere's alleged conduct excludes competitors at the cost of Deere's customers' choices to perform their own repairs or have a local repair shop perform the repairs"); *In re Dealer Mgmt. Sys. Antitrust Litig.,* 362 F. Supp. 3d 477, 496 (N.D. Ill. 2019) ("what *Eastman Kodak* holds is that firms with market power cannot deal in complementary products in 'ways that take advantage of customers' sunk costs,'" quoting *Schor v. Abbott Labs.,* 457 F.3d 608, 614 (7th Cir. 2006)).

The Complaint pleads that Harley's threat and practice of warranty revocation did operate to trap its customers in its captive aftermarket, effectively depriving them of a choice to access a competitive aftermarket

29

during the two years in which they were obliged to follow the terms of the warranty. A.36 ¶ 52; A.50 ¶ 98.

In *In re Deere & Company Repair Service Antitrust Litig.,* the Northern District of Illinois considered an allegation very like the one at issue - that a monopoly tractor maker unlawfully prevented its buyers from using any but its own dealers' repair services - and held that the plaintiffs stated a claim for unlawful tying of a derivative aftermarket, both under Section 1 and Section 2 of the Sherman Act. *Deere*, slip op. at 89. Harley's demand that riders buy only its branded parts or have the warranty protection revoked, drives up the cost of owning a motorcycle altogether, which this Circuit has expressly recognized as tying. *See Viamedia, Inc.,* 951 F.3d at 470 (holding that "[i]n applying the antitrust laws, we care *more about economic substance than about form*" (emphasis added) and that the policy of banning the use of Viamedia had the "practical effect" of forcing the use of Comcast's ad rep services), citing *Collins Inkjet Corp. v. Eastman Kodak Co.,* 781 F.3d 264, 272 (6th Cir. 2015) ("When a defendant *adopts a policy that makes it unreasonably difficult or costly to buy the tying product* (over which the defendant has market power) without buying the tied product from the defendant, it

'forces' buyers to buy the tied product from the defendant and not from competitors") (emphasis added). But in the case at hand, the district court expressly turned this precedent on its head, choosing form over function. According to this decision, any policy, so long as a manufacturer takes care to include it within a warranty, can stand. Taking this logic to its conclusion, if Harley wanted to require that consumers first buy its branded tank tops or skull rings in order to get a warranty-covered engine repair for their bikes, it could do so.

The CAC alleges that motorcycle repairs are costs that cannot be reliably anticipated two years in advance with accuracy - in other words, these consumers are not able to effectively forecast "lifecycle cost." *See* A.42-47 ¶¶ 72-84. As the Supreme Court recognized, "[l]ifecycle pricing of complex, durable equipment is difficult and costly." *Eastman Kodak Co.,* 504 U.S. at 473. A customer factoring a captive aftermarket into initial purchase "must acquire a substantial amount of raw data and undertake sophisticated analysis […] [of] price, quality, and availability of products needed to operate, upgrade, or enhance the initial equipment, as well as service and repair costs, including estimates of breakdown frequency, nature of repairs, price of service and parts." *Id.*

This pleading satisfies the *Epic* factor, but where as here the defendant firm has a monopoly in the tying market, this factor may be unnecessary. Indeed, in *Lambrix*, the court there held that "from a practical perspective, the relevance of information costs, switching costs, and general knowledge of restrictions is reduced where a defendant has market power in the foremarket… [c]onsumers in a foremarket within which a company has market power have minimal ability to discipline the company's conduct in aftermarkets, regardless of information costs, switching costs, and general awareness of restrictions." *Lambrix,* 2024 WL 3403777, at *8. and because the plaintiffs had alleged that Tesla had "65% to 80% market share in the EV foremarket during the class period" the court thus found that Tesla had sufficient market power. *Id.* The tying market asserted in the CAC is one in which Harley is a monopolist, with only one, fringe firm competing. Buyers desiring a large, American road bike do not have meaningful options in the foremarket, and so the foremarket purchase cannot discipline the prices Harley can command it the aftermarket. Competing aftermarket suppliers exist for the parts, but Harley's threats impose an unreasonable cost on their use.

And Plaintiffs have more than adequately pleaded the components of this tying claim, all of which are left unaddressed by the District Court's opinion following its application of an erroneous standard for coercion.

### 3.    Monopoly Tying

"Anticompetitive conduct is the use of monopoly power to foreclose competition, to gain competitive advantage, or to destroy a competitor." *Deere,* 2023 WL 8190256, at *34 (holding that the derivative aftermarket tie alleged, based on Deere's dominance in the tying equipment market and its actions to tie the repair services market, also states a claim under Section 2 of the Sherman Act.) The Complaint alleges that Harley has monopoly power in the tying market – the market for American-made, large roadgoing motorcycles A.35-36 ¶¶ 50-51.

Plaintiffs have also alleged that Harley is using its tying market monopoly to attempt to monopolize in the Parts Market, which is a cognizable claim. *Spectrum Sports, Inc. v. McQuillan,* 506 U.S. 447, 447-48 (1993) (courts "have generally required a plaintiff in an attempted monopolization case to prove that (1) the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to

monopolize and (3) a dangerous probability of achieving monopoly power. Unfair or predatory conduct may be sufficient to prove the necessary intent to monopolize.").

And the FTC's Complaint alleging Harley's predatory warranty practices is sufficient to show at the pleading stage the necessary intent. Moreover, the Complaint also alleges the difficulty of shopping around for parts (A.46 ¶ 81), meaning that with Harley's further warranty constraints it did have a dangerous possibility of gaining monopoly power over the Parts market. And to be sure, these practices resulted in significant antitrust injury and damages.

### a)     Antitrust Injury and Damages

Plaintiffs have sufficiently pleaded antitrust injury and damages. In a tying case, "the measure of damages . . . is the amount of the overcharge, or difference between the price paid for the tied product and its fair market value." *Johnson v. Nationwide Indus., Inc.,* No. 77 C 1162, 1985 WL 2003, at *1, *3 (N.D. Ill. July 1, 1985) (denying defendants' motion for summary judgment and finding plaintiffs' evidence "sufficient to create a triable issue on damages, at least in the absence of more compelling evidence from defendants that their management fees were

fully consonant with what was charged elsewhere in the Chicago market"), *on reconsideration*, No. 77 C 1162, 1986 WL 7072 (N.D. Ill. June 16, 1986) ("[T]he measure of damages in a tying case is the difference between the price paid for the tied product and its fair market value[.]"). *See also Kaiser Aluminum & Chem. Sales v. Avondale Shipyards,* 677 F.2d 1045, 1054 (5th Cir. 1982), *cert. denied,* 459 U.S. 1105 (1983) ("In a tying arrangement, 'the ordinary measure of damages would be the difference between the price actually paid for the tied product and the price at which the product could have been obtained on the open market[.]'" (internal citation omitted)).

Here, Plaintiffs allege that Harley maintains market power in both the tied and tying markets and used its market power in the market for motorcycles to coerce customers not to purchase Compatible Parts from its competitors. *See, e.g.,* A.47-50 ¶¶ 88-97. Plaintiffs allege that they paid above-market prices for parts due to the illegal tying arrangement. *See, e.g.,* A.50 ¶ 98, A.58 ¶ 124, A.61 ¶ 134. This is all that is required at the pleading stage.[3] *See, e.g., Maryland Staffing Services, Inc. v.*

---

[3] Plaintiffs have also alleged that because of Harley's anticompetitive conduct, it is difficult - if not, impossible - to obtain the total package cost at the time of purchase. *See, e.g.,* A.43 ¶ 75, A.47 ¶ 84. At the

*Manpower, Inc.,* 936 F. Supp. 1494, 1503 (E.D. Wi. 1996) (complaint adequately alleged illegal tying arrangement at the motion to dismiss stage until the evidentiary record was more fully developed); *Packaging Supplies, Inc. v. Harley-Davidson, Inc.,* No. 08-CV-400, 2009 WL 855798, at \*5 (N.D. Ill. Mar. 30, 2009) ("[W]hile a plaintiff at the pleading stage must allege plausible facts, it need not marshal all of its evidence.").

Harley's warranty limitations, challenged by the FTC, cut off any meaningful consumer choice as to parts for a period of two years. This served to as means for Harley to foreclose competition from parts manufacturers for customers who might want to customize their new bikes, without any regard to the issues of potential damage cited by *GMC* or *Fido's Fences.* This impacted the price of parts as a whole and thus helped to create barriers to entry for new competition into the parts market. *See* A.48-49 ¶ 92, A.50 ¶ 98.

Plaintiffs have also more than adequately pleaded the type of economic harm that this Circuit's adopted *Collins Inkjet* rule prohibits. *See, supra, Collins Inkjet,* 781 F.3d at 272. Every one of Harley's

---

pleading stage, before fact and expert discovery have been conducted, these allegations are sufficient.

ridership overpays due to the warranty violations. Each motorcycle purchaser overpays because of the deficient warranty, but further, the entire subset of those riders who also buy parts is additionally overcharged on the parts. Harley's improper tie stifled competition from non-Harley parts makers, trapping the warranty holders into buying only Harley's branded versions, and allowing Harley to charge a supercompetitive price for its parts. Parts buyers are alleged to constitute a distinct class, A.58-59 ¶ 127, with their own additional injury and damages.

### 4.    Tying Agreement Restraining Trade

Plaintiffs have also alleged a Sherman Act section 1-style agreement restraining trade. In a section 1 tying scenario, "a seller conditions the sale of a product or service on the buyer's buying another product or service from or (as in this case) by direction of the seller. The traditional antitrust concern with such an agreement is that if the seller of the tying product is a monopolist, the tie-in will force anyone who wants the monopolized product to buy the tied product from him as well, and the result will be a second monopoly." *Sheridan v. Marathon*

*Petroleum Co. LLC,* 530 F.3d 590, 592 (7th Cir. 2008) (concerning a section 1 tie).

To allege a restraint of trade in a rule of reason case, a plaintiff must "plead 'anticompetitive effects,' and 'that the injury complained of be of a type that the antitrust laws were designed to guard against, and further that the antitrust violation be the direct cause of plaintiff's injury.'" *In re Dealer Mgmt. Sys. Antitrust Litig.,* 313 F. Supp. 3d 931, 950 (N.D. Ill. 2018) (quoting *Havoco of Am., Ltd. v. Shell Oil Co.,* 626 F.2d 549, 556 (7th Cir. 1980)); *see also Leegin Creative Leather Prod., Inc. v. PSKS, Inc.,* 551 U.S. 877, 885 (2007) (rule of reason ultimately requires "the factfinder [to] weigh[ ] all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition").

Furthermore, "a plaintiff's threshold burden under the [r]ule of [r]eason analysis involves the showing of a precise market definition in order to demonstrate that a defendant wields market power, which, by definition, means that the defendant can produce anticompetitive effects." *Vital Pharms., Inc. v. Berlin Packaging LLC,* 632 F. Supp. 3d 780, 786 (N.D. Ill. 2022), quoting *Agnew v. National Collegiate Athletic*

*Ass'n,* 683 F.3d 328, 337 (7th Cir. 2012). Plaintiffs have satisfied all of these requirements as described below.

### a)    Market Power

"Market power is the 'power to raise prices significantly above the competitive level without losing all of one's business' and is 'normally inferred from the possession of a substantial percentage of the sales in a market carefully defined in terms of both product and geography.'" *Id.* at 787 (quoting *Valley Liquors, Inc. v. Renfield Importers, Ltd.,* 822 F.2d 656, 666-67 (7th Cir. 1987)). "[E]conomic power over the tying product can be sufficient even though the power falls far short of dominance and even though the power exists only with respect to some of the buyers in the market." *Deere,* 2023 WL 8190256, at *31, citing cases. Alleging defendant's dominant position in the tying market (as the CAC does, see, e.g., A.35 ¶ 50) is sufficient. *Id.*

Harley has sufficient market power in the tying market, and a defendant need only have market power in the tying market. *Packaging Supplies, Inc.,* 2009 WL 855798, at *5 (a plaintiff making a tying claim "need only present allegations that the tying seller has sufficient economic power in the *tying* market to appreciably restrain free

competition in the market for the tied product") (citing *Reifert,* 450 F.3d at 316-17). When the seller's share of the market is high, or when the seller offers a unique product that competitors are not able to offer, the likelihood is that market power exists. *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.,* 826 F.2d 712, 720 (7th Cir. 1987). Harley's market power in the tying market is undeniable: not only is it is the number one seller of new motorcycles in the U.S., but as one of only two heritage American motorcycle brands to have survived past the Great Depression it dwarfs its only significant competitor in the market, Indian, by nearly 6 to 1, as Plaintiffs plead. A.35 ¶ 50. It is a reasonable inference that Harley's market share is at *least* around 80%.[4]

### b)  Volume of Commerce

Plaintiffs have also satisfied the volume of commerce requirement. In this Circuit, "'[t]he requirement that a substantial volume of

---

[4] To be exact, as pleaded in the CAC (*see* A.35 ¶ 50), Harley is larger than Indian by a ratio of 5.86 to 1. If Harley and Indian are the only competitors in the market, as it generally appears, then Harley has an 85.42% market share. $5.86 / 6.86 = 0.85422741$. If allowing for remaining smaller competitors, generously estimated at half of Indian's market share, then Harley still comes out with a 79.61% market share, or 80% rounded up. $5.86 / (5.86 + 1 + 0.5) = 0.79619565$.

commerce in the tied product market be affected by the tie does not look to the percentage or share of the tied market affected. Rather, the controlling consideration is simply whether a total amount of business, substantial enough in terms of dollar volume so as not to be merely *de minimis*, is foreclosed to competitors by the tie.'" *Gumwood HP ShBring Partners, L.P. v. Simon Prop. Grp., Inc.,* No. 3:11-CV-268 JD, 2013 WL 3214983, at *12 (N.D. Ind. Mar. 13, 2013) (quoting *State of Ill. ex rel. Hartigan v. Panhandle E. Pipe Line Co.,* 730 F. Supp. 826, 931 (C.D. Ill. 1990)). The Supreme Court has long held that even amounts as low as $60,800 can suffice as "substantial" in the context of volume of commerce. *United States v. Loew's, Inc.,* 371 U.S. 49 (1962).

It is *undisputed* that Harley is the top-selling motorcycle manufacturer in America, with an annual revenue of over $5 billion. A.30-31 ¶ 37. And it is the top seller of Compatible Parts in the country as well with annual revenue of approximately $482.2 million - 23 times the size of its next competitor. A.49 ¶ 95.

### c)    Anticompetitive Effects

Lastly, Plaintiffs have also pleaded adequate anticompetitive effects, as they include the artificially driven up costs of the parts market

as a whole, particularly Harley's own parts. As stated in the CAC, Plaintiffs have demonstrated that Harley's revenue for parts is likely "almost 23 times the size of its nearest competitor." A.49 ¶ 95. Through its illegal tie, Harley captured a large percentage of the potential parts customer base and could set prices accordingly, thereby driving up prices in the parts market as a whole. *See e.g.* A.51 ¶ 100.

## III. THE DISTRICT COURT ERRED IN DISMISSING PLAINTIFFS' FRAUD-BASED CLAIMS AND CLAIMS FOR UNJUST ENRICHMENT

The Complaint properly alleges statutory causes of action under consumer fraud laws that support claims for anticompetitive conduct, and unjust enrichment claims arising from anticompetitive conduct. These claims require, under Fed. R. Civ. P. 9(b), that the Complaint "state with particularity the circumstances constituting fraud." The Complaint does not lack for particularity in any respect. While the "level of particularity required under Rule 9(b) depends upon the facts of the case, the pleading 'ordinarily requires describing the who, what, when, where, and how of the fraud.'" *Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F. 3d 732, 737 (7th Cir. 2014) (quoting *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011)). Certain components, such as "malice,

intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Each statutory and common law claim alleged in the Complaint supports a claim based on anticompetitive conduct. *See e.g. In re Packaged Seafood Products Antitrust Litigation*, 242 F.Supp.3d 1033, 1073 (S.D. Cal. 2017) (holding that allegations of antitrust violations were sufficient to make out statutory and common law claims).

The unjust enrichment claims, meanwhile, were disposed of summarily by the district court after reaching in error the decision that the fraud-based claims should be dismissed. Therefore, as Plaintiffs met the pleading requirements for the fraud-based claims, both they and the unjust enrichment claims should also be reinstated.

## IV.  PLAINTIFFS ADEQUATELY PLEADED THEIR CLAIM UNDER THE MAGNUSON-MOSS WARRANTY ACT

The Magnuson-Moss Warranty Act ("MMWA") is "a remedial statute designed to protect the purchasers of consumer goods from deceptive warranty practices." *Miller v. Willow Creek Homes, Inc.*, 249 F.3d 629, 630 (7th Cir. 2001).  Here, Defendants violated the MMWA in three ways: 1) by expressly and impliedly tying their Warranty to use of Harley-Davidson branded parts in violation of 15 U.S.C. § 2302(c) and 16

C.F.R. § 700.10; 2) by concealing the full terms of the Warranty and requiring purchasers to consult with a Harley-Davidson dealer to discover the terms of the warranty in violation of 15 U.S.C. §2302(a) and 16 C.F.R. § 701.3(a)(2); and 3) by violating the FTC's pre-sale availability rule requiring the text of the warranty to be made readily available to the prospective buyer, 15 U.S.C. § 2302(b) and 16 C.F.R. § 702.3(b). *See* A.56-58 ¶¶ 117-124.

The FTC agrees with Plaintiffs. On October 21, 2022, the FTC issued a Complaint and Decision and Order (the "Order") charging Defendants with violating the MMWA as set forth by Plaintiffs in their CAC. *See* A.53-54 ¶¶ 109-110; A.275-284. In its Order, the FTC stated: "The Commission considered the matter and determined that it had reason to believe that Respondent has violated the Federal Trade Commission Act and the Magnuson-Moss Warranty Act, and that a Complaint should issue stating its charges in that respect." A.275. The Order also set forth various forms of remedial action to be taken by Defendants to cure consumer deception regarding its Warranty. *Id.* at A.275-284.

44

Despite Plaintiffs' plausible allegations, and the FTC's findings, regarding Defendants' violations of the MMWA, the District Court granted Defendant's motion to dismiss.  For the reasons set forth below and herein, the District Court erred in concluding that Defendants' Warranty does not violate the MMWA, and its decision to grant Defendants' motion to dismiss should be reversed.

### A.    Defendants Expressly and Impliedly Tie the Warranty to Use of Harley-Davidson Branded Parts in Violation of the MMWA

The MMWA prohibits a warrantor from conditioning a warranty for a consumer product that costs more than $5.00 on the consumer's use of an article or a service (other than an article or a service provided without charge) which is identified by brand, trade, or corporate name, unless the warrantor applies for and receives a waiver from the Commission.  15 U.S.C. § 2302(c).  In other words, Defendants cannot condition their Warranty on the purchase of Harley-Davidson branded parts unless they provide those parts at no charge to consumers (or receive a waiver from the FTC, which they have not).

The FTC issued a Rule interpreting 15 U.S.C. § 2302(c), which made clear that any express or implied tying of warranty coverage to use of authorized repair services and replacement parts is unlawful:

> No warrantor may condition the continued validity of a warranty on the use of only authorized repair service and/or authorized replacement parts for non-warranty service and maintenance (other than an article of service provided without charge under the warranty or unless the warrantor has obtained a waiver pursuant to section 102(c) of the Act, 15 U.S.C. 2302(c)). For example, provisions such as, "This warranty is void if service is performed by anyone other than an authorized 'ABC' dealer **and all replacement parts must be genuine 'ABC' parts,"** and the like, are prohibited where the service or parts are not covered by the warranty. These provisions violate the Act in two ways. First, they violate the section 102(c), 15 U.S.C. 2302(c), ban against tying arrangements. Second, such provisions are deceptive under section 110 of the Act, 15 U.S.C. 2310, because a warrantor cannot, as a matter of law, avoid liability under a written warranty where a defect is unrelated to the use by a consumer of "unauthorized" articles or service. **In addition, warranty language that implies to a consumer acting reasonably in the circumstances that warranty coverage requires the consumer's purchase of an article or service identified by brand, trade or corporate name is similarly deceptive. For example, a provision in the warranty such as, "use only an authorized 'ABC' dealer" or "use only 'ABC' replacement parts," is prohibited where the service or parts are not provided**

> **free of charge pursuant to the warranty**. This does not preclude a warrantor from expressly excluding liability for defects or damage caused by "unauthorized" articles or service; nor does it preclude the warrantor from denying liability where the warrantor can demonstrate that the defect or damage was so caused.

16 C.F.R. § 700.10(c) (emphasis added).  As such, the warrantor (here Defendants) can violate the MMWA tying prohibition in two ways, either by expressly conditioning the warranty on use of branded parts at cost, or by impliedly suggesting to a reasonable consumer that the warranty requires use of branded parts to maintain the warranty (even if it is not expressly required).  Contrary to the District Court's finding, Plaintiffs have plausibly alleged violations of both the express and implied tying prohibitions.

### 1.    Defendants Expressly Tie the Warranty to Harley-Davidson Branded Parts

The District Court erred by finding that the Warranty did not expressly tie the continuing validity of the Products' warranty to the purchase of first party parts and services. A.331-337.

Defendants expressly tied the Warranty to the use of authorized parts.  In the section entitled "Keeping it all Harley-Davidson," Defendants instruct consumers to *"[u]se only Harley-Davidson approved*

*parts and accessories* that have been designed, tested, and approved for your model and model year motorcycle. . . . [and to] *[i]nsist that your authorized Harley-Davidson dealer uses only genuine Harley-Davidson replacement parts and accessories to keep your Harley-Davidson motorcycle and its limited warranty intact*." A.55 at ¶ 114 (emphasis added). The Warranty also states that "*use of aftermarket performance parts may void all or parts of your limited warranty*." *Id.*, ¶ 116 (emphasis added). Under "Service Records," the Warranty states that "the *use of parts and service procedures other than Harley-Davidson approved parts and service procedures may void the limited warranty*." *Id.* (emphasis added).

This is an express tie MMWA violation as Defendants repeatedly use imperatives (*e.g.*, "use only" and "insist"), not recommendations. *See* A.55 at ¶ 114. The CAC pled all necessary elements of a violation of the MMWA's tying rule. *See Schaer v. Newell Brands Inc.*, 3:22-CV-30004-MGM, 2023 WL 2033765, at *2 (D. Mass. Feb. 16, 2023) (finding that a similar warranty violated the MMWA express tying prohibition). Plaintiffs' argument is bolstered by the FTC's finding that Defendants'

Warranty violated the express tying prohibition under the MMWA. A.253-255.

The District Court disregarded the imperatives in the Warranty directing the consumer to "use only" Harley-Davidson branded parts to maintain coverage under the Warranty and focused instead on the separate language stating that use of aftermarket parts "may void" the Warranty. The District Court concluded that "Harley-Davidson is simply noting that it would not be responsible for defects or damage caused by 'unauthorized' articles or service." A.336. But that is not what the above-cited language states. Instead, Defendants state: "[u]se only Harley-Davidson approved parts and accessories that have been designed, tested, and approved for your model and model year motorcycle.... [and] [i]nsist that your authorized Harley-Davidson dealer uses only genuine Harley-Davidson replacement parts and accessories **to keep your Harley-Davidson motorcycle and its limited warranty intact**." A.55 at ¶ 114 (emphasis added). This provision makes clear that use of Harley-Davidson approved parts is necessary to keep the Warranty intact. There is no qualification in the language. This is an express tie.

49

Moreover, the FTC interpretation of § 102(c) forbids language "*such as . . .* this warranty is void *. . . and the like*." 16 C.F.R. § 700.10(c).[5] Combining instructions to "use only authorized parts and services" and "insist on use of authorized parts and services" with dire (albeit unclear) warnings that failing to do so "may void" the limited warranty is tantamount to saying that it will do so, and thus falls within the group of prohibited statements.

In reaching its decision, the District Court relied on *Young v. Verizon's Bell Atl. Cash Balance Plan*, 615 F.3d 808, 823 (7th Cir. 2010) for the proposition that contracts are interpreted as a whole to support the conclusion that Defendants did not improperly tie the warranty to Harley-Davidson branded parts. A.333-334. However, the District Court erred in applying the principle of contract law set forth in *Young* because its interpretation of the Warranty renders provisions superfluous by

---

[5] The District Court's opinion differentiated between "may" and "will," but it relied entirely on cases that do not interpret the MMWA. *Dunbar v. Kohn Law Firm, S.C.*, 896 F.3d 762, 765 (7th Cir. 2018), for example, concerned debt collection letters that contained false or misleading statements, not a warranty. By contrast, the FTC has interpreted statements like those made by Defendants in the context of warranty language to violate the MMWA.

erasing Defendants' multiple statements suggesting that use of unauthorized parts and services would void the limited warranty, most notably Defendants' statement that the consumer "[u]se only Harley-Davidson approved parts and accessories that have been designed, tested, and approved for your model and model year motorcycle.... [and] [i]nsist that your authorized Harley-Davidson dealer uses only genuine Harley-Davidson replacement parts and accessories to keep your Harley-Davidson motorcycle and its limited warranty intact."  A.55 at ¶ 114. *Land of Lincoln Goodwill Indus., Inc. v. PNC Fin. Servs. Grp., Inc.*, 762 F.3d 673, 679 (7th Cir. 2014) ("[W]henever possible we attempt to give meaning to every provision of the contract and avoid a construction that would render a provision superfluous.").  The District Court's reading would render said provisions redundant with other lawful provisions within the limited warranty.

Further, the District Court erred in concluding that an unrelated provision in the "Service Records" section related to an EPA Consent Decree modified the language of the Warranty regarding unauthorized parts to refer to those in violation of the Consent Decree.  A.334-335. Based on a fair reading of the totality of the Warranty materials,

Defendants assertions are not so limited. While the District Court only addressed the "Service Records" portion of the Warranty, it ignored the other two sections identified above, including Defendants' instructions that consumers must use authorized parts and services to "keep your limited warranty intact." Even the warranty's language under its "Note" at the back of the booklet is presented not only as a distinct exclusion from the use of "parts and service procedures other than Harley-Davidson approved parts and service procedures," but also in an entirely different, unrelated section, separated by several pages of text. No reasonable reader would recognize two unrelated clauses separated by several pages as redundant identifications of a single exclusion.

The "may void" provisions cited in the CAC identify the use of unauthorized parts as the act that voids the warranty, not the "use of off-road parts" or "alterations outside of Harley-Davison's specifications." *Id.* This is underscored by the fact that, when telling consumers that use of unauthorized parts and services "may void" the limited warranty, Defendants instruct the reader to "[s]ee an authorized Harley-Davidson dealer for details," (A.28 at ¶ 31) rather than directing them to any more detailed specifications within Warranty, such as the "Exclusions."

Therefore, because Defendants expressly tie warranty coverage to use of Harley-Davidson branded parts and services, the District Court erred in granting Defendants' motion to dismiss on the grounds of express tying.

### 2. Defendants Impliedly Tie the Warranty to Harley-Davidson Branded Parts

The District Court also erred in failing to find an implied tying violation as set forth in 16 C.F.R. § 700.10(c). Even if Defendants' Warranty did not expressly tie coverage under the Warranty to Harley-Davidson approved parts and services (which it did), Defendants can still be liable if they impliedly did so. An implied tying violation is substantially broader than an express tying violation and orients itself around the question of how a reasonable consumer would view the terms of the warranty, which is inherently a question of fact. *Wienhoff v. Conagra Brands, Inc.*, 626 F. Supp. 3d 1015, 1024 (S.D. Ill. 2022) (*citing Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 478 (7th Cir. 2020) (explaining the "reasonable consumer standard requires a 'practical and fact-intensive approach to consumer behavior.'"); *Bell*, 982 F.3d at 483 ("How reasonable consumers actually understand [the Warranty at issue] is a question of fact that cannot be resolved on the pleadings."); *In*

*re Rust-Oleum Restore Mktg., Sales Practices & Prods. Liab. Litig.*, 155 F. Supp. 3d 772, 790 (N.D. Ill. 2016) (factual inquiries regarding warranty's purpose are inappropriate at a motion to dismiss). The FTC states: "Warranty language that implies to a consumer acting reasonably in the circumstances that warranty coverage requires the consumer's purchase of an article or service identified by brand, trade or corporate name is . . . deceptive." 16 C.F.R. § 700.10(c).

Here, Defendants have used language that implies to a reasonable consumer that coverage under the Warranty requires the consumer to purchase Harley-Davidson branded parts and services. Indeed, Defendants' Warranty virtually mirrors the language in the FTC's example of language that would violate the implied tying rule:

- FTC example of prohibited implied tying: "a provision in the warranty such as, 'use only an authorized "ABC" dealer' or 'use only "ABC" replacement parts,' is prohibited where the service or parts are not provided free of charge pursuant to the warranty." 16 C.F.R. § 700.10(c).

- Defendants' limited warranty: "**Use only Harley-Davidson approved parts** and accessories that have been designed, tested

and approved for your model and model year motorcycle . . . .
Genuine Harley-Davidson parts are engineered and tested
specifically for use on your motorcycle. Insist that your authorized
Harley-Davidson dealer **uses only genuine Harley-Davidson
replacement parts** and accessories **to keep your Harley-
Davidson motorcycle and its limited warranty intact**." A.55
¶ 114 (emphasis added).

Similarly, the fact that Defendants state in a separate provision
that "even" authorized parts and accessories can void the Warranty
suggests to a reasonable consumer that unauthorized parts will very
likely void the Warranty.  As such, a reasonable consumer could conclude
that he or she was required to purchase only Harley-Davidson goods and
services to keep his or her Warranty intact, as underscored by the FTC's
determination that the Warranty Language violated the MMWA. A.253-
255.

Instead of applying the analysis from the viewpoint of a reasonable
consumer, the District Court inserted its own judgment in determining
that the Warranty did not tie continued Warranty coverage to the
purchase of Harley-Davidson branded parts and services.  This was error.

*Bell*, 982 F.3d at 481 ("What matters here is how consumers actually behave—how they perceive [the warranty] and how they make decisions. These are matters of fact, subject to proof that can be tested at trial, even if as judges we might be tempted to debate and speculate further about them."); *Barton v. Pret A Manger (USA) Ltd.*, 535 F. Supp. 3d 225, 237 (S.D.N.Y. 2021) (quoting *Stoltz v. Fage Dairy Processing Indus., S.A.*, 2015 WL 5579872, at *20 (E.D.N.Y. Sept. 22, 2015) ("It is important to remember that 'at least in some cases, "[a] federal trial judge, with a background and experience unlike that of most consumers, is hardly in a position to declare" that reasonable consumers would not be misled.'"); *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 682, *as modified on denial of reh'g* (Jan. 31, 2006) ("A 'reasonable consumer' is 'the ordinary consumer acting reasonably under the circumstances' . . ., and 'is not versed in the art of inspecting and judging a product . . .'"); *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020) ("A label is deceptive if it is likely to mislead a reasonable consumer in a material respect, even if it is not literally false."). The District Court provided no explanation for why a reasonable consumer would not read the Warranty as implicitly stating that coverage would be voided if the

56

consumer used third party parts or services.  Because the District Court applied the wrong standard, its decision must be reversed.

### B.     Defendant Violated the MMWA's Disclosure Rule

Warrantors must "fully and conspicuously disclose in simple and readily understood language the terms and conditions of" limited warranties. 15 U.S.C. § 2302(a).  The "Disclosure Rule," the FTC's regulation, requires the warrantor to include in a single document a "clear description and identification of products, or parts, or characteristics, or components, or properties covered by and, where necessary for clarification, excluded from the warranty." 16 C.F.R. § 701.3(a)(2).

Here, Defendants fail to fully set forth in the Warranty what is covered or excluded from the same, and instead require consumers to "[s]ee an authorized Harley-Davidson dealer for details" as to the Warranty's coverage.  A.65 ¶ 153.  The 2021 limited warranty also states that "[s]ome countries, states or other locations may require all regular maintenance and service work to be done by an authorized Harley-Davidson dealer for your warranty to remain in effect. Check with your local Harley-Davidson dealer for local requirements."  A.28-29 ¶ 31.  As

such, Plaintiffs adequately allege that Harley violated the MMWA's Disclosure Rule by keeping its invalidation standards secret.  A.57-58 at ¶¶ 122-123.

The District Court determined that "Plaintiffs have not alleged which additional warranty terms were not included in the warranty documents they received or how the lack of such information in the warranty impacted them." A.337-338.  On the contrary, Plaintiffs alleged that what Defendants omitted was that Defendants had secret standards that could be only learned, if at all, by consulting a dealer or by costly trial and error that, at best, *risked* voiding the warranty.  Defendants breached their obligation to provide a "clear description and identification of products, parts, characteristics, components, or properties covered by and, where necessary for clarification, excluded from the warranty" by requiring consumers to consult with the dealer to determine the same.  *See* 16 C.F.R. § 701.3(a)(2).

## C.  The District Court Erred in Failing to Consider the FTC's Finding That Defendants' Warranty Violated the MMWA's Express and Implied Tying Provisions and Disclosure Rule

The District Court failed to consider an FTC action that arose out of the same misconduct as alleged in this case, in which the FTC found

that Defendants' Warranty violated the MMWA. A.253-255. The FTC's finding is entitled to deference under *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) as Congress authorized the FTC to interpret and enforce the MMWA. *Miller v. Herman*, 600 F.3d 726, 734 (7th Cir. 2010*)* (applying *Skidmore* to "give [FTC] interpretations a reasonably high degree of deference."). The FTC action should have been given considerable weight because it was significantly adjudicated and consistent with both earlier FTC rules and later pronouncements. *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2247 (2024) ("'The weight of such a judgment in a particular case,' the Court observed, would 'depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements.'") (*citing Skidmore*, 323 U.S. 134, 140); *see also Miller*, 600 F.3d at 734 (same).

The FTC's conclusions support the plausibility of Plaintiffs' MMWA allegations with respect to express and implied tying as well as Defendants' violation of the MMWA's Disclosure Rule. Specifically, as to express tying, the FTC's finding that Defendants' "may void" language falls within the scope of conduct prohibited under the MMWA supports

the plausibility of Plaintiffs' express tying claims and is entitled to deference. Even more so, the FTC's findings substantiate Plaintiffs' contentions that a reasonable consumer would believe that the Warranty required them to purchase first party parts and services to keep their warranty intact as the FTC's Order required Defendants to undertake remedial action for the benefit of consumers. A.275-284.

The FTC also found that Defendants violated the Disclosure Rule by referring purchasers to "local dealers" to discover precisely what would void the warranty, which finding is also entitled to deference and, at minimum, strongly supports the plausibility of Plaintiffs' claims under the Disclosure Rule. In short, the FTC's analysis and conclusion are probative not only of the proper interpretation of the Tying and Disclosure Rule, but also that Defendants violated them.

The District Court's disregard of the FTC action is especially erroneous with respect to Plaintiff-Appellant Billings' claim under Mass. Gen. Laws Ann. ch. 93A, § 2 ("Chapter 93A"), as Defendants committed a *per se* violation of that statute. Chapter 93A states that "in construing [what constitutes unfair or deceptive acts or practices in actions brought under 93A] the courts will be guided by the interpretations given by the

Federal Trade Commission and the Federal Courts to section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1))." M.G.L. c.93A, § 2(b). Indeed, the Massachusetts Attorney General has promulgated rules stating that "an act or practice is a violation of M.G.L. c.93A, § 2 if … [i]t fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection." 940 Mass. Code Regs. 3.16. The First Circuit has found that a violation of the FTC Act that causes injury to a plaintiff consumer is a *per se* violation of Chapter 93A. *McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*, 775 F.3d 109, 123 (1st Cir. 2014) ("And because Massachusetts has 'wholly incorporated' the FTC Act and its interpretation into state consumer protection law, a violation of the FDCPA not only per se violates the FTC Act, it also constitutes a per se Chapter 93A violation."); *Schaer v. Newell Brands Inc.*, 2023 WL 2033765, at *2 (D. Mass. Feb. 16, 2023) (applying the same in the anti-tying context). Thus, at least with regards to Plaintiff-Appellants

Billings' Chapter 93A claim, the findings in the FTC action are not just probative but dispositive.

### D. Defendants Violated the MMWA's Pre-Sale Availability Rule

The so-called pre-sale availability rule provides as follows:

(b) Duties of the warrantor.

(1) A warrantor who gives a written warranty warranting to a consumer a consumer product actually costing the consumer more than $15.00 shall:

    (i)   Provide sellers with warranty materials necessary for such sellers to comply with the requirements set forth in paragraph (a) of this section, by the use of one or more of the following means:

        (A) Providing a copy of the written warranty with every warranted consumer product;

        (B) Providing a tag, sign, sticker, label, decal or other attachment to the product, which contains the full text of the written warranty;

        (C) Printing on or otherwise attaching the text of the written warranty to the package, carton, or other container if that package, carton or other container is normally used for display purposes. If the warrantor elects this option a copy of the written warranty must also accompany the warranted product; or

(D) Providing a notice, sign, or poster disclosing the text of a consumer product warranty. If the warrantor elects this option, a copy of the written warranty must also accompany each warranted product.

(ii) Provide catalog, mail order, and door-to-door sellers with copies of written warranties necessary for such sellers to comply with the requirements set forth in paragraphs (c) and (d) of this section.

(2) As an alternative method of compliance with paragraph (b)(1) of this section, a warrantor may provide the warranty terms in an accessible digital format on the warrantor's Internet Web site. If the warrantor elects this option, the warrantor must:

(i) Provide information to the consumer that will inform the consumer how to obtain warranty terms by indicating, in a clear and conspicuous manner, in the product manual or on the product or product packaging:

(A) The Internet Web site of the warrantor where such warranty terms can be reviewed, and

(B) The phone number, the postal mailing address of the warrantor, or other reasonable non–Internet based means for the consumer to request a copy of the warranty terms;

> (ii)   Provide a hard copy of the warranty terms promptly and free of charge upon request by a consumer or seller made pursuant to paragraph (b)(2)(i)(B) of this section;
>
> (iii)  Ensure that warranty terms are posted in a clear and conspicuous manner and remain accessible to the consumer on the Internet Web site of the warrantor; and
>
> (iv)   Provide information with the consumer product or on the Internet Web site of the warrantor sufficient to allow the consumer to readily identify on such Internet Web sites the warranty terms that apply to the specific warranted product.

16 C.F.R. § 702.3(b).

Plaintiffs allege that Defendants violated the pre-sale availability rule "because it does not provide its authorized dealers with signs displaying the text of the Limited Warranty, or otherwise require its dealers to make the Limited Warranty terms available to all customers before purchase." A.57 ¶ 121. Despite this factual allegation, the District Court concluded: "In this case, Harley-Davidson provides a copy of the written warranty with every warranted consumer product, in accordance with § 702.3(b)(1)(i)(A)." A.339. However, the District Court erred in making an unripe factual determination that Defendants provide a copy

of the written warranty with every warranted product.  Plaintiffs allege that the terms of the Warranty were not provided in accordance with the pre-sale availability rule, which must be accepted as true at the pleading stage.  *White v. United Airlines, Inc.*, 987 F.3d 616, 620 (7th Cir. 2021) ("On a motion to dismiss, we accept all well-pleaded facts as true and draw all reasonable inferences in the plaintiff's favor.").  By failing to accept Plaintiffs' factual allegations as true, the District Court erred.

Alternatively, to satisfy the pre-sale availability rule, Defendants must meet all four criteria laid out in § 702.3(b)(2)(i)-(iv), which they did not.  For example, § 702.3(b)(2)(iv) the warrantor's website must contain terms "sufficient to allow the consumer to readily identify . . . the warranty terms that apply to the specific warranted product."  Directing consumers to "local dealers" is the opposite of stating the terms.  As such, Plaintiffs plausibly allege that Defendants have failed to satisfy either 16 C.F.R. § 702.3(b)(1) or (2).  Accordingly, the motion to dismiss Plaintiffs' claims under the pre-sale availability rule should have been denied.

### E.    Plaintiffs Adequately Alleged Harm

Although the Lower Court did not consider whether Plaintiffs had Article III standing, if this Court decides to make that determination,

that standard is met here.  The CAC alleges that "Harley-Davidson's conduct caused Plaintiffs, and other Class Members, to pay for Harley-Davidson authorized services or parts that they would not have paid, or, at a minimum, would have paid less for, had Defendants not conditioned or tied warranty coverage to the use of Harley-Davidson authorized services and/or parts."  A.66 ¶ 155; *see also id.* at A.58 ¶ 124 (alleging that Plaintiffs "paid above-market prices" for parts), A.44-45 ¶ 78 (identifying specific premiums charged for "genuine" Harley-Davidson parts), A.30 ¶ 35 (explaining how Harley's conduct involved dodging warranty repairs that it otherwise would have had to pay for).  The CAC thus alleges economic harm to the Plaintiffs that supports an Article III case or controversy.  *See Schaer*, 2023 WL 2033765, at *1 ("[A] product that contains an unlawful warranty - that is voided by any attempt to repair or adjust any electrical or mechanical functions - is worth less than a product that does not contain such a restriction' … This, is and of itself, would be an injury in fact.").[6]

---

[6] It is well settled that a plaintiff "may prove actual damage" "by showing [] that they paid more than the actual value of the bargain." *Siegal v. GEICO Cas. Co.*, 523 F. Supp. 3d 1032, 1043 (N.D. Ill. 2021) (Coleman, J.).  Overpayment for a product is thus a cognizable economic loss. *See*

## <u>CONCLUSION</u>

For the reasons stated above, Plaintiffs respectfully request that the District Court's Decision and Order dated June 5, 2024 be reversed and remanded for further proceedings.

Dated: August 6, 2024

<u>s/ Thomas H. Burt</u>
Thomas H. Burt
Lillian R. Grinnell
WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP
270 Madison Avenue, 9th Floor
New York, New York 10016
Tel: 212-545-4600
Fax: 212-526-9998
burt@whafh.com
grinnell@whafh.com

---

*In re Aqua Dots Prod. Liab. Litig.*, 654 F.3d 748, 751 (7th Cir. 2011) ("The plaintiffs' loss is financial: they paid more for the toys than they would have, had they known of the risks the beads posed to children."); *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736-38 (2d Cir. 2017) (explaining that price premium satisfied the injury element of a consumer fraud statute). Though certain cases have held that this rule does not apply to warranties by themselves, the case at hand is easily distinguishable given that the tying product at issue is a bundle of a new motorcycle with a warranty. The loss of warranty coverage clearly devalues a new motorcycle, and therefore the loss of value in the warranty here is a cognizable financial injury.

## CERTIFICATE OF COMPLIANCE WITH F.R.A.P. RULE 32(a)(7)

The undersigned, counsel of record for the Plaintiffs-Appellants Edward Heymer, Scott Koller, Jacqueline Assise, Robert Assise, James Billings, Curtis Perry, Rita Weaver, Vladimir Lipkin, Anzhela Demkiv, Vincent Romeo, Debra Plinck, Thomas Navarette, Gary Chelenyak, Richard Hawkins, and Aaron Harris ("Plaintiffs-Appellants") furnishes the following in compliance with F.R.A.P Rule 32(a)(7):

I hereby certify that this brief conforms to the rules contained in F.R.A.P Rule 32(a)(7) for a brief produced with a proportionally spaced font, Century Schoolbook, 14-point font. The length of this brief is 13,901 words.

Dated August 6th, 2024.



**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
<u>s/ Thomas H. Burt</u>
Thomas H. Burt
Attorneys for the Plaintiffs-Appellants

INDEX TO SHORT APPENDIX

Table of Contents ............................................................................i


Decision and Order Granting Defendants' Motion to Dismiss, Hon.
William C. Griesbach, U.S.D.J. (Jun. 6, 2024) [DE55] .........................SA.1


Order for Judgment [Griesbach, J.] (Jun. 27, 2024) [DE57]................SA.20

**Circuit Rule 30 Statement**

The undersigned hereby certifies that all the materials required by parts
(a) and (b) of Circuit Rule 30 are contained in the following short appendix.


/ s / Lillian Grinnell

Lillian Grinnell

*An attorney for Plaintiffs-Appellants*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

IN RE: HARLEY-DAVIDSON AFTERMARKET
PARTS MARKETING, SALES PRACTICES,          Case No. 23-MD-3064
AND ANTITRUST LITIGATION                    Honorable William C. Griesbach

This document relates to:
All Cases

---

### DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

---

In this multidistrict litigation, fifteen plaintiffs, who purchased Harley-Davidson motorcycles from various dealerships and reside in eleven different states, claim that Defendants Harley-Davidson Motor Company Group LLC and Harley Davidson Motor Company Inc. (collectively, Harley-Davidson) used its warranty to force Harley owners under warranty to purchase Harley-Davidson-branded parts, instead of other available aftermarket parts. Plaintiffs assert that Harley-Davidson's conduct violates the Magnuson-Moss Warranty Act (MMWA), 15 U.S.C. § 2301 *et seq.*, as well as state antitrust and consumer protection laws. They also assert claims of fraud and unjust enrichment. This case was transferred to this court by the United States Judicial Panel on Multidistrict Litigation on February 8, 2023. On July 17, 2023, Plaintiffs filed a consolidated amended class action complaint. This matter comes before the court on Harley-Davidson's motion to dismiss. For the following reasons, the motion will be granted.

### LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure challenges the sufficiency of the complaint to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Rule 8 mandates that a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme

SA1

Court has held that a complaint must contain factual allegations that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a plaintiff is not required to plead detailed factual allegations, he or she must plead "more than labels and conclusions." *Id.* A simple, "formulaic recitation of the elements of a cause of action will not do." *Id.* In evaluating a motion to dismiss, the court must view the plaintiff's factual allegations and any inferences reasonably drawn from them in a light most favorable to the plaintiff. *See Yasak v. Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi.*, 357 F.3d 677, 678 (7th Cir. 2004). Under the incorporation-by-reference doctrine, "a court may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williams v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

## ALLEGATIONS CONTAINED IN THE CONSOLIDATED
## CLASS ACTION AMENDED COMPLAINT

Harley-Davidson was founded in 1903 and, by 1920, had quickly become the largest motorcycle manufacturer in the world. Consolidated Amended Complaint (CAC) ¶ 26, Dkt. No. 33. Plaintiffs are fifteen individuals who purchased Harley-Davidson motorcycles from dealerships in various states between June 2016 and February 2022. *Id.* ¶¶ 6–19. As of June 2022, Harley-Davidson sold, as a bundle, a motorcycle and a warranty valid for 24 months. *Id.* ¶ 30. This limited warranty begins "from the earlier of (a) the date of the initial retail purchase and delivery of the motorcycle from an authorized Harley-Davidson dealer; or (b) the third anniversary of the last day of the model year of the motorcycle." *Id.*

Plaintiffs assert that the limited warranty covers repairs only if the consumer has all services and repairs undertaken by an authorized Harley-Davidson dealer and uses only replacement parts and accessories from authorized Harley-Davidson manufacturers for the

duration of the limited warranty. *Id.* ¶ 102. In other words, customers cannot use third-party manufactured parts or other aftermarket parts for repairs. Plaintiffs contend that, by conditioning sales of motorcycles to the limited warranty's restrictions, authorized Harley-Davidson dealers sell warranty-related services, replacement parts, and accessories at a premium compared to other motorcycle repairers and that Harley-Davidson is able to extract higher-than-usual profits from the repair business. *Id.* Plaintiffs claim that Harley-Davidson illegally tied its motorcycles, and the factory warranties that go with them, to its parts, and that Harley-Davidson parts are overpriced as a result.

Plaintiffs also assert that, even when customers have endeavored to obey Harley-Davidson's dictate to choose only Harley-Davidson-branded parts, they still risk losing warranty coverage. *Id.* ¶ 32. They allege that Harley-Davidson seeks to limit warranty coverage even beyond the scope of the warranty's language. *Id.* Plaintiffs claim that, by incentivizing dealers to void warranties, Harley-Davidson is able to profit by selling the part but avoiding the repair labor costs. *Id.* ¶ 35.

Plaintiffs allege that Harley-Davidson has substantial market power in both the American-made, new, large roadgoing motorcycle market and the Harley-Davidson compatible parts market. *Id.* ¶¶ 39, 93. They assert that Harley-Davidson monopolizes the large American-manufactured motorcycle market to coerce customers into not purchasing compatible parts from its competitors by unlawfully tying its warranty to its parts. *Id.* ¶¶ 97–98.

The consolidated class action amended complaint contains 90 counts: Wisconsin antitrust law, Wis. Stat. §§ 133.01 *et seq.* (Count 1); Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* (Count 2); unjust enrichment – common law (Count 3); fraud – common law (Count 4);

3

fraudulent concealment/omission – common law (Count 5); various state fraud and antitrust laws (Counts 6–90).

## ANALYSIS

### A. Magnuson-Moss Warranty Act Claims

Plaintiffs assert that the terms of Harley-Davidson's limited warranty violates the Magnuson-Moss Warranty Act (MMWA), 15 U.S.C. § 2301 *et seq.* The MMWA is a "consumer protection statute that requires transparency in warranties on consumer products and establishes minimum criteria for different types of warranties and warranty-like products." *Ware v. Best Buy Stores, L.P.*, 6 F.4th 726, 728 (7th Cir. 2021). Plaintiffs assert that Harley-Davidson violated the MMWA in a number of ways. The court will address each theory in turn.

#### 1. Tying Provision

Plaintiffs claim that Harley-Davidson's limited warranty violates the MMWA's so-called "tying provision" by conditioning the limited warranty on the use of authorized Harley-Davidson dealers and authorized Harley-Davidson manufacturer replacement parts and accessories. CAC ¶ 102. The MMWA provides that a warrantor may not condition its written or implied warranty "on the consumer's using, in connection with such product, any article or service (other than article or service provided without charge under the terms of the warranty) which is identified by brand, trade, or corporate name." 15 U.S.C. § 2302(c). The Federal Trade Commission's (FTC) interpretation of the MMWA states that "[n]o warrantor may condition the continued validity of a warranty on the use of only authorized repair service and/or authorized replacement parts for non-warranty service and maintenance (other than an article of service provided without charge under the warranty or unless the warrantor has obtained a waiver pursuant to section 102(c) of the Act, 15 U.S.C. § 2302(c))." 16 C.F.R. § 700.10(c). It explains that "provisions such as,

4

'This warranty is void if service is performed by anyone other than an authorized "ABC" dealer and all replacement parts must be genuine "ABC" parts,' and the like, are prohibited where the service or parts are not covered by the warranty." *Id.* Plaintiffs argue that the language of the limited warranty itself, as well as statements contained in the Owner's Manual, fall within the group of statements prohibited by the MMWA and § 700.10(c).

Harley-Davidson argues that the MMWA regulations allow a warrantor to limit liability for damage caused by unauthorized parts or modifications. Section 700.10(c) "does not preclude a warrantor from expressly excluding liability for defects or damage caused by 'unauthorized' articles or service; nor does it preclude the warrantor from denying liability where the warrantor can demonstrate that the defect or damage was so caused." Harley-Davidson contends that, when all of the statements Plaintiffs rely on are read in context, it is clear the limited warranty excludes warranty coverage for damage caused by unauthorized parts, consistent with § 700.10(c), and implements an EPA Consent Decree under which certain performance modifications will void the powertrain warranty.

As to the limited warranty itself, the Harley-Davidson Limited Motorcycle Warranty is valid for 24 months "starting from the earlier of (a) the date of the initial retail purchase and delivery of the motorcycle from an authorized Harley-Davidson dealer or (b) the third anniversary of the last day of the model year of the motorcycle." CAC ¶ 30. The exclusions section of the warranty, states, in relevant part:

> This limited warranty will not apply to any motorcycle . . . 1. Which has not been operated or maintained as specified in the owner's manual . . . [and] 4. Which has off-road or competition parts installed to enhance performance, a trailer hitch, or has other unapproved modifications (even if these modifications include genuine Harley-Davidson parts and accessories that are not approved for use on your motorcycle). These modifications may void all or parts of your new motorcycle limited warranty. See an authorized Harley-Davidson dealer for details.

5

*Id.* ¶ 31.  The warranty also excludes coverage for "[d]efects or damage impacting the functionality of powertrain components in a motorcycle that has been tuned using a tuner or calibration that was not covered by a California ARB Executive Order or otherwise approved by EPA."  *2019 Harley-Davidson®  Owner's Manual: Sportster® Models*, H-D SERVICE INFORMATION PORTAL, https://serviceinfo.harley-davidson.com/sip/content/document/view?viewLatest=true&id=18075 47410618958196&groupId=16#443844!!12!6625 (last visited June 5, 2024).  Under the 2017 Consent Decree entered into between the EPA and Harley-Davidson, Harley-Davidson was required to "deny all warranty claims for functional defects of powertrain components if any Defendants have any information to show that such vehicle was tuned using a Tuning Product that was not covered by California ARB Executive Order or otherwise approved by EPA."  Dkt. No. 42-12, at ¶ 14(a).

Harley-Davidson asserts that, under general principles of contract interpretation, "contract language is given its plain and ordinary meaning."  *See Young v. Verizon's Bell Atl. Cash Balance Plan*, 615 F.3d 808, 823 (7th Cir. 2010) (citing *Pitcher v. Principal Mut. Life Ins. Co.*, 93 F.3d 407, 411 (7th Cir. 1996)).  It contends that the fact that the limited warranty states that the use of unauthorized parts "may void" the warranty does not mean that it "will void" the warranty and thus does not create a prohibited tie.  *See* Defs.' Reply Br. at 14, Dkt. No. 54 (citing *Dunbar v. Kohn Law Firm, S.C.*, 896 F.3d 762, 765 (7th Cir. 2018) ("An unsophisticated consumer would not understand the word 'may' to mean 'will.'").

Plaintiffs argue that the court should not differentiate between "may" and "will" because "may" merely means "will in some circumstances."  Pls.' Br. at 21, Dkt. No. 52.  Even under this construction, Harley-Davidson's warranty does not include a prohibited tie by conditioning "the continued validity of a warranty on the use of only authorized repair service and/or authorized

6

replacement parts for non-warranty service and maintenance." *See* § 700.10(c). In other words, because Harley-Davidson's limited warranty does not state that using non-Harley-Davidson parts *will* affect the warranty, it has not improperly tied the warranty to use of Harley-Davidson parts.

Harley-Davidson further asserts that the Owner's Manual provisions referenced in the CAC do not create tie-in provisions that violate the MMWA. First, Plaintiffs point to the first sentence of the "Note" in the "Service Records" section, which provides that "[t]he use of parts and service procedures other than Harley-Davidson approved parts and service procedures may void the limited warranty." CAC ¶ 116. Harley-Davidson contends that Plaintiffs have read this provision out of context because they ignore the second sentence in the paragraph. "Contracts must be read as a whole, and the meaning of separate provisions should be considered in light of one another and the context of the entire agreement." *Young*, 615 F.3d at 823. The second sentence states, "Any alterations to the emission system components, such as the intake and exhaust system, may be in violation of motor vehicle laws." *2019 Harley-Davidson® Owner's Manual: Sportster® Models*, H-D Service Information Portal, *supra*. When the provision is read as a whole, the Service Records Note does not create an impermissible tie. Instead, the provision addresses the types of modifications that may void the powertrain warranty as mandated by the EPA Consent Decree. In any event, like the warranty itself, this provision does not provide that using non-Harley-Davidson parts *will* affect the warranty and thus does not contain an improper tie.

Plaintiffs also refer to certain provisions in the "Warranty and Maintenance" and "Keeping It All Harley-Davidson" sections of the Owner's Manual that state:

> Use only Harley-Davidson approved parts and accessories that have been designed, tested, and approved for your model and model year motorcycle. . . . Genuine Harley-Davidson parts are engineered and tested specifically for use on your motorcycle. Insist that your authorized Harley-Davidson dealer uses only genuine Harley-Davidson replacement parts and accessories to keep your Harley-Davidson motorcycle and its limited warranty intact.

7

SA7

CAC ¶ 114.  They also refer to a provision in the "Warranty and Maintenance" section stating that "[u]se of aftermarket performance parts may void all or parts of your limited warranty.  See an authorized Harley-Davidson dealer for details."  *Id.* ¶ 116.

Harley-Davidson asserts that when the Warranty and Maintenance and Keeping It All Harley-Davidson provisions are read as a whole, Harley-Davidson is only warning that "unapproved and untested parts can cause performance and quality problems."  Defs.' Reply Br. at 14.  Those sections provide:

**Warranty and Maintenance**

This owner's manual contains your new motorcycle limited warranty and your owner's maintenance record.

It is your responsibility as the owner to follow the maintenance schedule at the mileage intervals as specified in the owner's manual.  All of the specified maintenance services must be performed on schedule to keep your limited warranty valid.

Some countries, states or other locations may require all regular maintenance and service work to be done by an authorized Harley-Davidson dealer for your limited warranty to remain in effect.  Check with your authorized Harley-Davidson dealer for local requirements.

1. Make an appointment with a Harley-Davidson dealer for inspection and service prior to the first 1,600 km (1000 mi), and as soon as possible after any issues arise.
2. Bring this owner's manual with you when you visit your authorized Harley-Davidson dealer to have your motorcycle inspected and serviced.
3. Have the dealer technician sign the maintenance record in the owner's manual at the proper mileage interval.  These records should be retained by the owner as proof of proper maintenance.
4. Keep receipts covering parts, service or maintenance performed.

These records should be transferred to each subsequent owner.

Use only Harley-Davidson approved parts and accessories that have been designed, tested and approved for your model and model year motorcycle.

8

SA8

Use of aftermarket performance parts may void all or parts of your limited warranty. See an authorized Harley-Davidson dealer for details.

Harley-Davidson authorized dealerships are independently owned and operated and may sell and install parts and accessories that are not manufactured or approved by Harley-Davidson for use on your motorcycle. Therefore, you should understand that Harley-Davidson is not and cannot be responsible for the quality, suitability, or safety of any non-Harley-Davidson part, accessory or design modification, including labor, which may be sold and/or installed by authorized Harley-Davidson dealerships.

**Keeping It All Harley-Davidson**

Genuine Harley-Davidson parts are engineered and tested specifically for use on your motorcycle. Insist that your authorized Harley-Davidson dealer uses only genuine Harley-Davidson replacement parts and accessories to keep your Harley-Davidson motorcycle and its limited warranty intact. Not all Harley-Davidson parts and accessories are appropriate for your model or model year motorcycle.

**NOTICE**

It is possible to overload the vehicle's charging system by adding too many electrical accessories. If the combined electrical accessories operating at any one time consume more electrical current than the vehicle's charging system can produce, the electrical consumption can discharge the battery and cause damage to the vehicle's electrical system. (00211d)

**NOTE**

Installing off-road or competition parts to enhance performance may void all or parts of your limited warranty. See the Harley-Davidson Motorcycle Limited Warranty in this owner's manual or an authorized Harley-Davidson dealer for details.

*2019 Harley-Davidson®  Owner's Manual: Sportster® Models*, H-D SERVICE INFORMATION

PORTAL, *supra*.

When the provisions are read in their entirety, Harley-Davidson is simply noting that it

would not be responsible for defects or damage caused by "unauthorized" articles or service. This

limitation is proper under § 700.10(c). As to the provision indicating that "[u]se of aftermarket

performance parts may void all or parts of your limited warranty. See an authorized Harley-

Davidson dealer for details," CAC ¶ 116, use of aftermarket *performance* parts may void the powertrain warranty under the EPA Consent Decree.

In short, Harley-Davidson explains to buyers that the limited warranty does not cover damage caused by unauthorized modifications, which is authorized by the MMWA, and that modifications to improve performance voids the powertrain warranty, as required by the EPA Consent Decree. Accordingly, Plaintiffs have failed to state a claim that Harley-Davidson's limited warranty violates the MMWA.

### 2. Disclosure Rule

Plaintiffs also allege that the warranty violates the MMWA's "disclosure rule." Under the MMWA, a warrantor must "fully and conspicuously disclose in simple and readily understood language the terms and conditions of such warranty." 15 U.S.C. § 2302(a); *see also* 16 C.F.R. § 701.3(a)(2) (requiring warrantors to provide a "clear description and identification of products, or parts, or characteristics, or components or properties covered by and where necessary for clarification, excluded from the warranty"). This requirement is designed to "improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products." 15 U.S.C. § 2302(a).

Plaintiffs allege that Harley-Davidson violates the MMWA because "it conceals the full terms of the Limited Warranty and instead instructs consumers to consult with a Harley-Davidson dealer for full details." CAC ¶ 123. Even though Plaintiffs received the Limited Warranty documents, *id.* ¶ 124, Plaintiffs contend that Harley-Davidson has "secret standards that could only be learned, if at all, by consulting a dealer or by costly trial and error that, at best, *risked* voiding the warranty." Pls.' Br. at 27, Dkt. No. 50. But Plaintiffs have not alleged which additional warranty terms were not included in the warranty documents they received or how the lack of such

10

information in the warranty impacted them.  Therefore, Plaintiffs have failed to state a "disclosure rule" violation.

### 3.  Pre-Sale Availability Rule

Plaintiffs allege that Harley-Davidson failed to comply with the MMWA's pre-sale warranty obligations.  *See* 15 U.S.C. § 3202(b).  The MMWA requires the FTC to promulgate rules "requiring that the terms of any written warranty on a consumer product be made available to the consumer (or prospective consumer) prior to the sale of the product to him."  15 U.S.C. § 2302(b)(1)(A).  The FTC's pre-sale availability rule is codified at 16 C.F.R. § 702.3.  Section 702.3 describes the obligations of a warrantor, such as Harley-Davidson, to provide a copy of its warranty with its product.  That section states:

(1) A warrantor who gives a written warranty warranting to a consumer a consumer product actually costing the consumer more than $15.00 shall:

  (i) Provide sellers with warranty materials necessary for such sellers to comply with the requirements set forth in paragraph (a) of this section, by the use of one or more of the following means:

    (A) Providing a copy of the written warranty with every warranted consumer product;

    (B) Providing a tag, sign, sticker, label, decal or other attachment to the product, which contains the full text of the written warranty;

    (C) Printing on or otherwise attaching the text of the written warranty to the package, carton, or other container if that package, carton or other container is normally used for display purposes.  If the warrantor elects this option a copy of the written warranty must also accompany the warranted product; or

    (D) Providing a notice, sign, or poster disclosing the text of a consumer product warranty.  If the warrantor elects this option, a copy of the written warranty must also accompany each warranted product.

  (ii) Provide catalog, mail order, and door-to-door sellers with copies of written warranties necessary for such sellers to comply with the requirements set forth in paragraphs (c) and (d) of this section.

11

16 C.F.R. § 702.3(b)(1).

Plaintiffs allege that "Harley-Davidson violates this regulation because it does not provide its authorized dealers with signs displaying the text of the Limited Warranty, or otherwise require its dealers to make the Limited Warranty terms available to all customers before purchase." CAC ¶ 121. But providing a sign with the text of the consumer product warranty is only one way that a warrantor may comply with the requirements of § 702.3. In this case, Harley-Davidson provides a copy of the written warranty with every warranted consumer product, in accordance with § 702.3(b)(1)(i)(A). Plaintiffs do not allege in the CAC that Harley-Davidson did not include a copy of the written warranty with each motorcycle. Therefore, Plaintiffs have failed to state a claim for a violation of the MMWA and § 702.3(b)'s "pre-sale availability rule."

## B. Antitrust Claims

Plaintiffs allege that Harley-Davidson's conduct created an unlawful tying arrangement, which they contend constitutes a restraint of trade and attempted monopolization. Agreements in restraint of trade and attempted monopolization are prohibited under the Sherman Act, 15 U.S.C. §§ 1–2. Because federal law prohibits indirect purchasers, like Plaintiffs, who purchased motorcycles through dealers, rather than directly from Harley-Davidson, from pursuing damages under the Sherman Act, Plaintiffs make claims under various state antitrust laws. The parties nevertheless agree that federal and state antitrust laws are generally subject to a similar analysis, and they did not attempt to distinguish between federal and state law in their briefs. Accordingly, for purposes of determining whether Plaintiffs have adequately alleged antitrust violations, the court will also rely on federal cases.

"A tying arrangement is 'an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product.'" *Siva v. Am. Board of*

*Radiology*, 38 F.4th 569, 573 (7th Cir. 2022) (quoting *N. Pac. R. Co. v. United States*, 356 U.S. 1, 5 (1958)).  "The traditional antitrust concern with such an arrangement is that if the seller of the tying product is a monopolist, the tie-in will force anyone who wants the monopolized product to buy the tied product from him as well, and the result will be a second monopoly."  *Sheridan v. Marathon Petroleum Co. LLC*, 530 F.3d 590, 592 (7th Cir. 2008).  Not all ties are prohibited, however, as "many 'are fully consistent with a free, competitive market.'"  *Siva*, 38 F.4th at 573 (quoting *Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 45 (2006)).  "A tie is illegal only when the seller exploits its control over the tying product to force the buyer into the purchase of a tied product and in so doing coerces the abdication of buyers' independent judgment as to the tied product's merits and insulates it from the competitive stresses of the open market."  *Id.* (cleaned up).  To state a claim of an illegal tying arrangement, a plaintiff must allege four elements: (1) the challenged tying arrangement must involve two separate products or services; (2) the defendant has sufficient economic power in the tying market to restrain free competition in the tied market product; (3) the tie affects a not-insubstantial amount of interstate commerce; and (4) the defendant has some economic interest in the sales of the tied product.  *Id.* at 574 (citing *Reifert v. S. Cent. Wis. MLS Corp.*, 450 F.3d 312, 316 (7th Cir. 2006)).  As to attempted monopolization, a plaintiff must allege "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power."  *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993) (citation omitted).

Harley-Davidson asserts that the CAC does not contain sufficient allegations to establish a tying arrangement because "Plaintiffs have not alleged that consumers were forced to buy Harley-Davidson parts in order to buy a motorcycle."  Defs.' Br. at 42, Dkt. No. 20.  It contends that, because consumers could buy a motorcycle without buying Harley-Davidson parts, there is no

tying problem.  *Id.* (citing *Borschow Hosp. & Med. Supplies v. Cesar Castillo Inc.*, 96 F.3d 10, 18 (1st Cir. 1996) ("Where a tying product has not been withheld, there is no tie.")).

Plaintiffs cite *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451 (1992), for the proposition that an illegal tying arrangement can consist of forcing a promise not to buy from a competitor, which it contends Harley-Davidson has done here.  In *Eastman Kodak Co.*, Kodak sold photocopiers and micrographic equipment as well as services and replacement parts for its equipment.  *Id.* at 454.  Independent service organizations (ISOs) also serviced and repaired Kodak's equipment.  *Id.*  Kodak implemented a policy to make it more difficult for ISOs to compete with Kodak in servicing its equipment.  In particular, Kodak implemented a policy that it would only sell replacement parts to "buyers of Kodak equipment who use Kodak service or repair their own machines."  *Id.* at 458.  It also limited "ISO access to other sources of Kodak parts."  *Id.*  Independent original-equipment manufacturers agreed that they "would not sell parts that fit Kodak equipment to anyone other than Kodak."  *Id.*  As a result of Kodak's policy, ISOs were unable to obtain parts from reliable sources, many ISOs were forced out of business, and customers were forced to switch to Kodak service, even though they preferred ISO service.  *Id.* at 459.  The Supreme Court recognized a tie between repair services and replacement parts: "[t]he record indicates that Kodak would sell parts to third parties only if they agreed not to buy service from ISO's."  *Id.* at 463.

While Kodak imposed tying conditions on the purchase of parts, Harley-Davidson has not forced such conditions here.  "A tie only exists where 'the defendant improperly imposes conditions that explicitly or practically require buyers to take the second product if they want the first one.'"  *Aerotec Int'l, Inc. v. Honeywell Int'l., Inc.*, 836 F.3d 1171, 1178 (9th Cir. 2016) (quoting 10 Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 1752b (3d ed. 2011)).

14

SA14

In this case, Harley-Davidson has not tied the sale of motorcycles to parts. It has not imposed tying conditions on the purchase of parts or forced buyers to promise not to buy parts from a competitor. The CAC contains no allegations that buyers were explicitly precluded from buying a motorcycle without agreeing to purchase Harley-Davidson parts.

Plaintiffs nevertheless assert that ties can be implied when a seller makes it too expensive or burdensome to use a competitor's product. Indeed, a tie need not be explicit to be found actionable. *See id.* at 1179 (citations omitted). "When a defendant adopts a policy that makes it unreasonably difficult or costly to buy the tying product (over which the defendant has market power) without buying the tied product from the defendant, it 'forces' buyers to buy the tied product from the defendant and not from competitors." *Collins Inkjet Corp. v. Eastman Kodak Co.*, 781 F.3d 264, 272 (6th Cir. 2015) (citations omitted).

Plaintiffs' theory is that customers purchasing new Harley-Davidson motorcycles (bundled with warranties) were forced to buy Harley-Davidson parts or risk losing warranty coverage or completely revoking warranty protection. Plaintiffs assert that, as a result, the terms of the warranty make it too expensive or burdensome to use a competitor product. The CAC does not contain allegations plausibly suggesting that foregoing warranty coverage is so costly as to be considered economic forcing. Plaintiffs contend that they cannot effectively forecast the amounts of any potential repairs or calculate the lifecycle cost of their motorcycles. Instead, they conclusorily assert that the risk of losing warranty coverage drives up the cost of owning a motorcycle altogether.

But the alleged risk of losing warranty coverage in itself is not the type of economic coercion or forcing that constitutes a tie under antitrust law. *See DXS, Inc. v. Siemens Med. Sys., Inc.*, 991 F. Supp. 859, 864 (E.D. Mich. 1997) ("Plaintiff's claim based on tying of warranted parts

15

and service cannot succeed because Defendant never required parts and service to be purchased together.").  "[I]t is well established that warranties that are not sold as a separate product do not result in consumer coercion if the warranty sets forth requirements" of the warranty's applicability.  *Fido's Fences v. Canine Fence Co.*, 672 F. Supp. 2d 303, 312 (E.D.N.Y. 2009).  That is because limits to warranty protection "reflect a defendant's unwillingness to extend free repair or replacement services to usage of its products that it cannot control."  *See Va. Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 871 (Fed. Cir. 1997).  In this case, new Harley-Davidson motorcycles are bundled with a two-year limited warranty that lists certain restrictions that may void the warranty.  "Such language is a long way from requiring a buyer to purchase [the tied product] from defendant as a condition of purchasing [the tying product]."  *RX Sys., Inc. v. Med. Tech. Sys., Inc.*, No. 94C50358, 1995 WL 577659, at *5 (N.D. Ill. Sept. 29, 1995); *see also Gen. Motors Corp. v. Gibson Chem. & Oil Corp.*, 786 F.2d 105, 110 (2d Cir. 1986) (holding that manufacturer's recommendation using approved fluid in automatic transmissions and warning that damage to transmissions caused by the use of other fluids may not be covered by the automobile warranty "is not the degree of coercion necessary to a tying arrangement").  In other words, even if buyers of Harley-Davidson motorcycles had to forego warranty coverage to buy a non-Harley-Davidson part, there is no illegal tying arrangement.  *See Marts v. Xerox, Inc.*, 77 F.3d 1109, 1112 (8th Cir. 1996) (holding that plaintiff did not establish a tying arrangement when the buyer is free to take either the tying or tied product by itself—"[a]n owner of a new Xerox copier could forego the benefits of the warranty, buy service from Xerox or an independent provider, and purchase cartridges from the vendor of its choice"); *RX Sys.*, 1995 WL 577659, at *5 ("A purchaser remains free to buy pill cards from other suppliers and modify the machine accordingly so long as it is

16

willing to forego the protections provided by the warranty.").  For these reasons, Plaintiffs have failed to allege an illegal tying arrangement that violates antitrust laws.

As to their attempted monopolization claim, Plaintiffs rely on the same purported anticompetitive conduct they relied on for their tying claim.  Because Plaintiffs have not alleged a tying violation, they have failed to allege facts to support that Harley-Davidson's actions also constitute an attempt to monopolize.  *See Airweld, Inc. v. Airco, Inc.*, 742 F.2d 1184, 1191 n.3 (9th Cir. 1984) ("[Plaintiff's] failure to prove a substantive tying violation precludes it from claiming that [defendant's] actions in that respect also constituted an attempt to monopolize.").  Accordingly, Plaintiffs' antitrust claims are dismissed.

## C. Fraud-Based Claims

Plaintiffs assert claims of common law fraud and fraudulent concealment as well as various claims based on allegations of fraudulent conduct.  Harley-Davidson asserts that Plaintiffs have failed to plead these claims with particularity as required by Federal Rule of Civil Procedure 9(b).  Rule 9(b) requires that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  A plaintiff satisfies the heightened pleading requirements of Rule 9(b) by alleging the "who, what, when, where, and how" of the alleged fraud.  *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (internal quotation marks omitted).

Plaintiffs allege that Harley-Davidson's limited warranty provided Plaintiffs and class members with false or misleading information.  But what exactly Plaintiffs claim Harley-Davidson misrepresented or omitted is not entirely clear from the allegations in the CAC.  Plaintiffs allege that the limited warranty indicated that Plaintiffs and class members would be unable to use unauthorized Harley-Davidson parts on their motorcycles.  CAC ¶¶ 165–66.  Yet, the limited

warranty states that "unapproved modifications (even if these modifications include genuine Harley-Davidson parts and accessories that are not approved for use on your motorcycle) . . . may void all or parts of your new motorcycle limited warranty." *Id.* ¶ 31.  In other words, the warranty did not explicitly foreclose the use of non-Harley-Davidson parts as Plaintiffs suggest.  Plaintiffs also allege that Harley-Davidson indicated to Plaintiffs and class members that they would be unable to repair their motorcycle unless they used authorized service providers.  *Id.* ¶ 167.  At the same time, Plaintiffs claim that Harley-Davidson failed to disclose that the limited warranty prevented Plaintiffs from repairing their motorcycles with their preferred service personnel or by themselves.  *Id.* ¶ 178.  Because the allegations are internally inconsistent, they cannot state a claim upon which relief can be granted.

To the extent Plaintiffs' claims are based on their allegation that Harley-Davidson misrepresented that Harley-Davidson's repair restrictions were binding, even though such restrictions are unlawful and unenforceable, Plaintiffs have failed to state a claim.  *Id.* ¶ 168.  The warranty does not explicitly state that its restrictions "were binding and enforceable," and the CAC does not contain allegations to suggest when, where, or how Harley-Davidson made such misrepresentations or omissions.  *See Schaer v. Newell Brands Inc.*, No. 22-C-30004, 2023 WL 2033765, at *2 (D. Mass. Feb. 16, 2023).  Because the CAC fails to state a claim in accordance with Rule 9(b), Plaintiffs' fraud claims against Harley-Davidson must be dismissed.

**D.  Unjust Enrichment Claims**

Plaintiffs also assert claims of unjust enrichment.  They allege that, due to Harley-Davidson's unlawful conduct, Harley-Davidson received and/or was conferred a benefit from Plaintiffs through the purchase of Harley-Davidson motorcycles and compatible parts at supra-competitive prices.  CAC ¶ 160.  Plaintiffs assert that Harley-Davidson has and will continue to

18

SA18

be unjustly enriched by the receipt of unlawfully inflated prices and profits for comparable parts and that it is inequitable and unjust for Harley-Davidson to retain these profits.  *Id.* ¶¶ 160–62. Plaintiffs' allegations of unlawful conduct are based on the same allegations as Plaintiffs' other claims.  Because Plaintiffs' other claims do not survive, Plaintiffs' unjust enrichment claims suffer the same fate.  *See Ass'n Benefit Servs. v. Caremark Rx, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007) ("[W]here the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent claim of fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well.").  Accordingly, Plaintiffs' unjust enrichment claims must be dismissed.

## CONCLUSION

For these reasons, Harley-Davidson's motion to dismiss (Dkt. No. 41) is **GRANTED**. Harley-Davidson's motion to strike certain class allegations (Dkt. No. 44) and motion to stay the claims of certain Plaintiffs pending arbitration (Dkt. No. 39) are **DENIED as moot**.  Plaintiffs' consolidated amended complaint is dismissed.  The dismissal is without prejudice, and Plaintiffs will be allowed 30 days from the date of this order in which to file an amended complaint.  If no amended complaint is filed within the time allowed, the case will be dismissed.

**SO ORDERED** at Green Bay, Wisconsin this 5th day of June, 2024.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

19

SA19

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

IN RE: HARLEY-DAVIDSON AFTERMARKET
PARTS MARKETING, SALES PRACTICES,          Case No. 23-MD-3064
AND ANTITRUST LITIGATION                    Honorable William C. Griesbach

This document relates to:
All Cases

## ORDER FOR JUDGMENT

On June 5, 2024, the court entered its Decision and Order granting the defendant's motion to dismiss the Complaint in the above matter. The dismissal was without prejudice, however, and Plaintiffs were offered thirty days to file an amended complaint. Plaintiffs have advised the court that they do not intend to file an amended complaint and requested entry of Judgment so they may immediately appeal. Based upon the foregoing, the court directs the Clerk to enter Judgment dismissing this case in its entirety with statutory costs awarded to the defendant.

**SO ORDERED** at Green Bay, Wisconsin this 27th day of June, 2024.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

SA20