No. 24-2111

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

IN RE: HARLEY-DAVIDSON AFTERMARKET PARTS MARKETING, SALES
PRACTICES AND ANTITRUST LITIGATION

EDWARD HEYMER, et al.,
Plaintiffs-Appellants
v.
HARLEY-DAVIDSON MOTOR COMPANY GROUP, LLC and HARLEY-
DAVIDSON MOTOR COMPANY, INC.,
Defendants-Appellees

---

Appeal from the United States District Court
for the Eastern District of Wisconsin
Case No. 2:23-md-03064-WCG
The Honorable Judge William C. Griesbach

---

## BRIEF OF DEFENDANTS-APPELLEES

---

John M. Thomas
Cody D. Rockey
**DYKEMA GOSSETT PLLC**
2723 S. State Street, Suite 400
Ann Arbor, MI 48104
Tel: (734) 214-7660
Fax: (800) 957-6740
JThomas@dykema.com
CRockey@dykema.com

Susan G. Feibus
**DYKEMA GOSSETT PLLC**
10 South Wacker Drive, Suite 2300
Chicago, IL 60606
Tel: (312) 627-2283
Fax: (866) 577-3154
SFeibus@dykema.com

Howard B. Iwrey
**DYKEMA GOSSETT PLLC**
39577 Woodward Avenue, Suite 300
Bloomfield Hills, MI 48304
Tel: (248) 203-0700
Fax: (855) 232-1791
HIwrey@dykema.com

*Counsel for Defendants-Appellees*
*Harley-Davidson Motor Company, Inc.*
*and Harley-Davidson Motor Company*
*Group, LLC*

## DISCLOSURE STATEMENT

In accordance with Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1, Appellees Harley-Davidson Motor Company, Inc. and Harley-Davidson Motor Company Group, LLC, which was merged into Harley-Davidson Motor Company, Inc. as of December 31, 2023 with Harley-Davidson Motor Company, Inc. surviving, state that Dykema Gossett PLLC represents them in this appeal, and Snell & Wilmer LLP and Campbell Conroy & O'Neil PC also represented them before the district court. Harley-Davidson, Inc. is a publicly held parent corporation that, directly or indirectly, holds 10% or more of the Appellees' stock. This information has not changed since Appellees' counsel filed their Apperances and Circuit Rule 26.1 Disclosure Statements. (COA Dkt. 9, 11, 12.)

# TABLE OF CONTENTS

DISCLOSURE STATEMENT.............................................................i

TABLE OF CONTENTS.................................................................ii

TABLE OF AUTHORITIES ..........................................................iii

JURISDICTIONAL STATEMENT ..................................................1

STATEMENT OF ISSUES ..............................................................2

STATEMENT OF THE CASE .........................................................3

SUMMARY OF ARGUMENT.........................................................9

STANDARD OF REVIEW .............................................................12

ARGUMENT ................................................................................14

    I.    The district court correctly dismissed the MMWA claims .......................14

        A.    Plaintiffs did not and cannot adequately allege an express tie ...... 14

        B.    Plaintiffs waived their "implied" tie argument................................. 18

        C.    Plaintiffs did not adequately allege a violation of the MMWA's disclosure rule................................................... 20

        D.    Plaintiffs did not adequately allege a violation of the MMWA's pre-sale availability rule ................................... 21

        E.    The FTC complaint does not make Plaintiffs' inadequate allegations adequate ........................................................ 22

    II.    The district court properly dismissed Plaintiffs' antitrust claims ............25

        A.    Plaintiffs did not adequately allege a tie ........................................ 25

        B.    Plaintiffs did not adequately allege a tie that restrained trade.................................................................... 33

        C.    Plaintiffs did not adequately allege attempted monopolization ................................................................ 40

    III.    The district court properly dismissed Plaintiffs' fraud-based claims........46

    IV.    The district court properly dismissed Plaintiffs' unjust enrichment claims................................................................48

    V.    Article III standing exists because at least some Plaintiffs have plausibly alleged harm.............................................................48

CONCLUSION .............................................................................49

CERTIFICATE OF COMPLIANCE..............................................51

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ackerman v. Nw. Mut. Life Ins. Co.*,
172 F.3d 467 (7th Cir. 1999) ................................................................ 13

*Agnew v. NCAA*,
683 F.3d 328 (7th Cir. 2012) ................................................................ 37

*Airweld, Inc. v. Airco, Inc.*,
742 F.2d 1184 (9th Cir. 1984) .............................................................. 32

*Ass'n Benefit Servs. v. Caremark Rx, Inc.*,
493 F.3d 841 (7th Cir. 2007) ................................................................ 48

*Assoc. of Am. Physicians & Surgeons, Inc. v. Am. Bd. Of Med. Specialties*,
15 F.4th 831 (7th Cir. 2021) ........................................................... 13, 31

*Ball Mem'l Hosp., Inc. v. Mut. Hosp. Ins., Inc.*,
784 F.2d 1325 (7th Cir. 1986) ........................................................ 37, 44

*Bayer Schering Pharma AG v. Sandoz, Inc.*,
813 F. Supp. 2d 569 (S.D.N.Y. 2011) .................................................. 43

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................ 13, 40

*Blue Cross & Blue Shield United v. Marshfield Clinic*,
65 F.3d 1406 (7th Cir. 1995) ................................................................ 44

*BookLocker.com, Inc. v. Amazon.com, Inc.*,
650 F. Supp. 2d 89 (D. Me. 2009) ........................................................ 30

*Borschow Hosp. & Med. Supplies v. Cesar Castillo Inc.*,
96 F.3d 10 (1st Cir. 1996) ..................................................................... 25

*Burzlaff v. Thoroughbred Motorsports, Inc.*,
758 F.3d 841 (7th Cir. 2014) .................................................................. 1

*Carell v. Shubert Org., Inc.*,
104 F. Supp. 2d 236 (S.D.N.Y. 2000) .................................................. 35

*Carl Sandburg Vill. Condo. Asso. No. 1 v. First Condo. Dev. Co.*,
758 F.2d 203 (7th Cir. 1985) .......................................................... 33, 39

*Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*,
474 F.3d 463 (7th Cir. 2007) ................................................... 15

*Chijioke-Uche v. GM*,
2022 U.S. Dist. LEXIS 138068 (E.D. Pa. Aug. 3, 2022) ...................................... 19

*Cleary v. Philip Morris Inc.*,
656 F.3d 511 (7th Cir. 2011) ................................................... 48

*Collins Inkjet Corp. v. Eastman Kodak Co.*,
781 F.3d 264 (6th Cir. 2015) ................................................... 27

*Concord Boat Corp. v. Brunswick Corp.*,
207 F.3d 1039 (8th Cir. 2000) ................................................... 44

*Crossroads Cogeneration Corp. v. Orange & Rockland Utils.*,
159 F.3d 129 (3d Cir. 1998) ................................................... 44

*Deputy v. Lehman Bros.*,
374 F. Supp. 2d 695 (E.D. Wis. 2005) ................................................... 17

*Dig. Equip. Corp. v. Uniq Dig. Techs.*,
73 F.3d 756 (7th Cir. 1996) ................................................... 46

*Dixon v. Nat'l Hot Rod Ass'n*,
2021 U.S. Dist. LEXIS 59443 (S.D. Ind. Mar. 29, 2021) ...................................... 35

*Double D Spotting Serv. v. Supervalu, Inc.*,
136 F.3d 554 (8th Cir. 1998) ................................................... 34

*Dunbar v. Kohn Law Firm, S.C.*,
896 F.3d 762 (7th Cir. 2018) ................................................... 5

*DXS, Inc. v. Siemens Med. Sys.*,
991 F. Supp. 859 (E.D. Mich. 1997) ................................................... 29, 31

*DXS, Inc. v. Siemens Medical Sys.*,
100 F.3d 462 (6th Cir. 1996) ................................................... 31

*Eastman Kodak v. Image Technical Servs., Inc.*,
504 U.S. 451 (1992) ................................................... 42, 45

*Fido's Fences, Inc. v. Canine Fence Co.*,
672 F. Supp. 2d 303 (E.D.N.Y. 2009) ................................................... 29, 31

*Fin. Fiduciaries, LLC v. Gannett Co.*,
46 F.4th 654 (7th Cir. 2022) ................................................... 4

*First Priority Emergency Vehicles, Inc. v. REV Ambulance Grp. Orlando, Inc.*,
2020 U.S. Dist. LEXIS 74170 (D.N.J. Apr. 28, 2020) ........................................... 36

*Foremost Pro Color, Inc. v. Eastman Kodak Co.*,
703 F.2d 534 (9th Cir. 1983) ................................................. 33

*FTC v. Advocare Int'l, L.P.*,
2020 U.S. Dist. LEXIS 213865 (E.D. Tex. Nov. 16, 2020) .................................... 23

*FTC v. Standard Oil Co.*,
449 U.S. 232 (1980) ..................................................... 23

*G&S Holdings LLC v. Cont'l Cas. Co.*,
697 F.3d 534 (7th Cir. 2012) ................................................. 18

*GMC v. Gibson Chem. & Oil Corp.*,
786 F.2d 105 (2d Cir. 1986)........................................... 29, 31

*Goldwasser v. Ameritech Corp.*,
222 F.3d 390 (7th Cir. 2000) ................................................. 34

*Gonzalez v. McHenry Cnty.*,
40 F.4th 824 (7th Cir. 2022)................................................. 12

*Gonzalez v. St. Margaret's House Hous. Dev. Fund Corp.*,
880 F.2d 1514 (2d Cir. 1989)................................................. 38

*Great Escape, Inc. v. Union City Body Co.*,
791 F.2d 532 (7th Cir. 1986) ................................................. 40

*Green Country Food Mkt., Inc. v. Bottling Group, LLC*,
371 F.3d 1275 (10th Cir. 2004) .............................................. 43

*Gross v. Town of Cicero*,
619 F.3d 697 (7th Cir. 2010) ................................................. 47

*Hack v. President & Fellows of Yale Coll.*,
237 F.3d 81 (2d Cir. 2000)................................................... 34

*Hackett v. City of South Bend*,
956 F.3d 504 (7th Cir. 2020) ................................................. 47

*Harrison Aire, Inc. v. Aerostar Int'l*,
423 F.3d 374 (3d Cir. 2005) ............................................. 44, 45

*Haywood v. Massage Envy Franchising, LLC*,
887 F.3d 329 (7th Cir. 2018) ................................................. 13

*HDC Med., Inc. v. Minntech Corp.,*
411 F. Supp. 2d 1096 (D. Minn. 2006) ............................................ 29, 32

*Healy v. Cox Communs., Inc.,*
871 F.3d 1093 (10th Cir. 2017) ............................................ 38, 39

*Henson v. CSC Credit Servs.,*
29 F.3d 280 (7th Cir. 1994) ............................................ 5

*Hicks v. PGA Tour, Inc.,*
897 F.3d 1109 (9th Cir. 2018) ............................................ 36

*Hip Hop Bev. Corp. v. Monster Energy Co.,*
733 F. App'x 380 (9th Cir. 2018) ............................................ 37, 44

*House of Brides, Inc. v. Alfred Angelo, Inc.,*
2014 U.S. Dist. LEXIS 1850 (N.D. Ill. Jan. 8, 2014) ............................................ 35

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.,*
602 F.3d 237 (3d Cir. 2010) ............................................ 41

*Hypertherm, Inc. v. Am. Torch Tip Co.,*
2007 U.S. Dist. LEXIS 67579 (D.N.H. Sept. 11, 2007) ............................................ 29

*Image Tech. Servs. v. Eastman Kodak,*
125 F.3d 1195 (9th Cir. 1997) ............................................ 42

*In re Deere & Co. Repair Serv. Antitrust Litig.,*
2023 U.S. Dist. LEXIS 210516 (N.D. Ill. 2023) ............................................ 27

*In re Generac Solar Power Sys. Mktg. Sales Pracs. Prods. Liab. Litig.,*
2024 U.S. Dist. LEXIS 93973 (E.D. Wis. May 24, 2024) ............................................ 1

*In re German Auto. Mfrs. Antitrust Litig.,*
612 F. Supp. 3d 967 (N.D. Cal. 2020) ............................................ 35, 36

*In re Rust-Oleum Restore Mktg. Sales Practices & Prods. Liab. Litig.,*
155 F. Supp. 3d 772 (N.D. Ill. 2016) ............................................ 20

*Ind. Grocery, Inc. v. Super Valu Stores, Inc.,*
864 F.2d 1409 (7th Cir. 1989) ............................................ 37, 44

*It's My Party, Inc. v. Live Nation, Inc.,*
811 F.3d 676 (4th Cir. 2016) ............................................ 25

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde,*
466 U.S. 2 (1984) ............................................ passim

*Kohen v. Pac. Inv. Mgmt. Co. LLC & PIMCO Funds*,
    571 F.3d 672 (7th Cir. 2009) ................................................................ 49

*Lambrix v. Tesla*,
    2024 U.S. Dist. LEXIS 126335 (N.D. Cal. June 17, 2024) ................. 32

*Lee v. Life Ins. Co. of N. Am.*,
    23 F.3d 14 (1st Cir. 1994) ...................................................................... 46

*Lektro-Vend Corp. v. Vendo Co.*,
    660 F.2d 255 (7th Cir. 1981) ................................................................ 41

*Marts v. Xerox*,
    77 F.3d 1109 (8th Cir. 1996) ..................................................... passim

*Maui Jim, Inc. v. SmartBuy Guru Enters.*,
    386 F. Supp. 3d 926 (N.D. Ill. 2019) .................................................. 35

*Mercatus Grp., LLC v. Lake Forest Hosp.*,
    641 F.3d 834 (7th Cir. 2011) ................................................................ 40

*Metzler v. Bear Auto. Serv. Equip. Co.*,
    19 F. Supp. 2d 1345 (S.D. Fla. 1998) .................................................. 45

*Montoya v. Jeffreys*,
    99 F.4th 394 (7th Cir. 2024) ................................................................ 49

*PBTM LLC v. Football Nw., LLC*,
    511 F. Supp. 3d 1158 (W.D. Wash. 2021) .......................................... 35

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
    631 F.3d 436 (7th Cir. 2011) ................................................................ 14

*Protect Our Parks, Inc. v. Buttigieg*,
    97 F.4th 1077 (7th Cir. 2024) ....................................................... 47, 48

*PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*,
    615 F.3d 412 (5th Cir. 2010) ................................................................ 41

*Queen City Pizza v. Domino's Pizza*,
    124 F.3d 430 (3d Cir. 1997) ................................................................. 34

*Rebel Oil Co. v. Atl. Richfield Co.*,
    51 F.3d 1421 (9th Cir. 1995) ................................................................ 37

*Reifert v. S. Cent. Wis. MLS Corp.*,
    450 F.3d 312 (7th Cir. 2006) ......................................................... 38, 39

*Republic Tobacco Co. v. N. Atl. Trading Co.*,
   381 F.3d 717 (7th Cir. 2004) ................................................. 34

*Rocha v. Rudd*,
   826 F.3d 905 (7th Cir. 2016) ................................................. 13

*Rutman Wine Co. v. E. & J. Gallo Winery*,
   829 F.2d 729 (9th Cir. 1987) ................................................. 41

*RX Sys. v. Med. Tech. Sys.*,
   1995 U.S. Dist. LEXIS 14214 (N.D. Ill. Sept. 29, 1995) ............ 30, 32

*Saccameno v. Ocwen Loan Servicing, LLC*,
   372 F. Supp. 3d 609 (N.D. Ill. 2019) ........................................ 5

*Schor v. Abbott Labs.*,
   457 F.3d 608 (7th Cir. 2006) ............................................. 26, 46

*Sharif Pharmacy, Inc. v. Prime Therapeutics, LLC*,
   950 F.3d 911 (7th Cir. 2020) ......................................... 34, 41, 42

*Sheridan v. Marathon Petroleum Co., LLC*,
   530 F.3d 590 (7th Cir. 2008) ......................................... 26, 33, 35

*Silha v. ACT, Inc.*,
   807 F.3d 169 (7th Cir. 2015) ................................................ 48

*Siva v. Am. Bd. Of Radiology*,
   38 F.4th 569 (7th Cir. 2022) ......................................... 13, 25, 33

*Skelton v. General Motors Corp.*,
   500 F. Supp. 1181 (N.D. Ill. 1980) ......................................... 19

*Skidmore v. Swift & Co.*,
   323 U.S. 134 (1944) ......................................................... 24

*SMS Sys. Maint. Servs. v. Dig. Equip. Corp.*,
   188 F.3d 11 (1st Cir. 1999) ........................................ 28, 32, 35, 45

*Soo Line R.R. Co. v. Conrail*,
   965 F.3d 596 (7th Cir. 2020) ............................................. 18, 24

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ........................................................ 3, 5

*Terminalift LLC v. Int'l Longshore & Warehouse Union Local 29*,
   2013 U.S. Dist. LEXIS 70545 (S.D. Cal. May 17, 2013) ............... 44

*United States v. Grinnell Corp.*,
    384 U.S. 563 (1996) ........................................................ 42

*United States v. Harley-Davidson, Inc.*,
    2020 U.S. Dist. LEXIS 167301 (D.D.C. Sept. 14, 2020) ......................................... 4

*United States v. Phillipsburg Nat'l Bank & Trust Co.*,
    399 U.S. 350 (1970) ........................................................ 42

*United States v. Syufy Enters.*,
    903 F.2d 659 (9th Cir. 1990) ................................................. 44

*United States v. Vallone*,
    698 F.3d 416 (7th Cir. 2012) ................................................. 18

*Va. Panel Corp. v. MAC Panel Co.*,
    133 F.3d 860 (Fed. Cir. 1997) ............................................ 29, 31

*Viamedia, Inc. v. Comcast Corp.*,
    951 F.3d 429 (7th Cir. 2020) ................................................. 27

*Voelker v. Porsche Cars North America, Inc.*,
    353 F.3d 516 (7th Cir. 2003) .................................................. 1

*Wagner v. Circle W Mastiffs*,
    732 F. Supp. 2d 792 (S.D. Ohio 2010) ......................................... 35

*Westerfield v. Quizno's Franchise Co., LLC*,
    527 F. Supp. 2d 840 (E.D. Wis. 2007) ......................................... 35

*Westman Com. Co. v. Hobart International, Inc.*,
    796 F.2d 1216 (10th Cir. 1986) ............................................... 43

*Will v. Comprehensive Accounting Corp.*,
    776 F.2d 665 (7th Cir. 1985) ................................................. 37

*Williamson v. Curran*,
    714 F.3d 432 (7th Cir. 2013) ............................................... 3, 5

*Xerox Corp. v. Media Scis., Inc.*,
    660 F. Supp. 2d 535 (S.D.N.Y. 2009) .......................................... 45

*Young v. Verizon's Bell Atl. Cash Balance Plan*,
    615 F.3d 808 (7th Cir. 1996) ................................................. 16

## REGULATIONS

16 C.F.R. § 2.34 ........................................................................ 24

16 C.F.R. § 3.31 ........................................................................ 23

16 C.F.R. § 3.41 ........................................................................ 23

16 C.F.R. § 3.43 ........................................................................ 23

16 C.F.R. § 700.10 ........................................................... 6, 18, 19

16 C.F.R. § 701.3 ..................................................................... 20

16 C.F.R. § 702.3 .................................................................. 7, 21

## RULES

Fed. R. Civ. P. 9(b) ............................................................ passim

Fed. R. Civ. P. 12(b)(6) ....................................................... 2, 24

## STATUTES

15 U.S.C. § 45 ......................................................................... 23

15 U.S.C. § 2301 ....................................................................... 7

15 U.S.C. § 2302 ........................................................... 5, 6, 20, 21

15 U.S.C. § 2310 ................................................................ 19, 20

28 U.S.C. § 1291 ........................................................................ 1

28 U.S.C. § 1332 ........................................................................ 1

28 U.S.C. § 1367 ........................................................................ 1

# JURISDICTIONAL STATEMENT

Plaintiffs' Jurisdictional Statement is correct, but incomplete. Plaintiffs' allegations satisfied the amount-in-controversy, minimum diversity,[1] and class size requirements of the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), (5)(B), and (6). *See* A.23-26 ¶¶ 6-23; A.60-61 ¶¶ 133(a), 134. CAFA provided the district court with original jurisdiction over Plaintiffs' Magnuson-Moss Warranty Act claims and the various state statutory and common law claims. *See In re Generac Solar Power Sys. Mktg. Sales Pracs. Prods. Liab. Litig.*, 2024 U.S. Dist. LEXIS 93973, at *13-24 (E.D. Wis. May 24, 2024). Even if CAFA only provided for original jurisdiction over Plaintiffs' state-law claims, the district court had supplemental jurisdiction over Plaintiffs' MMWA claims under 28 U.S.C. § 1367 because those claims arose from the same transactions and facts. *Id.* at *10-13; *Burzlaff v. Thoroughbred Motorsports, Inc.*, 758 F.3d 841, 844-45 (7th Cir. 2014); *Voelker v. Porsche Cars North America, Inc.*, 353 F.3d 516, 521-22 (7th Cir. 2003).

This Court has jurisdiction under 28 U.S.C. § 1291. The district court dismissed Plaintiffs' claims on June 5, 2024 and entered judgment on June 27. Dkt. 55, 58. Plaintiffs filed a notice of appeal that day. Dkt. 59.

---

[1] The Complaint alleged that Harley-Davidson Motor Company, Inc. is incorporated and has its principal place of business in Wisconsin, and that named Plaintiffs are citizens of various states other than Wisconsin and members of various classes. Harley-Davidson Motor Company Group, LLC's citizenship is irrelevant because the citizenship of "any" defendant can satisfy CAFA's diversity requirement. 28 U.S.C. § 1332(d)(2)(A).

## STATEMENT OF ISSUES

1. Whether the district court properly dismissed Plaintiffs' Magnuson-Moss Warranty Act claims under Fed. R. Civ. P. 12(b)(6) because: (A) the warranty that came with new Harley-Davidson motorcycles was not conditioned or "tied" to the purchase of Harley-Davidson parts; (B) Plaintiffs waived their meritless argument that such a tie was "implied"; (C) Plaintiffs failed to adequately allege the terms omitted from the warranty; (D) Plaintiffs failed to adequately allege that Defendants did not provide a copy of the warranty to dealers or post it online; and (E) the FTC's administrative complaint does not include any relevant findings or analysis entitled to deference.

2. Whether the district court properly dismissed Plaintiffs' antitrust claims under Fed. R. Civ. P. 12(b)(6) because Plaintiffs did not adequately allege (A) that Plaintiffs were forced to buy Harley-Davidson parts (or forego buying third-party parts) to purchase a Harley-Davidson motorcycle, or that any purported tie (B) restrained trade or (C) constituted attempted monopolization.

3. Whether the district court properly dismissed Plaintiffs' fraud-based common law and statutory consumer protection claims under Fed. R. Civ. P. 12(b)(6) because they were dependent on Plaintiffs' unsuccessful antitrust claims and were not pled with particularity under Fed. R. Civ. P. 9(b).

4. Whether the district court properly dismissed Plaintiffs' unjust enrichment claims under Fed. R. Civ. P. 12(b)(6) because they were dependent on Plaintiffs' other unsuccessful claims.

**STATEMENT OF THE CASE**

### 1. Procedural history

Plaintiffs in this multi-district litigation are fifteen individuals from eleven states who alleged they purchased new Harley-Davidson motorcycles with two-year limited warranties. A.23-25 ¶¶ 6-19; A.28 ¶ 30. Plaintiffs alleged the warranty was conditioned on the use of Harley-Davidson parts. A.50 ¶ 97. Plaintiffs claimed this violated the Wisconsin Antitrust Act, the Magnuson-Moss Warranty Act, and numerous states' common law of fraud, fraudulent concealment, and unjust enrichment, and antitrust and consumer protection statutes. A.63-247. They purported to bring these claims on behalf of multiple classes. A.58-60 ¶¶ 126-130; A.67 ¶ 163; A.69-70 ¶ 174; A.72 ¶ 187; A.73 ¶ 190. Defendants Harley-Davidson Motor Company Group, LLC and Harley Davidson Motor Company, Inc. (together "H-D") moved to dismiss the operative complaint. Dkt. 41-42. The district court granted H-D's motion and gave Plaintiffs leave to amend. Dkt. 55.[2] Plaintiffs declined. Dkt. 56. This appeal followed. Dkt. 59.

### 2. The warranty

Purchasers of new Harley-Davidson motorcycles received an Owner's Manual that contains the warranty in a section entitled "[Model Year] Harley-Davidson Motorcycle Limited Warranty." Supp.A.9-12.[3] The warranty generally provided free

---

[2] The Court denied H-D's motions to stay certain claims pending arbitration, Dkt. 39-40, and to strike certain class allegations, Dkt. 44-45, as moot. Dkt. 55.

[3] This Court may consider the Owner's Manuals because they "are central to the complaint and are referred to in it." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (courts "must consider…documents incorporated into the complaint by reference"); *Fin. Fiduciaries, LLC*

3

repair or replacement of parts found, under normal use, to be defective in factory materials or workmanship. Supp.A.9. It ran for two years. A.28 ¶ 30.

The warranty noted that "unapproved modifications…*may* void all or parts of your new motorcycle limited warranty." Supp.A.11 (emphasis added). It specifically excluded coverage for "[d]amage caused by installation or use of non-Harley-Davidson components, even those installed by an authorized Harley-Davidson dealership, that cause a Harley-Davidson part to fail." *Id.* It also excluded "[d]efects or damage impacting the functionality of powertrain components in a motorcycle that has been tuned using a tuner or calibration" not approved by the California ARB or the EPA. *Id.*

The latter exclusion was added in 2017 to comply with an EPA Consent Decree resolving claims related to the installation of performance "tuners" on motorcycles, which "result[] in increased emissions." *United States v. Harley-Davidson, Inc.*, 2020 U.S. Dist. LEXIS 167301, at *3, 5 (D.D.C. Sept. 14, 2020). Although H-D denied liability, it agreed to: (1) "deny all warranty claims for functional defects of powertrain components…if any Defendants have any information to show that such vehicle was tuned using a Tuning Product that was not covered by a California ARB Executive Order or otherwise approved by the EPA;" and (2) ensure its product

---

*v. Gannett Co.*, 46 F.4th 654, 663 (7th Cir. 2022) ("This incorporation-by-reference doctrine prevents a plaintiff from avoiding dismissal by omitting facts or documents that undermine his case."). Plaintiffs did not object below. Note that there are no material differences in the Owner's Manuals between relevant model years 2016 and 2022, except for language added in model year 2017 to comply with an EPA Consent Decree discussed below.

literature states that it will deny such claims. A.295-296 ¶¶ 14(a), & (c).[4]

### 3. Plaintiffs' Magnuson-Moss Warranty Act claims

Plaintiffs alleged that H-D violated the MMWA's tying prohibition, A.64-65 ¶ 150, which provides that a warrantor may not "condition his written or implied warranty…on the consumer's using…any article or service (other than article or service provided without charge under the terms of the warranty) which is identified by brand, trade, or corporate name." 15 U.S.C. § 2302(c).[5] Plaintiffs alleged that H-D violated this provision by "us[ing] its warranty to try to force Harley owners to use its own parts, instead of the many quality aftermarket parts available for its motorcycles." A.22 ¶ 1; *see also* A.22-23 ¶ 4; A.51 ¶ 102; A.58 ¶ 124.

But the district court agreed with H-D that the "fact that the limited warranty states that the use of unauthorized parts 'may void' the warranty does not mean that it 'will void' the warranty and thus does not include a prohibited tie." A.333-334. It held that the warranty language, like any contract language, should be given its plain and ordinary meaning and followed this Court's holding in *Dunbar v. Kohn Law Firm, S.C.*, 896 F.3d 762, 765 (7th Cir. 2018), that even "[a]n unsophisticated consumer would not understand the word 'may' to mean 'will.'" *Id.*

---

[4] This Court may consider the EPA Consent Decree because it is a public record and subject to judicial notice. *Tellabs*, 551 U.S. at 322 (courts "must consider…matters of which a court may take judicial notice"); *Williamson*, 714 F.3d at 436 (courts may consider "information that is properly subject to judicial notice"); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (a court may take "judicial notice of matters of public record," including "public court documents"); *Saccameno v. Ocwen Loan Servicing, LLC*, 372 F. Supp. 3d 609, 649-50 (N.D. Ill. 2019) ("[T]hat courts may take judicial notice of consent orders and similar agreements is settled beyond peradventure.") (citing cases). Plaintiffs did not object below.

[5] The relevant statutory sections and rules are in the Supplemental Appendix at Supp.A.86-96.

Plaintiffs' allegations relied on snippets of language taken not from the warranty itself, but from various other sections of the Owner's Manual. Compare A.28-29 ¶ 31, A.55 ¶¶ 114, 116, A.65 ¶ 151 with A.268; A.326-327. Nevertheless, the district court considered all of the Owner's Manual excerpts relied on by Plaintiffs. A.332-337. The district court concluded that those statements did not change the meaning of the warranty. In context, the warranty explained to buyers (1) "that the limited warranty does not cover damage caused by unauthorized modifications," and (2) "that modifications to improve performance voids the powertrain warranty." A.337. The district court recognized that the former is permitted by the MMWA and the latter is required by the EPA Consent Decree. A.336-337 (citing 16 C.F.R. § 700.10(c)).

Plaintiffs also alleged that H-D violated the MMWA's disclosure rule, A.65-66 ¶ 153, which requires a warrantor to "fully and conspicuously disclose in simple and readily understood language the terms and conditions of such warranty." 15 U.S.C. § 2302(a). Plaintiffs alleged that H-D violated this rule by concealing "the full terms of the Limited Warranty and instead instruct[ing] consumers to consult with a Harley-Davidson dealer for full details." A.57 ¶ 123. Given that the warranty contained—and did not conceal—the language Plaintiffs claimed was improper, the district court dismissed this claim because "Plaintiffs have not alleged which additional warranty terms were not included in the warranty documents they received or how the lack of such information in the warranty impacted them." A.337-338.

Plaintiffs also alleged that H-D violated the MMWA pre-sale availability rule, A.65 ¶ 152, which requires warrantors to provide sellers with warranty materials, *see* 15 U.S.C. § 2301(b)(1)(A); 16 C.F.R. § 702.3(b). Plaintiffs alleged that H-D violated this rule because "it does not provide its authorized dealers with signs displaying the text of the Limited Warranty, or otherwise require its dealers to make the Limited Warranty terms available to all customers before purchase." A.57 ¶ 121. But the district court noted that "providing a sign with the text of the consumer product warranty is only *one way* that a warrantor may comply with" the pre-sale availability rule. A.339 (emphasis added). Because a warrantor can also comply by providing a copy of the warranty with every warranted product, 16 C.F.R. § 702.3(b)(1)(i)(A), the district court dismissed this claim as "Plaintiffs do not allege in the CAC that Harley-Davidson did not include a copy of the written warranty with each motorcycle." A.339.

### 4. Plaintiffs' antitrust claims

Plaintiffs also claimed that the purported warranty terms constituted a tie of Harley-Davidson motorcycles to the purchase of Harley-Davidson parts that restrained trade and was an attempt to monopolize. *See, e.g.*, A.50 ¶ 97; A.63 ¶ 143.[6] Plaintiffs alleged H-D imposed the alleged tie "[t]o maintain its dominant position" in the market for motorcycle parts "compatible with Harley-Davidson motorcycles." A.30 ¶ 36; A.35-36 ¶ 51; A.50 ¶ 97. They did not allege H-D's share of

---

[6] Plaintiffs abandoned any monopolization claims. Supp.A.62 ("monopolization of the tied product market" is a claim "Plaintiffs did not bring").

this "robust" and "vast" market with a "multitude" of manufacturers providing "a dizzying array of repair parts as well as performance and cosmetic upgrade parts." A.22 ¶ 3; A.30-31 ¶¶ 36, 38; A.36-41 ¶¶ 52, 56-62, 65-68; A.44-45 ¶ 78.

Plaintiffs claimed H-D could impose the alleged tie because it has "monopoly power" in the market for "American-made, new, large roadgoing bikes." A.31 ¶ 39; A.50 ¶ 97. Their purported "American-made" market rests on H-D's alleged "all American branding," instituted "to distinguish itself from the increasingly popular Japanese motorcycle" and to sell to consumers looking "to express their patriotism." A.33-35 ¶¶ 45-49. Although they did not allege H-D's share of that market, they did allege that H-D's "nearest competitors" are Honda, Kawasaki, Yamaha, Suzuki, and BMW—companies with "the backing and name of companies with an array of products in markets across the globe." A.27 ¶ 27; A.35 ¶¶ 49-50; A.47-49 ¶¶ 88, 91, 94.

Despite claiming the warranty terms created a "disincentive" to purchase third-party parts, A.48-49 ¶ 92, none of the Plaintiffs alleged they purchased only Harley-Davidson parts, or that they forewent purchasing third-party parts, let alone that they did so because of the warranty. *See* A.23-25 ¶¶ 6-19. And Plaintiffs acknowledged that, even under their theory, consumers could buy third-party parts if they "intended to void" the warranty, A.48-49 ¶ 92, or after the two-year warranty expired—that is, during most of a motorcycle's life, given that motorcycles are kept on the road "for generation after generation." A.22 ¶ 3; A.48-49 ¶ 92.

The district court found Plaintiffs had not stated any antitrust claims because

they failed to adequately allege a forced purchase constituting a tie. A.342. Plaintiffs did not allege that "buyers were explicitly precluded from buying a motorcycle without agreeing to purchase Harley-Davidson parts" or "that foregoing warranty coverage is so costly as to be considered economic forcing." A.342. The district court did not address whether Plaintiffs had adequately alleged that any tie restrained trade or constituted attempted monopolization because Plaintiffs' failure to allege a plausible tie was dispositive of all of the antitrust claims.

### 5. Plaintiffs' fraud-based and unjust enrichment claims

The district court rejected Plaintiffs' fraud-based claims under various states' common law and consumer protection statutes for failure to plead them with the particularity required by Rule 9(b). A.344-345. The court found that Plaintiffs' allegations were "internally inconsistent," alleging both that H-D told them about the purported warranty conditions and that H-D failed to do so. A.344-345. As a result, "what exactly Plaintiffs claim Harley-Davidson misrepresented or omitted is not entirely clear…." A.344. The court also rejected any claim that H-D misrepresented the enforceability of the purported restrictions because Plaintiffs alleged no such representation. A.345.

Finally, the district court dismissed Plaintiffs' unjust enrichment claims, holding that "[b]ecause Plaintiffs' other claims do not survive, Plaintiffs' unjust enrichment claims suffer the same fate." A.346.

### SUMMARY OF ARGUMENT

Plaintiffs' case rests almost entirely on their mischaracterization of Harley-Davidson's motorcycle warranty as requiring owners to buy only Harley-Davidson

parts to avoid losing coverage. But, as the district court held, the warranty did not impose such limitations. For that, and the other reasons below, this Court should affirm dismissal of Plaintiffs' case.

## 1. Plaintiffs' Magnuson-Moss Warranty Act claims

**Section I.A**. Plaintiffs argue that H-D's warranty violated the MMWA tying prohibition based entirely on snippets of language, taken out of context, that do not appear in the warranty. The district court considered these snippets in context, consistent with general principles of contract interpretation, and correctly concluded that they explained that the warranty does not cover (1) damage caused by unauthorized modifications, and (2) powertrain damage if certain modifications to improve performance were made, as required by the EPA Consent Decree. Neither exclusion violates the MMWA. And Plaintiffs never identify any error in the district court's rationale.

**Section I.B**. Plaintiffs' argument on appeal that H-D's warranty created a deceptive, "implied" tie in violation of the MMWA's tying prohibition was never raised below and has been waived. In any event, the MMWA does not create a private right of action for "implied" ties.

**Section I.C**. The district court properly dismissed Plaintiffs' claim that H-D violated the MMWA's disclosure rule because Plaintiffs did not identify which warranty terms were excluded from the warranty or how they were impacted.

**Section I.D**. The district court properly dismissed Plaintiffs' claim that H-D violated the MMWA pre-sale availability rule because they did not allege that H-D failed to follow any of the permitted methods of complying with the rule.

**Section I.E**. Plaintiffs' reliance on purported "findings" by the FTC is misplaced. The FTC did not make any relevant findings. The allegations in an unadjudicated, untested FTC administrative complaint filed simultaneously with a consent order effectuating a settlement resolving claims about Harley-Davidson's warranty are not "findings" and not entitled to any deference. That complaint, if filed in federal court, would have been subject to dismissal for the same reasons as Plaintiffs' Complaint here.

## 2. Plaintiffs' antitrust claims

**Section II.A**. The fact that the warranty did not require the purchase of Harley-Davidson parts (or a promise not to purchase third-party parts) in order to purchase a Harley-Davidson motorcycle is also fatal to Plaintiffs' antitrust claims. And even if purchasing third-party parts required customers to forego any remaining warranty protection, Plaintiffs' allegations did not suggest it was plausible—not merely possible—that doing so was too costly, as the district court held. Indeed, no Plaintiff alleged that he or she purchased only Harley-Davidson parts or forewent purchasing third-party parts because of the warranty terms.

**Sections II.B-C**. Even ignoring that Plaintiffs did not allege the existence of a tie, Plaintiffs' antitrust claims would still fail because Plaintiffs do not adequately allege that H-D has market power in a properly defined tying product (motorcycle) market or that there is a threat it would extend any such power to a properly defined tied product (parts) market. Plaintiffs contrive an alleged motorcycle market to try to create the guise of market power. And they impermissibly lump a "dizzying array" of parts into a single market in an attempt to escape their burden

of alleging that the purported tie could even possibly, let alone plausibly, impact properly defined parts markets. They do not adequately allege that a substantial amount of parts commerce was foreclosed to competitors because of the purported tie. Nor do they adequately allege that there was a substantial danger that the terms of a two-year warranty would have an effect on the admittedly "robust" market for parts for motorcycles that are on the road for "generation after generation."

### 3. Plaintiffs' fraud-based and unjust enrichment claims

**Section III**. The district court correctly dismissed Plaintiffs' fraud-based common law and statutory claims because they were based on "anticompetitive conduct" claims that were also properly dismissed. Further, as the district court found, Plaintiffs' allegations failed to satisfy Fed. R. Civ. P. 9(b) because they were internally inconsistent and did not clearly identify what H-D allegedly misrepresented or concealed. Plaintiffs have not developed any argument to the contrary and have, therefore, waived it.

**Section IV**. The district court correctly dismissed Plaintiffs' unjust enrichment claims because they depended on the other, properly dismissed claims.[7]

## STANDARD OF REVIEW

An order granting a motion to dismiss is reviewed *de novo*. *Gonzalez v. McHenry Cnty.*, 40 F.4th 824, 827 (7th Cir. 2022). Dismissal should be affirmed unless a plaintiff "alleg[ed] facts giving rise to a plausible inference that, after discovery, he

[7] Should this Court reverse and remand, H-D reserves the right to raise grounds for dismissal not previously addressed, and to renew the motions previously denied as moot.

will be able to prove each element of his…claim." *Siva v. Am. Bd. Of Radiology*, 38 F.4th 569, 575 (7th Cir. 2022). The factual allegations must "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" do not suffice. *Id.*

"Ensuring compliance with this standard is particularly important" in cases with antitrust claims "to avoid 'the potentially enormous expense of discovery in cases with no reasonably founded hope' of success." *Siva*, 38 F.4th at 575 (quoting *Twombly*, 550 U.S. at 559). "*Twombly* bars the discover-first, plead-later approach." *Assoc. of Am. Physicians & Surgeons, Inc. v. Am. Bd. Of Med. Specialties*, 15 F.4th 831, 835 (7th Cir. 2021). Failure to hold "a plaintiff with a largely groundless claim" to this standard would allow it "to take up the time of a number of other people, with the right to do so representing an in terrorem increment of the settlement value." *Twombly*, 550 U.S. at 557-58 (quotation omitted). To prevent this, courts "retain the power to insist on some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Id.* at 558 (quotation omitted).

Fraud-based claims are also governed by the heightened pleading standard of Fed. R. Civ. P. 9(b). *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018); *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469-70 (7th Cir. 1999). Plaintiffs concede this. Br. at 42. To comply with Rule 9(b), a plaintiff must specify "the 'who, what, when, where, and how: the first paragraph of any newspaper story' of the alleged fraud." *Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir.

2016). This protects defendants from "baseless suits that tarnish reputations" and "is designed to discourage a 'sue first, ask questions later' philosophy." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 439, 441 (7th Cir. 2011) (quotation omitted).

## ARGUMENT

### I. The district court correctly dismissed the MMWA claims.

Plaintiffs claim that H-D violated the MMWA by: (1) expressly conditioning its warranty on the use of Harley-Davidson parts (the warranty tying prohibition); (2) failing to put all warranty terms in a single document (the disclosure rule); and (3) failing to make its warranty available to consumers prior to purchase (the pre-sale availability rule). A.56-58 ¶¶ 118-123. The district court correctly held that Plaintiffs had not plausibly pled any of these theories. Plaintiffs now also argue the warranty created an "implied" tie in violation of the MMWA. Br. at 53-57. Besides being meritless, Plaintiffs waived this argument by not raising it below.

### A. Plaintiffs did not and cannot adequately allege an express tie.

Harley-Davidson's motorcycle warranty was not conditioned on owners using only Harley-Davidson parts. As the district court recognized, when the warranty is interpreted using well-recognized rules of contract construction, it (1) excludes warranty coverage for damage caused by unauthorized parts, which is allowed by the MMWA, and (2) implements an EPA Consent Decree under which certain performance modifications will in fact void the powertrain warranty. A.336-337. And wholly contrary to Plaintiffs' claim is the fact that the warranty states that "modifications may void all or parts of" the warranty "even if" they "include genuine

Harley-Davidson parts and accessories that are not approved for use on your motorcycle." Supp.A.11. Still further, it goes on to state that "[t]he fact that a part is labeled or branded Harley-Davidson does not necessarily make it appropriate or warranted for the make and model of your motorcycle. The use of parts not designed and tested for your motorcycle may…create conditions not covered by this limited warranty." Supp.A.12.

Plaintiffs appear to concede this because, on appeal, they eschew reliance on any language in the warranty itself. To be sure, Plaintiffs repeatedly assert that the warranty "include[s]" certain language, or "states" certain things. Br. at 8, 48. But Plaintiffs never cite to the warranty itself to support these assertions. They cite allegations in the Complaint, *id.*, but the language quoted in the Complaint does not appear in the warranty. Compare A.55 ¶¶114, 116 to Supp.A.9-12. The allegations are no substitute for the actual warranty language; "[t]o the extent that the [warranty] contradict[s] the Complaint, the [warranty] trump[s] the facts or allegations presented in the Complaint." *Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 466 (7th Cir. 2007). By abandoning reliance on the actual language of the warranty, Plaintiffs appear to recognize that the district court properly interpreted the warranty itself.

The language in the Complaint on which Plaintiffs rely on appeal is exclusively from the Owner's Manual, not the warranty. Compare A.55 ¶¶ 114, 116 with A.268 and A.326-327. And Plaintiffs conceded below that the Limited Warranty "does *not* incorporate the Owner's Manual." Plaintiffs' Brief Opposing Motions to Stay and

Strike Class Allegations p. 17 (Dkt. 49) (emphasis in original). Regardless, those Owner's Manual snippets do not, in context, support Plaintiffs' theory any more than the warranty itself. And context matters. *Young v. Verizon's Bell Atl. Cash Balance Plan*, 615 F.3d 808, 823 (7th Cir. 1996) ("Contracts must be read as a whole, and the meaning of separate provisions should be considered in light of one another and the context of the entire agreement.").

For example, Plaintiffs rely on the first sentence of a "Note" in the Service Records section of the Owner's Manual, which provides that "[t]he use of parts and service procedures other than Harley-Davidson approved parts and service procedures may void the limited warranty." Br. at 8, 48; A.268. But, as the district court recognized, Plaintiffs ignore the very next sentence of the very same Note, which provides important explanatory context:

> The second sentence [of the Note] states, "Any alterations to the emission system components, such as the intake and exhaust system, may be in violation of motor vehicle laws." When the provision is read as a whole, the Service Records Note does not create an impermissible tie. Instead, the provision addresses the types of modifications that may void the powertrain warranty as mandated by the EPA Consent Decree. In any event, like the warranty itself, this provision does not provide that using non-Harley-Davidson parts *will* affect the warranty and thus does not contain an improper tie.

A. 334 (citations omitted). Plaintiffs suggest in a footnote that the district court erred because "may" means something different in the context of the MMWA. Br. at 50 n.5. But they cite no authority to support this implausible proposition.

Beyond this, Plaintiffs' only response to the district court's analysis is to claim that the court "ignored" the other snippets from the Owner's Manual on which they rely. Br. at 52. In fact, the district court's opinion quoted these entire sections for

the purpose of showing that, when read in context, they were consistent with the terms of the warranty itself. A.335-336. For example, Plaintiffs rely on a statement in the "Warranty and Maintenance" section that "use of aftermarket performance parts may void all or parts of your limited warranty." Br. at 8 (quoting A.55 ¶ 116, in turn quoting A.326); *see also* Br. at 48. Addressing this precise language, the district court recognized that it was true that "use of aftermarket *performance* parts may void the powertrain warranty under the EPA Consent Decree." A.336-337 (emphasis in original). Again, Plaintiffs erroneously claim that the district court ignored this language and never actually address the district court's analysis.

Similarly, Plaintiffs simply ignore the district court's discussion of the full Owner's Manual section entitled "Keeping It All Harley-Davidson," on which Plaintiffs heavily rely. As the district court recognized, the plain import of this section, considered in its entirety and in conjunction with the preceding section, is that unapproved and untested parts can cause performance and quality problems, including electrical problems. A.335-336. And the very last sentence of this section provides that, "for details," consumers should "[s]ee the Harley-Davidson Motorcycle Limited Warranty in this owner's manual," A.327, which explains that it does not cover damage caused by unauthorized modifications and that the addition of tuners to improve performance effectively voids the powertrain warranty.[8] Supp.A.11.

---

[8] Although not relied upon by the district court, this reading also follows the preference for "an interpretation which gives a reasonable, lawful, and effective meaning to all the terms" over "an interpretation which leaves a part unreasonable, unlawful, or of no effect." *Deputy v. Lehman Bros.*, 374 F. Supp. 2d 695, 706 (E.D. Wis. 2005) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 203(a)).

Plaintiffs make no attempt to address the district court's rationale, and no attempt to address the actual warranty terms or the context for the Owner's Manual snippets they highlight. By failing to address the district court's rationale, Plaintiffs have waived any challenge to it. *See, e.g., United States v. Vallone*, 698 F.3d 416, 448 (7th Cir. 2012), *vacated on other grounds*, 133 S. Ct. 2825 (2013), *reinstated in relevant part*, 752 F.3d 690 (7th Cir. 2014) ("Having altogether ignored the rationale for the district court's ruling in presenting the issue and making their initial argument on appeal, the [appellants] have waived this aspect of their challenge."); *G&S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 544 (7th Cir. 2012) (declining to consider "undeveloped arguments" where a brief "ignores the court's reasoning entirely"). Any discussion of these issues Plaintiffs attempt to marshal in their reply brief will be "too late." *Vallone*, 698 F.3d at 448.

### B. Plaintiffs waived their "implied" tie argument.

Plaintiffs argue that the district court "erred in failing to find an implied tying violation as set forth in 16 C.F.R. § 700.10(c)." Br. at 53. But Plaintiffs never argued that they stated a claim for an "implied" tie in their opposition to H-D's motion to dismiss, *see* Supp.A.14-85, and have, therefore, waived this argument. *Soo Line R.R. Co. v. Conrail*, 965 F.3d 596, 601 (7th Cir. 2020) ("Failing to bring an argument to the district court [generally] means that you waive that argument on appeal.") (quotation omitted). Any claim that Plaintiffs' express tie argument preserved their "implied" tie argument also fails. *See id.* ("A party must present the specific argument urged on appeal and cannot rest on having addressed the same general issue.").

Even if Plaintiffs' "implied" tie argument was not waived, it is meritless. Plaintiffs' argument is premised on 16 C.F.R. § 700.10(c), which states that "warranty language that implies" a tie is "deceptive" under 15 U.S.C. § 2310. Subsection (c) of section 2310 allows the government to seek an injunction against companies for "making a deceptive warranty" or not complying with "any requirement" of the Act. Subsection (d) creates a private cause of action for companies failing "to comply with any obligation" under the Act. It does not mention deceptive warranties. And subsection (c)'s language "suggests a distinction between the prohibition of deceptive warranties and violation of 'any requirement' under the Act," and indicates that "deceptive warranties are not violations of 'obligations under' the Act … and are not covered by the private remedies section of the statute." *Skelton v. General Motors Corp.*, 500 F. Supp. 1181, 1192 n.29 (N.D. Ill. 1980), *rev'd on other grounds*, 660 F.2d 311 (7th Cir. 1981); *accord Chijioke-Uche v. GM*, 2022 U.S. Dist. LEXIS 138068, at *25 n.9 (E.D. Pa. Aug. 3, 2022) (the deceptive warranties provision relates to the Attorney General and the FTC; it "does not relate to Plaintiff's private right of action"). In fact, the definition of "deceptive warranty" in section 2310(c)(2) applies only to "this subsection," *i.e.*, subsection (c). This is consistent with Congress' legislative intent "that the deceptive warranty section of the Magnuson-Moss Act be read against the background of the [FTC] Act," and courts "have consistently held that the [FTC] Act, as amended, does not impliedly create a private cause of action for unfair or deceptive practices." *Skelton*, 500 F. Supp. at 1194.

Plaintiffs do not address this. They cite one case that found a private right of action for a "deceptive" warranty claim under the MMWA, but for a different proposition. Br. 53-54 (*citing In re Rust-Oleum Restore Mktg. Sales Practices & Prods. Liab. Litig.*, 155 F. Supp. 3d 772, 811-812 (N.D. Ill. 2016)). That decision does not support finding a private cause of action for a deceptive warranty because the defendant there—unlike H-D here—made only a cursory argument with no analysis of the statutory language and no citation to relevant case law.

Plaintiffs' "implied" tie argument fails for the additional reason that no Plaintiff alleges they actually read the warranty, let alone that they were deceived by it, either before purchasing their motorcycles or before purchasing parts. Without these allegations, Plaintiffs have not alleged that they were damaged by any "implied" tie. *See* 15 U.S.C. § 2310(d)(1) (creating a private right of action for a consumer "who is damaged by" a failure to comply with obligations created by the MMWA).

## C. Plaintiffs did not adequately allege a violation of the MMWA's disclosure rule.

Plaintiffs allege that H-D violated the MMWA disclosure rule because H-D "fail[ed] to set forth in the Warranty what is covered or excluded from the same." Br. at 57. The disclosure rule requires warrantors to include "[a] clear description and identification of products, or parts, or characteristics, or components or properties covered by and where necessary for clarification, excluded from the warranty." 16 C.F.R. § 701.3(a)(2); *see also* 15 U.S.C. § 2302(a). Plaintiffs claim that the district court erred in dismissing this claim because they alleged that H-D "had

secret standards that could only be learned, if at all, by consulting a dealer or by costly trial and error that, at best, *risked* voiding the warranty." Br. at 58 (emphasis in original).

But the term "secret standards" appears nowhere in the Complaint, and seems to simply be another way of saying there is an unknown, unspecified term missing from the warranty. As the district court held, Plaintiffs do not state a claim because they did not identify any relevant terms that were not included in the warranty. A.337-338. In fact, they allege they were told of the only warranty condition at issue in this case "by the Limited Warranty documents." A.58 ¶ 124. As a result, Plaintiffs do not plausibly allege that there were any other terms that were omitted from the warranty, or how the lack of any information in the written warranty impacted them.

### D. Plaintiffs did not adequately allege a violation of the MMWA's pre-sale availability rule.

Plaintiffs allege H-D violated the MMWA pre-sale availability rule because it did not "make the Limited Warranty terms available to all customers before purchase." Br. at 64 (quotation omitted). The MMWA's pre-sale availability rule does not require that. It requires warrantors to take certain steps to make it possible for dealers to comply with their separate obligations under the rule. 16 C.F.R. § 702.3; *see also* 15 U.S.C. § 2302(b)(1)(A). A warrantor can comply with the rule by providing dealers a sign with the text of the warranty, providing a copy of the warranty with each product, or posting the warranty on its website, for example. 16 C.F.R. § 702.3(b). Although Plaintiffs alleged H-D did not provide dealers with

signs, A.57 ¶ 121, the district court recognized that Plaintiffs failed to allege that H-D did not satisfy the rule by other means. A.338-339. In fact, Plaintiffs alleged they received a copy of the warranty and acknowledged it was available on H-D's website. A.54-55 ¶¶ 113-116; A.58 ¶ 124; Supp.A.73 ("[E]ach plaintiff purchased a Harley-Davidson motorcycle, and was thus provided" the warranty). This suggests H-D complied with the rule. In any event, Plaintiffs do not allege that H-D did not provide dealers a copy of the warranty with each motorcycle, or that H-D failed to properly post it online. If Plaintiffs had reason to believe either were true, they could have included these allegations in an amendment as permitted by the district court. They declined to do so.

### E. The FTC complaint does not make Plaintiffs' inadequate allegations adequate.

Plaintiffs argue that the district court erred because it "failed to consider" an FTC complaint "in which the FTC found that Defendant's Warranty violated the MMWA." Br. at 58-59. The FTC complaint—published before Plaintiffs filed suit, *see* 87 F.R. 39833-35—was issued to effectuate a consent order resolving claims about Harley-Davidson's warranty and included no admission of liability and no fines. A.271-284. Plaintiffs argue the FTC "found" that the warranty's language is prohibited by the MMWA's tying prohibition and violated the MMWA's disclosure rule and that finding "strongly supports" the plausibility of Plaintiffs' claims. Br. at 58-60. They even go so far as to argue that those "findings" are "dispositive" for purposes of their claim under Massachusetts' consumer protection statute. Br. at 61-62. Plaintiffs further argue that the FTC's "finding" is entitled to deference and

"considerable weight" under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). Br. at 59. But the FTC complaint contained no such findings and no persuasive analysis that might be entitled to deference.

### 1. The FTC never found H-D violated the MMWA.

The FTC *never* made the findings relied on by Plaintiffs. The only "findings" the FTC actually made were that it had jurisdiction and that H-D was incorporated and located in Wisconsin. A.275-276.

Further, the FTC alleged that it had "reason to believe" that an unfair or deceptive act had occurred, A.275, which it must do to issue a complaint, 15 U.S.C. § 45(b). That averment is "not a definitive statement of position;" it is only "a threshold determination that further inquiry is warranted." *FTC v. Standard Oil Co.*, 449 U.S. 232, 241 (1980). The FTC can make fact *findings* only in a written report *after* the parties have had an opportunity to conduct discovery, *after* a hearing at which counsel for the FTC has the burden of proof, and *after* the defendant and any other interested party have had an opportunity to present evidence. 15 U.S.C. § 45(b); 16 C.F.R. §§ 3.31, 3.41, 3.43. None of that happened here.

In short, the allegations in the FTC complaint are just that—mere allegations. If the FTC had filed the complaint in federal court, it would have been required to meet the same pleading standards as Plaintiffs are required to meet here. *See, e.g., FTC v. Advocare Int'l, L.P.*, 2020 U.S. Dist. LEXIS 213865, at *6 (E.D. Tex. Nov. 16, 2020) (rejecting the argument that "a court must accept that the complaint is sufficient to withstand a Rule 12(b) motion so long as the FTC avers that it has

'reason to believe' that a defendant is 'about to'" violate the law). At bottom, since the FTC's Complaint would itself be subject to dismissal under Rule 12(b)(6), it cannot lend any additional plausibility to the Plaintiffs' claims.

### 2. The FTC Complaint is not entitled to deference.

Plaintiffs' argument that the FTC's "finding" is entitled to *Skidmore* deference because it was "significantly adjudicated," Br. at 59, was waived because Plaintiffs never relied on *Skidmore* deference below. *See Soo Line R.R. Co.*, 965 F.3d at 601. Even if not waived, Plaintiffs' argument fails because the FTC's case was never adjudicated at all, let alone "significantly." In fact, the FTC proceedings were conducted under 16 C.F.R. § 2.34, a rule that applies only to the FTC's "Nonadjudicative Procedures." A.275.

In any event, the factors justifying deference under *Skidmore*—"the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade," 323 U.S. at 140—are entirely lacking here. There is no "thoroughness" evident in the issuance of the Complaint and no "reasoning" in it that can be evaluated for validity. It merely quotes (out of context) language and alleges, without analysis, that the warranty violates the MMWA and the FTC Act. The FTC complaint was issued to effectuate a settlement. It had no need to persuade. Not surprisingly, it lacks all of the factors suggesting any power to persuade.

## II. The district court properly dismissed Plaintiffs' antitrust claims.

Plaintiffs claim the same warranty terms also constitute a tie under antitrust law. A tie is "an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product." *Siva*, 38 F.4th at 573 (quotation omitted).[9] The district court held that Plaintiffs failed to plead such an arrangement. A.341-344. That determination was fatal to all of Plaintiffs' antitrust claims and should be affirmed. But, even if Plaintiffs had adequately alleged the existence of a tie, they failed to allege it was plausible that any such tie restrained trade or constituted an attempt to monopolize—questions the district court never had to address, but which provide additional reasons to affirm the decision below.

### A. Plaintiffs did not adequately allege a tie.

A tie under antitrust law requires a "forced" purchase of the tied product to be able to purchase the tying product. *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 25 (1984). There is no tie "where the buyer is free to take either product by itself." *Id.* at 12 n.17 (quotation omitted); *see also It's My Party, Inc. v. Live Nation, Inc.*, 811 F.3d 676, 684 (4th Cir. 2016) (if "the buyer is free to decline the tied product or to purchase the two products separately, then by definition there is no unlawful tying"); *Borschow Hosp. & Med. Supplies v. Cesar Castillo Inc.*, 96 F.3d 10, 18 (1st Cir. 1996) ("Where a tying product has not been withheld, there is no

---

[9] Plaintiffs state that the parties "generally agreed that as to the nature of impermissible conduct" the relevant state and federal antitrust laws "are generally interchangeable." Br. at 12 n.1. H-D agrees to the extent this means that Plaintiffs' state antitrust claims fail for the same reasons they would fail under federal law. *See* Defendants' Brief Supporting Motion to Dismiss pp. 16-19 n.9-10 (Dkt. 42).

tie."). But Plaintiffs did not allege they were forced to buy Harley-Davidson parts (the tied product)—or promise not to buy third-party parts—in order to buy a motorcycle (the tying product). They could buy a motorcycle by itself. They could also buy a motorcycle and third-party parts, even under Plaintiffs' theory, if they "intended to void" the warranty or after the warranty expired. A.48-49 ¶ 92. With the ability to buy the motorcycle "by itself there is no tying problem." *Jefferson Parish*, 466 U.S. at 12 n.17 (quotation omitted). As the district court held, Plaintiffs' Complaint "contains no allegations that buyers were explicitly precluded from buying a motorcycle without agreeing to purchase Harley-Davidson parts." A.342.

Plaintiffs seem to concede that they have not alleged an express tie, arguing instead that H-D created an incentive to buy only Harley-Davidson parts because H-D could void the warranty if owners purchased third-party parts. *See* A.48-49 ¶ 92. According to Plaintiffs, this incentive is economic forcing that creates a tie. Br. at 30-31. Not only does this mischaracterize the warranty, but merely creating a financial incentive to buy products together does not create a tie. In *Sheridan v. Marathon Petroleum Co., LLC*, this Court found no tie even though purchasers had "a powerful incentive" to buy the products together and it would be "costly" not to. 530 F.3d 590, 594, 596 (7th Cir. 2008). "To call this tying would be like saying that a manufacturer of automobiles who sells tires with his cars is engaged in tying because, although the buyer is free to buy tires from someone else, he is unlikely to do so, having paid for the tires supplied by the car's manufacturer." *Id.*; *see also Schor v. Abbott Labs.*, 457 F.3d 608, 610 (7th Cir. 2006) (same for providing a

discount for buying two products together). *Collins Inkjet Corp. v. Eastman Kodak Co.*, 781 F.3d 264 (6th Cir. 2015), on which Plaintiffs rely, does not change this. Br. at 30-31. *Collins* required predatory discounting—a discount for purchasing the products together that results in selling the tied product below cost—to find economic forcing. 781 F.3d at 272. Plaintiffs here never alleged or argued predatory discounting.[10]

Without support for their economic forcing argument, Plaintiffs attempt to manufacture error by mischaracterizing the district court's holding as "enacting a rule disallowing any tying claim involving a warranty." Br. at 5; *see also* Br. at 10, 13, 31. What the district court actually held was that the Complaint "does not contain allegations plausibly suggesting that foregoing warranty coverage is so costly as to be considered economic forcing." A.342. The district court was correct in rejecting Plaintiffs' invitation to assume that forgoing warranty coverage is always so costly as to amount to economic forcing. Plaintiffs' Complaint was devoid of any factual allegation that supports that assumption. The Complaint does not even allege that the named Plaintiffs themselves acted on any purported economic pressure—no Plaintiff alleges that they purchased only Harley-Davidson parts, or forewent a purchase of third-party parts, let alone that they did so because of the

---

[10] Also, this Court's citation to *Collins* in *Viamedia, Inc. v. Comcast Corp.* was dicta because *Viamedia* involved an express tie, not economic forcing. 951 F.3d 429, 471 (7th Cir. 2020). Plaintiffs' reliance on *In re Deere & Co. Repair Serv. Antitrust Litig.* is similarly mislaid because it too involved an express tie. 2023 U.S. Dist. LEXIS 210516, at *8 (N.D. Ill. 2023).

terms of the warranty. *See* A.23-25 ¶¶ 6-19.[11] And Plaintiffs opted not to amend to add any such allegations, even though the district court gave them the opportunity to do so. A.346. Further, Plaintiffs acknowledge that consumers regularly ride Harley-Davidson motorcycles after the two-year warranty coverage has expired, as these motorcycles remain on the road for generations. A.22 ¶ 3; A.28 ¶30. This is inconsistent with their assumption that it is prohibitively costly to ride without this warranty coverage. Plaintiffs offer nothing but conjecture to argue that economic coercion may be afoot and that is not enough to reverse.

The overwhelming weight of authority rejects Plaintiffs' assumption that foregoing warranty coverage is always so costly as to constitute economic forcing. The First Circuit held that a warranty that "may act…as a subtle disincentive that inhibits customers from consulting" third-party service providers "because the customer would, by retaining a [third-party service provider], in effect write off whatever extra cost the manufacturer had built into the [tying product's] purchase price to permit it to offer the warranty" does not create a tie, concluding that "there is nothing inherently anticompetitive about the warranty." *SMS Sys. Maint. Servs. v. Dig. Equip. Corp.*, 188 F.3d 11, 20 (1st Cir. 1999). The Eighth Circuit also rejected a similar tying claim because the products could be purchased separately even though the customer would incur a cost—"forego[ing] the benefits of the warranty"—as plaintiffs did not show that it was "not viable" to forego warranty

---

[11] Plaintiffs' attempt to distinguish cases because they were not brought by the allegedly coerced consumers, Br. at 14, thus rings hollow.

coverage. *Marts v. Xerox*, 77 F.3d 1109, 1112 (8th Cir. 1996); *see also HDC Med., Inc. v. Minntech Corp.*, 411 F. Supp. 2d 1096, 1102 (D. Minn. 2006) (finding no tie because plaintiff failed to show owning a tying product without a warranty is "not viable," "prohibitively expensive," or "excessively costly"). Even if owners of Harley-Davidson motorcycles had to forgo whatever portion of their two-year warranties remained when they bought third-party parts, nothing in Plaintiffs' allegations suggests that this would be so costly as to constitute economic forcing.

Both the Second and Federal Circuits have rejected the argument that the threat of losing warranty coverage amounts to forcing the purchase of the tied product. *Va. Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 870 (Fed. Cir. 1997) ("voiding a warranty on a product already sold…cannot be a tying arrangement because the purchaser is not deciding whether to buy a product"); *GMC v. Gibson Chem. & Oil Corp.*, 786 F.2d 105, 110 (2d Cir. 1986) (no tie of cars to approved transmission fluid where manufacturer said warranty may not cover damage caused by using unapproved fluid). And numerous lower courts have agreed. *Fido's Fences, Inc. v. Canine Fence Co.*, 672 F. Supp. 2d 303, 312 (E.D.N.Y. 2009) ("Indeed, it is well settled that warranties that are not sold as a separate product do not result in consumer coercion if the warranty sets forth requirements."); *Hypertherm, Inc. v. Am. Torch Tip Co.*, 2007 U.S. Dist. LEXIS 67579, at *17 (D.N.H. Sept. 11, 2007) ("When a purchaser of a product is free to forego the benefits of a warranty and buy service or replacement parts elsewhere, no tying arrangement exists."); *DXS, Inc. v. Siemens Med. Sys.*, 991 F. Supp. 859, 864 (E.D. Mich. 1997) (no claim

because tying product could be purchased without the tied product regardless of warranty terms); *RX Sys. v. Med. Tech. Sys.*, 1995 U.S. Dist. LEXIS 14214, at *16 (N.D. Ill. Sept. 29, 1995) (granting motion to dismiss because a plaintiff cannot state a tying claim where "[a] purchaser remains free to buy [the tied product] from other suppliers…so long as it is willing to forego the protections provided by the warranty").

Plaintiffs' attempt to distinguish these cases is unavailing. Although Plaintiffs claim *Marts* is different because "the Court appears to have inferred a 'lifecycle pricing' calculus," Br. at 20, they cite to nothing in the opinion to support that position. *Marts* found no tie because a customer "could forego the benefits of the warranty" and buy parts "from the vendor of its choice" and, like here, there was no suggestion that buying them from the defendant was the only economic option. 77 F.3d at 1112; A48-49 ¶ 92.[12] That the court in *Marts* found the undisputed facts justified dismissal at summary judgment does not suggest that Plaintiffs' alleging similar facts here should survive a motion to dismiss; it suggests the opposite. *See RX Sys.*, 1995 U.S. Dist. LEXIS 14214, at *16 (granting motion to dismiss). Plaintiffs do not allege facts to render their claim plausible, as opposed to merely

---

[12] Even if *Marts* "left 'open the possibility that a warranty provided at no additional charge with the purchase of a copier might be a tying product,'" Br. at 21 (quoting *BookLocker.com, Inc. v. Amazon.com, Inc.*, 650 F. Supp. 2d 89, 99 (D. Me. 2009)) (emphasis omitted), it did not decide whether the warranty, separate from the warrantied equipment, could be the tying product, 77 F.3d at 1112, and that issue is not present here as Plaintiffs alleged the tying product was the warrantied motorcycle, *see* A.31 ¶ 39. And although *BookLocker* did not involve a warranty, the plaintiff in that case alleged facts to support its claim that it was not economically viable to access the tying product without purchasing the tied product. 650 F. Supp. 2d at 95, 101 n.9. Plaintiffs made no such allegations here.

possible, and "*Twombly* bars the discover-first, plead-later approach." *Assoc. of Am.*

*Physicians*, 15 F.4th at 835.

Plaintiffs' attempts to distinguish the other warranty cases fare no better. They

cast *Va. Panel* as merely a patent misuse case. Br. at 16. But one of the theories of

misuse was anticompetitive tying, which the court rejected. 133 F.3d at 870. And

the court rejected antitrust claims premised on the same conduct. *Id.* at 873

("[B]ecause we determine that the conduct underlying the allegations of misuse does

not amount to patent misuse, the same conduct cannot support a judgment that

VP's conduct violated the Sherman Act."). Plaintiffs try to distinguish *GMC* because

the counterclaim defendant "merely recommended its own transmission fluid." Br.

at 17. But *GMC* held that the risk of losing warranty coverage from not following

the recommendation did not create a tied sale. 786 F.2d at 110. And while the court

in *Fido's Fences* found the plaintiff failed to show anticompetitive effects, Br. at 17,

it also found that the plaintiff failed "to show any other element of a tying claim,"

including a forced purchase. 672 F. Supp. 2d at 312. The fact that both *GMC* and

*Fido's Fences* involved lawsuits by tied product competitors, not consumers, is

irrelevant—the question of whether there is a tie is the same regardless of the

plaintiff.

Plaintiffs incorrectly argue that *DXS* did not involve the risk of losing warranty

coverage. Br. at 15. It did, even though the defendant never followed through. *See*

*DXS, Inc. v. Siemens Medical Sys.*, 100 F.3d 462, 469 (6th Cir. 1996) (plaintiff

claimed defendant informed customers "that they would have no warranty against

manufacturing defects" if they used third-party service). And finally, Plaintiffs attempt to distinguish *RX Sys.* by pointing out that it was a 90-day warranty. Br. at 20. But they offer no explanation as to why the two-year warranty here is different, given that they allege motorcycles are used for "generation after generation." A.22 ¶ 3. Further, other cases came to the same conclusion with respect to longer warranties. *See, e.g., Marts*, 77 F.3d at 1110 (3 years); *SMS Sys.*, 188 F.3d at 167 (3 years); *HDC Med.*, 411 F. Supp. 2d at 1102 (1 year).

Plaintiffs cite only one unpersuasive case that found allegations about warranty terms could support a claim. Br. at 18-19 (citing *Lambrix v. Tesla*, 2024 U.S. Dist. LEXIS 126335 (N.D. Cal. June 17, 2024)). While *Lambrix* found the plaintiffs alleged a tie by crediting the conclusory allegation that consumers were forced, *id.* *43, the court's discussion of the issue was all of two sentences and did not address the many cases that analyzed whether warranty conditions create a tie. And, unlike here, *Lambrix* involved other alleged anticompetitive conduct having nothing to do with the warranty. *Id.* at *43. The factual differences and lack of analysis in this non-precedential case offer no reason to buck the weight of the authority establishing that it is not reasonable to assume that the risk of losing warranty coverage is always economic forcing.

Plaintiffs' failure to allege a plausible tie is sufficient reason to affirm the district court's dismissal of all of Plaintiffs' antitrust claims. *See, e.g., Airweld, Inc. v. Airco, Inc.*, 742 F.2d 1184, 1191 n.3 (9th Cir. 1984) ("[Plaintiff's] failure to prove a substantive tying violation" defeats a section 1 tying claim and "precludes it from

claiming that [defendant's] actions in that respect also constituted an attempt to monopolize."); *Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534, 543 (9th Cir. 1983) ("Because the conduct [plaintiff] alleged in support of its section 1 tying claim is not anticompetitive, it is of no assistance to [plaintiff's] efforts to state a claim for relief for monopolization or attempted monopolization, both of which require at least some allegation of anticompetitive conduct.").

## B. Plaintiffs did not adequately allege a tie that restrained trade.

Even if Plaintiffs adequately alleged a tie, they have not alleged it restrained trade.[13] Many ties "are fully consistent with a free, competitive market" and do not violate antitrust law. *Siva*, 38 F.4th at 573-74 (quotation omitted). The antitrust concern "is that if the seller of the tying product is a monopolist, the tie-in will force anyone who wants the monopolized product to buy the tied product from him as well, and the result will be a second monopoly." *Sheridan*, 530 F.3d at 592-93. So to allege a tie restrained trade, Plaintiffs had to allege that H-D "has sufficient economic power in the tying market to restrain free competition in the tied product market," that the tie affects "a not insubstantial amount of interstate commerce" in the tied product, and that there is "a substantial danger that the tying seller will acquire market power in the tied product market," *Carl Sandburg Vill. Condo. Asso. No. 1 v. First Condo. Dev. Co.*, 758 F.2d 203, 210 (7th Cir. 1985). They did not. And

---

[13] Plaintiffs claim the purported tie restrained trade and constituted attempted monopolization. *See, e.g.*, A.63 ¶ 143. They also suggest a separate claim "through a tie to a captive aftermarket." Br. at 13. But the cases Plaintiffs cite merely show that unique issues arise when addressing market power in aftermarkets; they do not create a distinct tying claim. *See* Br. at 28-32. And, as explained below, Plaintiffs have not adequately alleged market power, let alone a "captive aftermarket."

the failure to allege any of these is further reason to affirm.

## 1. No market power in a properly defined tying market

"[T]he conventional way of proving power" is "by showing a given share of a properly defined relevant market." *Goldwasser v. Ameritech Corp.*, 222 F.3d 390, 397 (7th Cir. 2000). Here, Plaintiffs alleged the relevant tying market is for "American-made, new, large roadgoing bikes, which are sold as a bundle with factory warranties" in the United States. A.31 ¶ 39. This is not a properly defined market, and Plaintiffs have not alleged that H-D has market power in it.

As an initial matter, Plaintiffs suggest that their burden to plead a relevant market is low, arguing they need only plead the "rough contours" of a market and courts "hesitate" to dismiss on this ground. Br. at 22 (quotation omitted). But identifying the "rough contours" of a market, as opposed to a "precisely defined" market, has been endorsed only where there is direct evidence of anticompetitive effects and the parties largely agree on the market. *Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717, 737 (7th Cir. 2004). Neither is true here. Therefore, Plaintiffs must allege the precise contours of the market containing products "reasonably interchangeable by consumers for the same purposes." *Sharif Pharmacy, Inc. v. Prime Therapeutics, LLC*, 950 F.3d 911, 916-917 (7th Cir. 2020) (quotation omitted). And when plaintiffs fail to do so, courts do not hesitate to dismiss. *Id.*; *see also Hack v. President & Fellows of Yale Coll.*, 237 F.3d 81, 86 (2d Cir. 2000); *Double D Spotting Serv. v. Supervalu, Inc.*, 136 F.3d 554, 559-61 (8th Cir. 1998); *Queen City Pizza v. Domino's Pizza*, 124 F.3d 430, 443 (3d Cir. 1997).

Rather than focus on interchangeability, Plaintiffs claim branding and brand

preferences limit the market to only American-made motorcycles. A.33-34 ¶¶ 45-48. But courts reject attempts to define markets, and find market power, based on branding or brand preferences. *SMS Sys.*, 188 F.3d at 23 ("[T]here always will be a subset of customers whose subjective preferences…will align them more closely with one manufacturer. [H]owever, this kind of preference does not translate into the kind of economic power that antitrust law aims to mitigate."); *see also Sheridan*, 530 F.3d at 595 ("the slight monopoly power" resulting from minor product differences limiting the substitutability of otherwise very similar products "does not do enough harm to the economy to warrant trundling out the heavy artillery of federal antitrust law.").[14]

Plaintiffs offer no cases suggesting that branding is sufficient to delimit a market. They cite one case, Br. at 24, where the court found a plausible market for drag racing experiences as functionally distinct from other racing experiences because of the "unique nature of drag racing," including the "'rush,' which comes only from riding in a multi-seat dragster" as a result of "stimulation of four of the human senses." *Dixon v. Nat'l Hot Rod Ass'n*, 2021 U.S. Dist. LEXIS 59443, at *21 (S.D. Ind. Mar. 29, 2021). *Dixon* did not address branding as a basis for defining a market. In contrast, the court in *In re German Auto. Mfrs. Antitrust Litig.* rejected

---

[14] Numerous lower courts have rejected product markets delineated merely by branding. *See, e.g., Maui Jim, Inc. v. SmartBuy Guru Enters.*, 386 F. Supp. 3d 926, 945-47 (N.D. Ill. 2019); *House of Brides, Inc. v. Alfred Angelo, Inc.*, 2014 U.S. Dist. LEXIS 1850, at *19-21 (N.D. Ill. Jan. 8, 2014); *Westerfield v. Quizno's Franchise Co., LLC*, 527 F. Supp. 2d 840, 858 (E.D. Wis. 2007); *PBTM LLC v. Football Nw., LLC*, 511 F. Supp. 3d 1158, 117-82 (W.D. Wash. 2021); *Wagner v. Circle W Mastiffs*, 732 F. Supp. 2d 792, 802-04 (S.D. Ohio 2010); *Carell v. Shubert Org., Inc.*, 104 F. Supp. 2d 236, 264-66 (S.D.N.Y. 2000).

a "German" vehicle market based on allegations that the defendant reacted to competition "with Italian, American, and Japanese brands" and made "attempts to set themselves apart with advertising to demonstrate that they were competing." 612 F. Supp. 3d 967, 980 (N.D. Cal. 2020). Here too, Plaintiffs allege that H-D's motorcycles compete with non-American branded motorcycles, A.35 ¶ 50, and that H-D's "all American branding" was an effort to compete with those other motorcycles, A.33-34 ¶ 47. And "even if [plaintiffs'] own allegations did not undermine their theory, 'judicial experience and common sense' would." *In re German Auto. Mfrs.*, 612 F. Supp. 3d at 980 (quoting *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1121 (9th Cir. 2018)). Just like the existence of "[n]on-German luxury cars" makes it "implausible that national origin alone puts German automakers in a separate market from their high-end foreign rivals," *id.*, there are non-American branded motorcycles and it is implausible that national origin alone puts H-D in a separate market.

Plaintiffs also do not allege a factual basis for excluding used motorcycles, which are kept on the road "for generation after generation." A.22 ¶ 3. Plaintiffs point only to the fact that used motorcycles do not come with a warranty. Br. at 25. A lower court recently found that insufficient, even when the plaintiff alleged that used vehicles were less reliable. *First Priority Emergency Vehicles, Inc. v. REV Ambulance Grp. Orlando, Inc.*, 2020 U.S. Dist. LEXIS 74170, at *9-10 (D.N.J. Apr. 28, 2020). Plaintiffs' allegations are insufficient to support their proposed market.

Even if Plaintiffs' alleged market was plausible, they did not allege H-D's share

of it. They did allege that H-D has 21.1% of sales of new, large roadgoing bikes in the United States. A.35 ¶ 50. But that is too small to infer market power. *See, e.g., Will v. Comprehensive Accounting Corp.*, 776 F.2d 665, 671-72 (7th Cir. 1985) (even 30% is "not the sort of power that a plaintiff must show") (citing *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 27 (1984)); *Marts*, 77 F.3d at 1113 n.6 (18% insufficient). Plaintiffs now argue that H-D's share is "at least around 80%." Br. at 40 (emphasis omitted). But that is based on unsupported assumptions, Br. at 40 n.40, which are not a substitute for factual allegations. *See Agnew v. NCAA*, 683 F.3d 328, 349 (7th Cir. 2012) (a complaint "may not be amended by the briefs") (quotation omitted).

And even if they had alleged that H-D had a sufficiently high market share, that is not enough without allegations of plausible barriers to entry or expansion by others. *Ind. Grocery, Inc. v. Super Valu Stores, Inc.*, 864 F.2d 1409, 1414 (7th Cir. 1989); *Ball Mem'l Hosp., Inc. v. Mut. Hosp. Ins., Inc.*, 784 F.2d 1325, 1335-1336 (7th Cir. 1986); *see also Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1439 (9th Cir. 1995). Plaintiffs alleged that H-D's competitors—including Honda, Kawasaki, Yamaha, Suzuki, and BMW—"have the backing and name of companies with an array of products in markets across the globe." A.48 ¶ 91. It is implausible to assume that these large competitors could not increase sales in the United States— especially when Plaintiffs also allege these competitors previously did so, nearly bankrupting H-D, A.27 ¶ 27. This too supports affirming. *See, e.g., Hip Hop Bev. Corp. v. Monster Energy Co.*, 733 F. App'x 380, 381-82 (9th Cir. 2018) (affirming

dismissal, in part, for failure to allege "existing competitors lacked the capacity to increase their output").

### 2. No substantial amount of commerce is foreclosed in the tied market

Plaintiffs must also allege that "a substantial volume of commerce is foreclosed" to tied product competitors "because of the tie." *Reifert v. S. Cent. Wis. MLS Corp.*, 450 F.3d 312, 318 (7th Cir. 2006) (quotation omitted); *see also Healy v. Cox Communs., Inc.*, 871 F.3d 1093, 1106 (10th Cir. 2017) (foreclosure "must have been achieved by the tie….not from any other anticompetitive conduct…or from any external factors unrelated to the tie."); *Gonzalez v. St. Margaret's House Hous. Dev. Fund Corp.*, 880 F.2d 1514, 1519 (2d Cir. 1989) (focus is on foreclosure "due to tying policy"). "If only a single purchaser," for example, were forced to buy Harley-Davidson parts, "the resultant impact on competition would not be sufficient to warrant the concern of antitrust law." *Jefferson Parish*, 466 U.S. at 11. Plaintiffs only alleged the total volume of all Harley-Davidson parts sales. Br. at 41 (citing A.49 ¶ 95). That is irrelevant. The alleged tie could not possibly foreclose competitors for parts sold to customers whose motorcycles were out of warranty or to customers who wanted Harley-Davidson parts regardless of any warranty terms. *See Jefferson Parish*, 466 U.S. at 11 (sale of a tied product to a customer that "would not have otherwise bought even from another seller" does not impact competition "because no portion of the market which would otherwise have been available to other sellers has been foreclosed"). Here, Plaintiffs do not even allege the volume of their own parts purchases, let alone the volume of purchases allegedly made because of the warranty terms. *See* A.23-25 ¶¶ 6-19.

Still further, Plaintiffs did not allege a predicate to foreclosure—that "there is at least one competitor in the tied product market" that could be foreclosed. *Reifert*, 450 F.3d at 317. Although they allege a "multitude" of parts manufacturers, A.30 ¶ 36, they do not allege that there is a third-party alternative for any particular part. If only H-D offers a particular part, there can be no anticompetitive tie as to that part because there is no competition to foreclose. *See Reifert*, 450 F.3d at 318 ("Where there is no competition in the tied market, there can be no antitrust violation."); *Healy*, 871 F.3d at 1108 (no competitors in the tied market meant "no foreclosure, and zero-foreclosure ties present no antitrust concerns"). The failure to allege any amount of commerce purportedly foreclosed by the tie, or that there was even a competitor to foreclose for any particular part, supports affirming.

### 3. No substantial danger of anticompetitive effects in the tied market

"[A] substantial danger that the tying seller will acquire market power in the tied product market" is a "threshold criteria that a plaintiff must satisfy." *Carl Sandburg Vill. Condo. Asso. No. 1 v. First Condo. Dev. Co.*, 758 F.2d 203, 210 (7th Cir. 1985); *see also Healy*, 871 F.3d at 1097-98 (plaintiffs must show "that the tie had the substantial potential to harm competition" in the tied market). As the Tenth Circuit explained, "[b]ecause tying claims often present little or no potential to harm competition—and thus, no antitrust concerns—plaintiffs alleging per se unlawful tying arrangements must do more to meet the foreclosure element than point to a dollar amount." *Healy*, 871 F.3d at 1107. And Plaintiffs acknowledge their obligation to plead anticompetitive effects in the tied product market under the rule of reason. Br. at 38. There is no danger of effects, for example, "if the tied-product

market is occupied by many stable sellers who are not likely to be driven out by the tying, or if entry barriers in the tied-product market are low." *Jefferson Parish*, 466 U.S. at 38 (O'Connor, J., concurring). And that is what Plaintiffs allege here—a "robust" and "vast" parts market with a "multitude" of competing parts makers. A.22 ¶ 3; A.30 ¶ 36; A.36-41 ¶¶ 52, 56-62, 65-68. They do not allege any changes in the market, nor that a tie covering the sale of parts during, at most, the first two years of a motorcycle's long life could plausibly foreclose any meaningful amount of competition. Their conclusory assertion that the purported tie has caused higher prices, Br. at 41-42, is not enough. *Twombly*, 550 U.S. at 555. Plaintiffs simply fail to plead a substantial danger of anticompetitive effects in the tied market, which also requires affirming.

## C. Plaintiffs did not adequately allege attempted monopolization.

Merely alleging a tie is also insufficient to state an attempted monopolization claim. Plaintiffs also had to allege that H-D had a "specific intent to achieve monopoly power in a relevant market" and that there was "a dangerous probability that the attempt at monopolization will succeed." *Mercatus Grp., LLC v. Lake Forest Hosp.*, 641 F.3d 834, 854 (7th Cir. 2011). They did not.

### 1. No specific intent to achieve monopoly power

Because "lawful competition aims to defeat and drive out competitors," the specific intent to monopolize requires more than "the mere intention to exclude competition and to expand one's own business." *Great Escape, Inc. v. Union City Body Co.*, 791 F.2d 532, 541 (7th Cir. 1986). At the pleading stage, an allegation of specific intent fails "in the absence of anticompetitive conduct from which such

specific intent may be inferred." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 735 (9th Cir. 1987). Because Plaintiffs did not adequately allege anticompetitive conduct, they also failed to allege any specific intent to achieve monopoly power. *See id.* at 735-36; *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 258 (3d Cir. 2010).

### 2. No dangerous probability of acquiring monopoly power

A dangerous probability of acquiring monopoly power "requires evidence that the defendant had sufficient market power to have been reasonably able to create a monopoly." *Lektro-Vend Corp. v. Vendo Co.*, 660 F.2d 255, 270 (7th Cir. 1981). But Plaintiffs alleged neither a plausible parts market, nor that H-D had market power in it.

Plaintiffs claim that H-D attempted to monopolize the market for motorcycle parts "compatible with Harley-Davidson motorcycles" sold in the United States. A.29 ¶ 36; A.35-36 ¶ 51. This is not a plausible market. It violates the principle that a relevant antitrust market is comprised of products "reasonably interchangeable by consumers for the same purposes." *Sharif*, 950 F.3d at 916-917 (quotation omitted). The alleged all-parts market includes mufflers, handlebars, backrests, and windshields, for example, which are "too different" to be in one market. *Sharif*, 950 F.3d at 917; *see also PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 418 (5th Cir. 2010) (affirming dismissal, in part, because "'women's accessories' is too broad and vague a definition to constitute a market").

Plaintiffs attempt to rescue their market definition by arguing it is a "cluster market." Br. at 25-27. A "cluster market" requires "the cluster itself" to be "an object

of consumer demand." *Sharif*, 950 F.3d at 918 (quotation omitted). Although Plaintiffs allege that many companies sell parts, *see* A.36-41 ¶¶ 53-62, 65-69, they do not allege that sellers offer all parts because consumers prefer to buy from one place. *See United States v. Grinnell Corp.*, 384 U.S. 563, 572 (1996) ("to compete effectively, they must offer all or nearly all types of service"); *United States v. Phillipsburg Nat'l Bank & Trust Co.*, 399 U.S. 350, 361 (1970) (consumers looked to one bank for multiple services). Plaintiffs' assertion that consumers will turn to a "unified Compatible Parts Market," Br. at 27, is both not supported by allegations, nor the same as turning to a "unified" provider.

Plaintiffs suggest that the Supreme Court upheld an all-parts market in *Eastman Kodak v. Image Technical Servs., Inc.*, 504 U.S. 451, 473 (1992). Br. at 25. But the Supreme Court in *Kodak* never addressed the propriety of the alleged cluster market; the Ninth Circuit subsequently did, however. *See Image Tech. Servs. v. Eastman Kodak*, 125 F.3d 1195, 1205 (9th Cir. 1997). The Ninth Circuit upheld an all-parts market because the relevant purchasers (service providers) demanded all parts to service all their consumers' repair needs. The court distinguished that market from the automotive supplies market where consumers do not demand that a retailer of tires, for example, also sell oil. *Id.* at 1204.[15] Consumer demand for motorcycle parts is more like that for automotive supplies;

---

[15] The Ninth Circuit also found the analysis of market power and effects would have been the same regardless of how the parts market—there the tying product—was defined. *Image Tech.*, 125 F.3d at 1205-1206. Here, in contrast, accurately defining parts markets—the tied product—is necessary to assess the plausibility of any foreclosure, anticompetitive effects, in addition to a dangerous probability of monopolization. *See supra* Sections III.B.2-3.

Plaintiffs do not allege they demand a store sell all parts when they are shopping for repair or customization parts. So Plaintiffs' "all parts" market here should meet the same fate as the "all beverages" market rejected by the Tenth Circuit because there was no suggestion "customers enter the store with the intent to purchase [two different beverages together] and the absence of one of those products would cause the customer to go to another store to purchase both." *Green Country Food Mkt., Inc. v. Bottling Group, LLC*, 371 F.3d 1275, 1284 (10th Cir. 2004); *see also Westman Com. Co. v. Hobart International, Inc.*, 796 F.2d 1216, 1221 (10th Cir. 1986) (same because one-stop-shopping restaurant equipment distributors face competition from non-one-stop-shopping distributors). Plaintiffs' failure to allege a plausible parts market is further reason to affirm.

Plaintiffs also did not allege H-D had market power in their flawed all-parts market. Instead, Plaintiffs alleged that there are a "multitude of parts manufacturers" that provide "a dizzying array of repair parts as well as performance and cosmetic upgrade parts for" Harley-Davidson motorcycles. A.30-31 ¶¶ 36, 38. This renders any claim of market power implausible. *See, e.g., Bayer Schering Pharma AG v. Sandoz, Inc.*, 813 F. Supp. 2d 569, 579-80 (S.D.N.Y. 2011) (dismissing claim where market share allegations were undermined by allegations of "dozens" of competing products and other "large producers"). Their allegation that H-D is "'23 times the size of its nearest competitor,'" Br. at 42 (quoting A.49 ¶ 95), says nothing about H-D's market share given the breadth of the market and is mathematically impossible, given they alleged one competitor alone captures 15% of

sales. A.38 ¶ 60. Without alleging H-D's share of any parts market, Plaintiffs have "failed to plead facts suggesting a dangerous probability of success." *Terminalift LLC v. Int'l Longshore & Warehouse Union Local 29*, 2013 U.S. Dist. LEXIS 70545, *16 (S.D. Cal. May 17, 2013).[16] And the implausibility of any market power is highlighted by the absence of any plausible claim that "existing competitors lacked the capacity to increase their output" or that new competitors could not enter. *See Hip Hop Bev.*, 733 F. App'x at 381-82; *see also Crossroads Cogeneration Corp. v. Orange & Rockland Utils.*, 159 F.3d 129, 141-42 (3d Cir. 1998) (affirming dismissal for failure to allege "barriers that exist which prevent plaintiff's entry into such markets"); *see also Ind. Grocery*, 864 F.2d at 1414; *Ball Mem'l Hosp.*, 784 F.2d at 1335-1336.[17] Plaintiffs' conclusory assertion that the purported tie is a barrier to entry, Br. at 36 (citing A.48-49 ¶ 92; A.50 ¶ 98), is belied by the alleged robustness of the parts market, A.30-31 ¶¶ 36, 38, and the fact that, even if Plaintiffs were correct, the warranty has no effect on sales after the first two years of the life of motorcycles that remain on the road for "generation after generation." A.22 ¶ 3; A.30 ¶ 30; *see Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1058-60 (8th Cir. 2000) (challenged discounts not a barrier as they "left ample room for new

---

[16] The alleged higher price for Harley-Davidson parts, A.45 ¶ 79, is irrelevant. *Blue Cross & Blue Shield United v. Marshfield Clinic*, 65 F.3d 1406, 1411-12 (7th Cir. 1995) ("a reasonable finder of fact cannot infer monopoly power just from higher prices" for heterogeneous products because "the difference may reflect a higher quality more costly to provide"); *Harrison Aire, Inc. v. Aerostar Int'l*, 423 F.3d 374, 381 (3d Cir. 2005) (same).

[17] The "already robust" nature of the market, A.48-49 ¶ 92, is also not a barrier. *See United States v. Syufy Enters.*, 903 F.2d 659, 667-69 (9th Cir. 1990) ("efficient, aggressive competition" is not a barrier).

competitors").

The Court need not address Plaintiffs' argument that there is a "captive aftermarket." Br. at 28. When assessing market power in an aftermarket, a so-called "captive aftermarket" is required *in addition to* a high market share and barriers to entry and expansion, which are not present here. "[T]he naked fact that a manufacturer has a high percentage of the market for servicing its own products does not mean it" has market power. *SMS Sys.*, 188 F.3d at 16. Disfavored aftermarket practices "will prompt potential customers to go elsewhere" and cause "defections from its installed base as well." *Id.* So courts "must look to other modes of scrutinizing the existence and measure of market power." *Id.* at 17-18. Specifically, courts require "'significant information and switching costs'" that "sever the usual link between the primary market and aftermarket." *Harrison Aire*, 423 F.3d at 382 (quoting *Kodak*, 504 U.S. at 473).

Plaintiffs do not allege significant costs to switch to a motorcycle without the alleged warranty restriction. And Plaintiffs' claimed information costs, Br. at 31, are insufficient as they refer only to "the common human inability to predict the future with certainty." *Xerox Corp. v. Media Scis., Inc.*, 660 F. Supp. 2d 535, 549 (S.D.N.Y. 2009). There are no information costs if "customers knew or could readily obtain" the warranty terms with no "sudden restrictive change in policy which caused their customers to be unwittingly locked in to the use of the defendants' services." *Metzler v. Bear Auto. Serv. Equip. Co.*, 19 F. Supp. 2d 1345, 1359 (S.D. Fla. 1998) (quotation omitted); *see also Dig. Equip. Corp. v. Uniq Dig. Techs.*, 73

F.3d 756, 763 (7th Cir. 1996) (*Kodak* was concerned with a manufacturer changing a policy that "enabled [it] to extract supra-competitive prices from customers who had already purchased its machines"); *Schor*, 457 F.3d at 613-14 (same); *Lee v. Life Ins. Co. of N. Am.*, 23 F.3d 14, 19 (1st Cir. 1994) (dismissing claims with no allegations that it was "difficult or expensive to obtain or correlate" aftermarket information). Here, Plaintiffs call the warranty terms hidden, Br. at 28, but do not allege that they did not know them from prior purchases or could not easily get them from dealers or online. *See* A.54-55 ¶¶ 113-116; A.58 ¶ 124. Lastly, Plaintiffs try to avoid their burden to plead information and switching costs by arguing H-D has market power in the motorcycle market, Br. at 32, but Plaintiffs failed to plausibly allege as much, as explained above.

There are simply no facts alleged that render it plausible that there was a dangerous probability that H-D would monopolize a parts market.

## III.    The district court properly dismissed Plaintiffs' fraud-based claims.

Plaintiffs make no argument that their fraud-based common law and state statutory consumer protection claims survive independent of their antitrust claims. Br. at 42-43 (arguing only that these claims survive because they alleged "anticompetitive conduct"). So these claims were properly dismissed for the same reasons the district court properly dismissed Plaintiffs' antitrust claims.

But, even if Plaintiffs had adequately alleged their antitrust claims, their fraud-based claims would still fail. As the district court held, Plaintiffs failed to clearly identify what information H-D allegedly misrepresented or omitted, Plaintiffs' allegations were "internally inconsistent," and Plaintiffs did not state a viable claim

based on any alleged misrepresentations regarding enforceability of repair restrictions. A.344-345.

Plaintiffs offer no support for their assertion that this was error. Indeed, "[a]n appellant who does not address the rulings and reasoning of the district court forfeits any arguments he might have that those rulings were wrong." *Protect Our Parks, Inc. v. Buttigieg*, 97 F.4th 1077, 1098 (7th Cir. 2024) (quoting *Hackett v. City of South Bend*, 956 F.3d 504, 510 (7th Cir. 2020)). Similarly, although Plaintiffs concede that all of their fraud-based claims are subject to the particularity requirements of Fed. R. Civ. P. 9(b), they do not identify any underlying misrepresentation or omission. Br. at 42-43. While Plaintiffs do make the conclusory assertion that "[t]he Complaint does not lack for particularity in any respect," *id.* at 42, they do not provide any examples of allegations made with such particularity. As this Court has recognized, "[a] skeletal 'argument', really nothing more than an assertion, does not preserve a claim." *Protect Our Parks*, 97 F.4th at 1098 (quotations omitted).

If the Complaint was truly replete with fraud allegations stated with particularity, Plaintiffs "should have had no trouble pointing it out with some specificity." *Gross v. Town of Cicero*, 619 F.3d 697, 705 (7th Cir. 2010) (finding that plaintiff had waived argument regarding conspiracy that was allegedly supported by a "wealth of evidence," where plaintiff had failed to identify specific evidence of conspiracy). They did not, which is not surprising given that the Complaint was completely devoid of any allegations regarding what—if anything—any named

Plaintiff read, heard, or relied upon before or after purchasing a motorcycle or parts. In sum, the district court's dismissal of Plaintiffs' fraud-based common law and statutory consumer protection claims was correct and should be affirmed.

## IV. The district court properly dismissed Plaintiffs' unjust enrichment claims.

The district court held that Plaintiffs' unjust enrichment claims failed because they were based on the same allegedly "unlawful conduct" as Plaintiffs' other unsuccessful claims. A.345-346. On appeal, Plaintiffs do not dispute that their unjust enrichment claims fail if their other claims fail. Br. at 43. Instead, they simply argue that that unjust enrichment claims should be reinstated because they have adequately alleged "anticompetitive conduct" and fraud. Br. at 42-43. They do not develop their argument or cite to any authority, which is sufficient reason to disregard their argument and affirm. *Protect Our Parks*, 97 F.4th at 1098. But regardless, since Plaintiffs' fraud-based and antitrust claims were properly dismissed, so too were their unjust enrichment claims. *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011); *Ass'n Benefit Servs. v. Caremark Rx, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007).

## V. Article III standing exists because at least some Plaintiffs have plausibly alleged harm.

Although not raised by any party or the district court, Plaintiffs argue that they adequately alleged Article III standing as to their damages claims. To adequately allege constitutional standing Plaintiffs must allege an injury fairly traceable to the challenged conduct that is likely to be redressed by a favorable decision. *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015). H-D agrees that at least some

Plaintiffs have alleged standing to seek damages by claiming they were harmed when they overpaid for Harley-Davidson parts as a result of the warranty. *See* A.23-25 ¶¶ 5-19. That at least one plaintiff has standing is sufficient for this Court to reach the merits. *Kohen v. Pac. Inv. Mgmt. Co. LLC & PIMCO Funds*, 571 F.3d 672, 676-677 (7th Cir. 2009) ("We need not decide whether" defendant established that two named plaintiffs could not have been injured "because even if it did, that left one named plaintiff with standing, and one is all that is necessary."); *see also Montoya v. Jeffreys*, 99 F.4th 394, 399 (7th Cir. 2024) ("Because at least one named plaintiff has standing, we may proceed to the merits.").

## CONCLUSION

For the reasons stated herein, the district court's order dismissing Plaintiffs' claims should be affirmed.


Dated: September 19, 2024

/s/ John M. Thomas
John M. Thomas
Cody D. Rockey
DYKEMA GOSSETT PLLC
2723 S. State Street, Suite 400
Ann Arbor, MI 48104
Tel: (734) 214-7660
Fax: (800) 957-6740
JThomas@dykema.com
CRockey@dykema.com

Howard B. Iwrey
DYKEMA GOSSETT PLLC
39577 Woodward Avenue, Suite 300
Bloomfield Hills, MI 48304
Tel: (248) 203-0700
Fax: (855) 232-1791
HIwrey@dykema.com

Susan G. Feibus
DYKEMA GOSSETT PLLC
10 South Wacker Drive, Suite 2300
Chicago, IL 60606
Tel: (312) 627-2283
Fax: (866) 577-3154
SFeibus@dykema.com

*Counsel for Defendants-Appellees
Harley-Davidson Motor Company, Inc.
and Harley-Davidson Motor Company
Group, LLC*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for the Defendants-Appellees, Harley-Davidson Motor Company Group, LLC and Harley-Davidson Motor Company, Inc., hereby certifies that this brief conforms to the rules contained in Fed. R. App. P. Rule 32(a)(7) for a brief produced with a proportionally spaced font. The length of this brief is 13,707 words.

Dated: September 19, 2024       <u>/s/ John M. Thomas</u>
                                           One of the Attorneys for Defendants-Appellees

## NOTICE OF ELECTRONIC FILING/CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Brief of Defendants-Appellees, Harley-Davidson Motor Company Group, LLC and Harley-Davidson Motor Company, Inc. to be electronically filed with the Clerk of the Court using the CM/ECF system on this 19th day of September 2024.


/s/ John M. Thomas